PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

DIRECT DIAL: (212) 373-3163
EMAIL: JAYCOHEN@PAULWEISS.COM

BEIJING          SAN FRANCISCO
BRUSSELS         TOKYO
HONG KONG        TORONTO
LONDON           WASHINGTON, DC
LOS ANGELES      WILMINGTON

July 26, 2024

**VIA ECF AND EMAIL**

The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl St., New York, NY 10007

> *Mechanical Licensing Collective* v. *Spotify USA Inc.*, No. 1:24-cv-03809

Dear Judge Torres:

Pursuant to Rules III(A) and III(B)(iii) of Your Honor's Individual Rules of Practice in Civil Cases, Plaintiff Mechanical Licensing Collective (the "MLC") respectfully responds to the July 19, 2024 pre-motion letter filed by Defendant Spotify USA Inc. ("Spotify"). The MLC opposes Spotify's proposed motion to dismiss because it is based on mischaracterizations of the well-pleaded allegations in the MLC's complaint, new purported facts that go well beyond or contradict the MLC's pleading, and merits-based arguments that are inappropriate on a motion to dismiss.

As set forth in detail in the MLC's complaint, this case is brought to compel Spotify—one of the largest music streaming services in the United States—to comply with the Copyright Act and to pay the mechanical royalties it owes to the songwriters and music publishers who create, own and administer the musical works upon which Spotify's business is based. Under Section 115 of the Copyright Act and its implementing regulations (collectively, "Section 115"), Spotify receives a compulsory blanket license that allows it to offer tens of millions of musical works on an on-demand basis. That blanket license is the foundation of a multibillion dollar business with tens of millions of subscribers paying monthly fees for access to Spotify's Premium music service ("Premium"). In return, Spotify is obligated to make monthly royalty payments to the MLC, a non-profit organization that has been designated by the Copyright Office to ensure that Spotify and other music streaming services accurately and timely pay the mechanical royalties they owe to songwriters and music publishers. Yet, on March 1, 2024, Spotify unilaterally and unlawfully decided to reduce the revenues it reports to the MLC for Premium by almost *50 percent* by improperly characterizing Premium as a "Bundle" within the meaning of Section 115, even though there was no change at that time to any of the Premium offerings or to the subscription price paid by Spotify's tens of millions of Premium subscribers.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

The MLC looks forward to joining issue with Spotify on the facts that will establish that Spotify underreported and underpaid mechanical royalties in violation of Section 115, and to rebutting any defenses that Spotify may assert in its responsive pleading. But a motion to dismiss is not the vehicle to do so.

It is well-settled that a motion to dismiss "is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1356 (3d ed.); *see also Lynch* v. *Cty. of N. Y.*, 952 F.3d 67, 75 (2d Cir. 2020) (on a motion to dismiss, "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence"). Instead, the only question at this preliminary stage is whether the complaint sets forth a "short and plain statement of the claim showing that the pleader is entitled to relief." *Corley* v. *United States*, 11 F.4th 79, 89 (2d Cir. 2021) (quoting Fed. R. Civ. P. 8(a)(2)). In evaluating this question, "a court must accept as true all of the allegations," and the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). And in doing so, the Court must construe the complaint "liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote* v. *New York Univ.*, 9 F.4th 95, 106-07 (2d Cir. 2021).

The MLC's complaint plainly satisfies this legal standard. It sets forth detailed factual allegations as to why Spotify's Premium subscription offering is not a "Bundle" within the meaning of Section 115, and Spotify's letter simply ignores that those detailed factual allegations must be accepted as true for purposes of Spotify's proposed motion.

*First*, Spotify's Premium subscription offering does not qualify as a "Bundle" under Section 115 because, as the complaint alleges, it is not a "combination" of "a Subscription Offering providing Eligible Interactive Streams," *i.e.,* a music service, and "one or more other products or services." 37 C.F.R. § 385.2. Among other things, the complaint specifically alleges that:

> Premium is exactly the same service that Spotify offered to its subscribers before the launch of Audiobooks Access. Nothing has been bundled with it. In the months before the purported transformation of Premium into a Bundled Subscription Offering, subscribers could listen to unlimited ad-free music and up to 15 hours of audiobooks each month in return for a $10.99 monthly payment, as well as other non-music audio content available on Spotify's platform, such as podcasts, comedy shows and spoken word performances. The launch of Audiobooks Access resulted in no change at all in Premium. And prior to March 1, Spotify paid mechanical royalties on the entirety of Premium revenues, subject to certain specific reductions identified in Section 115, despite the fact that Premium subscribers also had access to the same number of hours of audiobooks as Audiobooks Access subscribers now have. Nothing changed on the day Audiobooks Access launched: Premium subscribers continue to get the

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

same single product, providing the same on-demand access to tens of millions of musical works (along with other audio content) at the same price. The only change is that Spotify, by erroneously recharacterizing its Premium service as a Bundled Subscription Offering, is violating Section 115 and its regulations with respect to its reporting of Service Provider Revenue and, as a result, underpaying mechanical royalties.

(Complaint ¶ 5)

*Second*, Premium also does not satisfy the definition of a "Bundle" under Section 115 because, as the complaint alleges, the ability to listen to up to 15 hours of audiobook content is of no "more than token value" to Premium subscribers, who purchased and continue to pay for the Premium service to get access to tens of millions of musical works on an on-demand, ad-free basis. Among other things, the complaint specifically alleges that:

Spotify did not increase the price of Premium when it added audiobook listening in November 2023, evidencing Spotify's recognition that audiobook content has no more than token value to the tens of millions of Premium subscribers who purchase the service to get access to tens of millions of musical works on an on-demand, ad-free basis. Similarly, Spotify's launch of Audiobooks Access, including but not limited to how it is accessed and marketed on its website demonstrates that Audiobooks Access has no more than token value to Spotify, particularly in comparison to the billions of dollars it generates each year from Premium.

(Complaint ¶ 52)

Spotify's letter entirely ignores most of these well-pleaded facts, and simply declares the others to be "irrelevant." (Spotify Letter at 4) And aside from a passing reference to *Iqbal* and *Twombly*, Spotify also entirely ignores the proper legal standard for a motion to dismiss. Instead, Spotify spends four pages setting out its contrary view of the facts and its competing position on the ultimate merits, relying to a substantial degree on purported facts from outside the four corners of the complaint. Those extraneous facts do not—and cannot—provide any basis for dismissing the complaint. *See Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) ("Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials."); *Nunes* v. *NBCUniversal Media, LLC*, 643 F. Supp. 3d 403, 411 (S.D.N.Y. 2022) ("Generally, courts do not look beyond facts stated on the face of the complaint, documents incorporated in the complaint, matters of which judicial notice may be taken and documents that are 'integral' to the complaint.").

Spotify's letter also is entirely one-sided in choosing which new facts to include and which to omit. For example, when attempting to argue that "15 hours of audiobook streaming has more than token value," Spotify recites purported facts as to the subscription prices and

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

4

revenues generated by *different* services offered by *different* providers, and based on these extraneous facts, Spotify asserts in a wholly conclusory fashion that audiobook access "has obvious and significant independent value." (Spotify Letter at 3-4)  But Spotify's purported additional facts provide no information at all as to whether *Spotify Premium subscribers* consider the addition of audiobook access to have "more than token value" in the context of the tens of millions of songs they already are receiving on-demand and ad-free.  Indeed, as the complaint alleges, the fact that Spotify did not increase the price of Premium when it added audiobook listening in November 2023 evidences Spotify's own recognition that audiobook content has no more than token value to Premium subscribers.  Moreover, as the complaint alleges, the manner in which Spotify has launched Audiobooks Access also demonstrates that such a service has no more than "token value" for Spotify.  And even if, in the course of discovery, Spotify could establish that *some* of its tens of millions of subscribers value audiobooks, that still would not be dispositive of the question of whether audiobooks have more than token value either to Spotify or the vast bulk of Spotify's subscribers, who—as the complaint alleges—sign up for the service because of the music.

At most, these and the numerous other unsupported factual assertions in Spotify's letter simply raise questions of fact that cannot be resolved on a motion to dismiss and further demonstrate why dismissal at the pleading stage would be inappropriate here.  *See, e.g.*, *Powercap Partner LLC* v. *Fleischmann*, No. 20CV3428ARRRML, 2023 WL 6141276, at *3 (E.D.N.Y. Sept. 20, 2023) (denying motion to dismiss where movant relied on facts outside of the complaint); *Wujin Nanxiashu Secant Factory* v. *Ti-Well Int'l Corp.*, No. 01CIV8871(JCF), 2002 WL 1144903, at *2-3 (S.D.N.Y. May 29, 2002) (same).

Respectfully submitted,

*/s/ Jay Cohen*
Jay Cohen

Cc: All counsel of record (via ECF)