**Alli Stillman**
Direct Dial: 212.906.1747
alli.stillman@lw.com

1271 Avenue of the Americas
New York, New York 10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

# LATHAM & WATKINS LLP

October 16, 2024

**VIA ECF & EMAIL**

Hon. Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    <u>Mechanical Licensing Collective v. Spotify USA Inc., No. 1:24-cv-03809-AT (S.D.N.Y.)</u>

Dear Judge Torres:

Pursuant to Your Honor's Individual Rules of Practice in Civil Cases, Plaintiff Mechanical Licensing Collective ("MLC") and Defendant Spotify USA Inc. ("Spotify") submit this joint letter to raise a dispute with the Court regarding MLC's Responses and Objections ("Responses") to Spotify's First Set of Requests for Production ("RFPs"), which are attached here as Exhibit A.

The parties discussed MLC's Responses during a meet and confer via Zoom on September 18, 2024, which lasted approximately two hours. The lawyers involved in the conversation were Alli Stillman and Sy Damle of Latham & Watkins LLP on behalf of Spotify and Darren Johnson and Jack Ligon of Paul, Weiss, Rifkind, Wharton & Garrison LLP on behalf of MLC. Following the meet and confer, the parties exchanged written communications on September 24 and 25 and October 4, 6, and 8 in an attempt to resolve their disputes. Despite these efforts, the parties remain at an impasse with respect to the following issues.

### *Spotify's Position*

The parties have taken vastly different approaches to discovery in this action. MLC propounded over sixty requests seeking exceptionally broad information wholly irrelevant to this dispute. Spotify, in contrast, served just twenty-one requests, narrowly tailored to address the single question at issue in this case. That question is whether Spotify's Premium subscription plan qualifies as a "Bundle" as that term is defined in the *Phonorecords IV* regulations: a subscription offering that combines music streaming with "one or more other products or services having more than token value." 37 C.F.R. § 385.2. As revealed by the briefing on Spotify's Motion to Dismiss, the parties appear to have very different understandings of how to answer this question. As Spotify articulated, it is a straightforward matter of applying the regulatory language to the products and services provided in the Premium subscription and asking whether monthly audiobook streaming is a "product[] or service[]" other than music streaming that has "more than token value." *See, e.g.*, Dkt. 25 ("Def. Br.") 10–18; Dkt. 29 ("Def. Reply Br.") 8–15. MLC, on the other hand, takes the position that the question of whether

Premium is a Bundle turns on information about ancillary matters such as Spotify's other subscription offerings, the timing of Spotify's Bundle reporting, the timing of price increases to Premium, how individual Premium users subjectively value audiobooks, and whether Spotify "recognize[s]" that Premium subscribers subjectively value audiobooks. *See* Dkt. 28 ("Pl. Br.") 15–20. But while MLC has argued that these factors are relevant to whether Premium is a Bundle, it has not explained *why* they are relevant under the regulatory language, nor has it provided a clear or generally applicable articulation of how it defines Bundle for all of the many Licensees that report royalties to MLC. Spotify believes that is because these factors are merely a pretext, and that MLC does not actually apply these requirements to any other Licensee who reports Bundles. MLC's offer to provide documents and communications that "involve the MLC's interpretation or understanding of the scope and meaning of the definition of Bundle in the relevant regulations" is too narrow to capture the universe of relevant evidence that bears on this issue, which includes the MLC's course of dealing with Licensees who have reported Bundles.

Spotify's discovery requests aim to gain an understanding of what MLC's true and consistent position is with respect to the factors relevant to determining whether an offering by a Licensee is a Bundle.

**RFP Nos. 10 and 21:** These RFPs seek documents concerning MLC's communications with music publishers and the NMPA regarding Spotify and other Licensees. Following the parties' meet and confer, Spotify asked MLC to confirm that it would at least produce communications concerning Spotify's and any other Licensee's reporting of any Bundle. MLC has refused to produce responsive documents, agreeing only to produce communications concerning Spotify's reporting of Premium as a Bundle. This response is insufficient. Not only do various other Licensees, such as Apple and Amazon, report subscriptions that group music streaming with other services as Bundles, but Spotify itself also reports a number of other subscriptions as Bundles, including, for example, an offering that allows users to subscribe to Spotify and Hulu together. Neither MLC nor the music publishers appear to take issue with other Bundles offered by Spotify or other Licensees, targeting only Spotify Premium. MLC's communications about Spotify's other Bundles and Bundles reported by other Licensees are relevant to testing MLC's legal positions in this litigation. MLC has, seemingly for the first time, determined that a Bundle is proper only if it satisfies certain criteria that—as Spotify explained in its Motion to Dismiss—are nowhere found in the regulations. Not only are they absent from the law, but they would be  impracticable in operation as applied to digital music providers industry-wide. For example, Spotify is not aware of MLC having ever engaged in the kind of searching investigation and measurement of subjective user preferences and interests it now purports to require when evaluating other Licensee Bundles every time a Bundle has been reported for the first time in blanket Licensee royalty reports. But according to MLC, that investigation is the *sine qua non* of a legitimate Bundle. It is critical that Spotify be able to review how MLC conducts such analyses (if it is not simply an invented-for-litigation position, as Spotify suspects). *Cf., e.g.*, *Zurich Am. Ins. Co. v. Ace Am. Reinsurance Co.*, No. 05-cv-9170, 2006 WL 3771090, at *1–2 (S.D.N.Y. Dec. 22, 2006) (finding that "inconsistencies in the defendant's interpretation of contract terms would be relevant to a determination of the true meaning of those terms" or to the defendant's credibility (citation and quotation marks omitted)).

Spotify is entitled to discovery into MLC's communications concerning Spotify's and other Licensees' Bundle reporting to determine what MLC understands the meaning of Bundle to be, as applied both to Premium and to the Bundles MLC appears to accept under the *Phonorecords IV* regulations.

**RFP No. 11:** RFP No. 11 seeks "All Documents and Communications regarding Bundle reporting," which MLC has limited to documents and communications concerning "Spotify's reporting of Premium as a Bundle." As with RFP Nos. 10 and 21, this request seeks documents that will speak directly to what MLC believes constitutes a Bundle and how it has treated other Licensees that report Bundles, including whether MLC has applied the same standards to other Bundles that it demands of Premium. MLC's attempted limitation is therefore insufficient, as MLC is the party that has alleged Spotify is violating its obligations under the *Phonorecords IV* regulations yet offered no explanation of what it believes those obligations are, other than that Premium does not meet them. MLC should be required to respond to this RFP as written and produce all documents in its possession regarding Bundle reporting.

### *The MLC's Position*

The MLC agrees that "[t]he question at issue in this case is whether Spotify's Premium subscription plan qualifies as a 'Bundle' as that term is defined in the *Phonorecords IV* regulations: a subscription offering that combines music streaming with 'one or more other products or services having more than token value.'" Spotify Position *supra* at 1 (quoting 37 C.F.R. § 385.2). As set out in the Complaint, Spotify's launch of its Audiobook Access product did not convert its Premium music subscription service into a "Bundle." Spotify's own reporting to the MLC proves the point: it previously made the same audiobooks content to Premium subscribers but did not report revenues or pay royalties as if the service were a "Bundle." Nor can Spotify show that audiobook content has more than "token value" to either Spotify or its tens of millions of Premium subscribers who signed on for the service to receive access to on-demand music content.

 Spotify has served 21 separate document requests, and in the spirit of cooperation, the MLC has agreed to produce non-privileged documents subject to a reasonable search in response to nearly all of those requests. There are only a few requests in which the MLC has narrowed the scope of documents it will produce, and even there the MLC has committed to produce any and all responsive documents that relate to Spotify's reporting of Premium as a Bundle, which—as Spotify concedes—is the central issue in dispute. This level of cooperation stands in stark contrast to the approach Spotify has taken in its own discovery responses, as Spotify has attempted to avoid producing documents in response to most of the MLC's requests. Spotify's deficient discovery responses are the subject of a concurrently filed joint letter to the Court. But in this letter, Spotify seeks to divert attention from its own underpayment of royalties by expanding the scope of discovery to include *all* documents relating to disputes with *other licensees*, including disputes having nothing whatsoever to do with a Bundle, as well as *all* documents concerning Spotify, even if they have *nothing to do with this dispute*. Spotify claims it needs this extraordinarily broad and unduly burdensome discovery of its competitor's reports and payment practices to understand the MLC's position as to why Spotify's Premium service does not qualify as a Bundle. But the MLC already has made its position on that subject abundantly clear, including in the Complaint and in its opposition to Spotify's motion to dismiss. Moreover, the MLC already has agreed to produce all documents concerning the meaning of the definition of a Bundle, as well as the MLC's

understanding and interpretation of that definition, including any such documents that relate to Bundle reporting by other licensees. There thus is no need for the additional discovery Spotify seeks.

**RFP Nos. 10 and 21:** RFP No. 10 seeks "[a]ll Communications between You and the National Music Publishers' Association, including Communications between you and the National Music Publishers' Association's representative on the MLC board, concerning Spotify." RFP No. 21 seeks "[a]ll Communications with any representative of any music publisher or the National Music Publishers' Association, including Communications with MLC board members, regarding enforcement efforts against any blanket Licensee." Both requests seek irrelevant information pertaining to the MLC's motives in bringing this case, and thus exceed the bounds of relevant discovery. Spotify has attempted to justify these requests by pointing to certain public statements made by the NMPA, a third-party, from which Spotify infers that the MLC and the NMPA and other music publishers have singled out Spotify. But Spotify has not alleged a single fact—as opposed to rank speculation—to demonstrate that this lawsuit is about anything other than Spotify's failure to follow the revenue and royalty obligations it took on in return for obtaining a blanket license from the MLC. The mere fact that the NMPA—which is the trade organization charged with protecting the rights of music publishers and songwriters—independently has recognized and spoken out about Spotify's mischaracterization of Premium as a Bundle, and noted the enormous financial harm to songwriters and music publishers resulting from that mischaracterization, does not provide a basis for Spotify to seek broad discovery of the MLC's communications with the NMPA or music publishers about enforcement efforts in disputes with *other* licensees on *any* issue, whether or not related to reporting as a Bundle.[1] *See e.g., Collens* v. *City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (discovery requests are improper where they are "based on pure speculation that amount to nothing more than a 'fishing expedition' into actions . . . not related to the alleged claims or defenses").

---

[1] Moreover, the NMPA is not the only third-party to question Spotify's characterization of Premium as a Bundle. Spotify's own former Global Head of Music Publishing has publicly declared that Spotify's position cannot be squared with the governing regulations, noting that "Spotify's reframing of the vast majority of its subscription services as bundled subscription services is a work of fiction," and further describing Spotify's attempt to recharacterize Premium as a Bundle as a "blatantly dishonest scheme to deny songwriters their fair share." Adam Parness, *Spotify Must Ditch Its 'Blatantly Dishonest' Scheme to Deny Songwriters Their Fair Share (Guest Column)*, Billboard (May 22, 2024), https://www.billboard.com/business/ streaming/spotify-pay-songwriters-fair-share-guest-column-1235689545/. And in a letter addressed to the U.S. Register of Copyrights, Congressmen Ted Lieu and Adam Schiff and Senator Marsha Blackburn, members of the Judiciary Committee that originated the Music Modernization Act, also raised concerns that by characterizing Premium as a Bundle, Spotify was engaging in a "bad faith exploitation of the compulsory system," and that Spotify "should not be permitted to manipulate statutory rates to slash royalties, deeply undercutting copyright protections for songwriters and publishers." Letter from Congressmen Ted W. Lieu and Adam B. Schiff and Senator Marsha Blackburn to Shira Perlmutter, U.S. Register of Copyrights (June 12, 2024), https://schiff.house.gov/imo/media/doc/letter_expressing_concerns_regarding_ spotify_bundle.pdf.

That is why, in response to RFP No. 10, the MLC has agreed to produce responsive communications concerning Spotify's reporting of Premium as a Bundle, and in response to RFP No. 21, the MLC has agreed to produce documents "regarding enforcement efforts against Spotify in connection with its reporting of Premium as a Bundle." Both responses are appropriately focused on the actual issue in dispute, as opposed to entirely irrelevant reporting disputes such as late payments or other issues that arise in the ordinary course of reporting by licensees to the MLC.

In apparent recognition that RFP Nos. 10 and 21 are overbroad, Spotify now claims that it "is entitled to discovery into MLC's communications concerning Spotify's and other Licensees' Bundle reporting to determine what MLC understands the meaning of Bundle to be, as applied both to Premium and to the Bundles MLC appears to accept under the *Phonorecords IV* regulations." But the only possible relevant documents concerning those other bundles would involve the MLC's interpretation or understanding of the scope and meaning of the definition of Bundle in the relevant regulations, and the MLC already has agreed to produce any such documents in response to a more tailored Spotify request (RFP No. 12), as Spotify acknowledges. Spotify baselessly claims that RFP No. 12 is "too narrow to capture the universe of relevant evidence," but fails to identify any potential relevant document related to the MLC's treatment of other bundles under *Phonorecords IV* that would not be captured by RFP No. 12.

**RFP No. 11:** RFP No. 11 seeks "[a]ll Documents and Communications regarding Bundle reporting." In other words, Spotify is seeking literally every monthly report from every licensee for every bundle, and all other documents and communications concerning those reports. But this litigation is solely about Spotify's mischaracterization of Premium as a Bundle, and in no way relates to the reporting by *entirely different* licensees of *entirely different* bundles. That is why, in response to RFP No. 11, the MLC has agreed to produce documents "concerning Spotify's reporting of Premium as a Bundle." Again, the only possible relevant documents concerning *other* bundles would involve the MLC's interpretation or understanding of the scope and meaning of the definition of Bundle in the relevant regulations, which—as noted above—the MLC already has agreed to produce in response to RFP No. 12.

\* \* \*

Respectfully submitted,

/s/ *Allison L. Stillman*
Allison L. Stillman
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1331
Facsimile: (212) 751-4864
Email: alli.stillman@lw.com

Sarang V. Damle
Michael Bern (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: sy.damle@lw.com
michael.bern@lw.com

*Attorneys for Spotify USA Inc.*

/s/ *Darren W. Johnson*
Darren W. Johnson[2]
Jay Cohen
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
jaycohen@paulweiss.com
djohnson@paulweiss.com
*Attorneys for Plaintiff Mechanical Licensing Collective*

cc: All counsel of record (via ECF & email)

---

[2] Spotify uses electronic signatures with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions.