**Alli Stillman**
Direct Dial: 212.906.1747
alli.stillman@lw.com

1271 Avenue of the Americas
New York, New York 10020-1401
Tel: +1.212.906.1200 Fax: +1.212.751.4864
www.lw.com

LATHAM&WATKINS LLP

October 16, 2024

**VIA ECF & EMAIL**

Hon. Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: Mechanical Licensing Collective v. Spotify USA Inc., No. 1:24-cv-03809-AT (S.D.N.Y.)

Dear Judge Torres:

Pursuant to Rule III.A of Your Honor's Individual Rules of Practice in Civil Cases, Defendant Spotify USA Inc. ("Spotify") respectfully submits this pre-motion letter in support of Spotify's anticipated Motion to Stay Discovery because extraordinary circumstances exist such that a stay would be appropriate. Specifically, the counterparties to the agreement that produced the regulations governing the present dispute—Spotify and the National Music Publishers Association ("NMPA")—agree that no extrinsic evidence is needed to interpret the relevant terms, such that no discovery is necessary to resolve the legal question at issue.

***This action concerns a pure question of law regarding interpretation of a federal regulation.*** This case concerns whether Spotify has paid Plaintiff Mechanical Licensing Collective ("MLC") the correct amount of royalties for the use of musical works under rate-setting regulations adopted by the Copyright Royalty Board ("CRB"). The language of those regulations comes from the negotiated terms of a settlement agreement among the parties to the *Phonorecords IV* rate-setting proceeding, including Spotify and other music streaming services on the one hand, and NMPA and a songwriter organization on the other. In other words, the CRB adopted the language agreed to by Spotify and NMPA as binding regulations for the whole industry. Importantly, MLC was not a party to the *Phonorecords IV* proceeding and had no involvement in its settlement (indeed, MLC is prohibited by statute from participating in such proceedings, 17 U.S.C. § 115 (d)(8)). Instead, MLC is a government-appointed license administrator funded by the licensees, tasked with applying the agreed-upon regulations in administering the license. One of the key terms of the *Phonorecords IV* settlement is the royalty calculation that applies to "Bundles," and "Bundle" is a defined term in the agreed-upon regulations. Specifically, a "Bundle" is a combination of music streaming and "one or more other products or services having more than token value." 37 C.F.R. § 385.2.

Spotify began reporting its Premium subscription tier to MLC as a "Bundle" under the Phonorecords IV regulations, given the addition of 15 hours of monthly audiobook streaming to the existing music streaming product. MLC sued, alleging that Premium is not a Bundle and seeking recovery of unpaid royalties. Spotify filed a Motion to Dismiss, explaining that this case

can be decided on the pleadings because the Court need only interpret the regulatory language and apply it to the undisputed facts regarding what is included in a Premium subscription. *See* Dkt. 25 ("Def. Br.") 10–18; Dkt. 29 ("Def. Reply Br.") 8–15.

Nonetheless, in light of this Court's general direction that it does not stay discovery during the pendency of any motion, Spotify initially agreed to proceed with discovery. Spotify served a focused set of 22 RFPs that were narrowly directed to the issues in suit. But MLC, for its part, has not been so constrained. MLC's first set of Requests for Production ("RFPs") alone includes over *60* RFPs that touch on almost every aspect of Spotify's business. *See* Dkt. 30, Ex. A ("MLC's RFPs"). In the spirit of cooperation and to avoid burdening the Court, Spotify has agreed in whole or in part to most of MLC's requests. However, Spotify maintains that none of MLC's requests is appropriate because this case can and should be resolved based on the facts about Premium alleged in the Complaint. MLC disagrees and has sought Court intervention on 41 separate requests. Discovery disputes raised by both MLC and Spotify are currently pending before the Court, *see* Dkt. 30 ("Pl. Joint Letter"); Dkt. 31 ("Def. Joint Letter"), in addition to Spotify's Motion to Dismiss, which is fully briefed.

In parallel, Spotify served third-party subpoenas on NMPA, its primary counterparty to the settlement agreement that led to the agreed-upon *Phonorecords IV* regulations. On October 11, NMPA served responses and objections to those subpoenas, refusing to produce *any* documents whatsoever or designate a witness to sit for a deposition at *all*.[1] Critically, among the reasons NMPA gave was that "***Extrinsic Evidence Is Irrelevant.***" NMPA quoted Spotify's submissions to this Court that "this is a 'question of law that can be resolved on the face of the Complaint" with "no need for discovery." But to be clear, NMPA did not merely point to *Spotify's claim* that discovery was not needed. Instead, NMPA expressly *agreed with Spotify*:

> **Thus,** as Spotify should agree given its position to date, **extrinsic evidence and discovery – particularly from a third party – are inappropriate, irrelevant, and unnecessary to pure questions of law regarding interpretation of contractual or regulatory terms**. . . . Nor does the issue of ambiguity itself require discovery, as it is a question of law for the Court. . . . Accordingly, NMPA will not produce any documents unless and until there is a judicial determination of ambiguity requiring discovery.

The fact that NMPA—the very counterparty to the settlement agreement that included the agreed-upon Bundle regulations, and a party that is otherwise opposed to Spotify's use of the Bundle regulations to lower royalty payments to music publishers in favor of payments to book publishers[2]—*agrees* that discovery is not needed ought to be conclusive. MLC, as a

---

[1] *See* Ex. A (NMPA's Responses and Objections to Defendants' Subpoena to Testify at a Deposition) at 3 (emphasis added); *see also* Ex. B (NMPA's Responses and Objections to Defendant's Subpoena to Produce Documents) at 3 (emphasis added).

[2] David Israelite, *Spotify's Bundle Plan Is a 'Betrayal'. The NMPA Will Make a Legislative Proposal to Fight It (Guest Column)*, Billboard (May 20, 2024), https://www.billboard.com/business/publishing/nmpa-david-israelite-spotify-bundling-music-plan-legislative-proposal-1235687751/.

government-appointed license administrator that was not party to the settlement agreement and that is bound to apply the regulatory terms agreed upon by the parties, has no basis to argue otherwise.

***Extraordinary circumstances warrant a stay of discovery.*** Rule 26(c) of the Federal Rules of Civil Procedure provides courts with discretion to stay discovery "for good cause." While this Court has stated that it will not stay discovery during the pendency of a motion to dismiss,[3] it has also recognized that, in certain cases, "[g]ood cause may be shown where a party has filed a dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced by the stay." *Boelter v. Hearst Comm'cns, Inc.*, No. 15-cv-3934 (AT), 2016 WL 361554, at *4 (S.D.N.Y. Jan. 28, 2016) (citation omitted) (granting stay). In considering whether to stay discovery pending a motion to dismiss, "a court should consider the breadth of discovery sought and the burden of responding to it, as well as the strength of the underlying motion." *Id.* (citation omitted). Courts in this Circuit "have held that a stay of discovery is appropriate [] where the motion appears to have substantial grounds or, stated another way, does not appear to be without foundation in law." *Johnson v. N.Y. Univ. Sch. of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002) (citations and alterations omitted). Indeed, this Court has recognized that "extraordinary circumstances" may warrant resolution of a fully submitted motion to dismiss before engaging in burdensome discovery. *See, e.g., Netrebko v. Met. Opera Ass'n, Inc.*, No. 23-cv-6857 (AT), Dkt. 29 (S.D.N.Y. Nov. 20, 2023). As the events of the early phase of this litigation have demonstrated, this case presents such extraordinary circumstances warranting a stay: The counterparties to the agreement, who crafted the language being interpreted and applied as a matter of law to resolve this case, agree that there is no extrinsic evidence or discovery that is relevant or appropriate to resolve this dispute; and all relevant factors weigh overwhelmingly in favor of a stay.

***Spotify's Motion to Dismiss is well-grounded in the law and raises "substantial arguments for dismissal."*** *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72–73 (S.D.N.Y. 2013) (citation omitted). Both parties agree that resolution of whether Spotify Premium is a Bundle turns on two questions: whether the audiobook streaming included in Premium subscriptions is "one or more other products or services" besides music streaming, and whether audiobook streaming has "more than token value." Dkt. 28 ("Pl. Br.") 25 (describing these as "the two primary questions"); Def. Br. at 10 (same). As Spotify has explained, these questions can be answered as a matter of law by interpreting the regulatory language according to its plain meaning and applying common sense to the factual allegations in MLC's Complaint. *See* Def. Br. at 10–18; Def. Reply Br. at 8–15. Spotify will not repeat the arguments it raised in the Motion to Dismiss briefing, but those arguments certainly are not frivolous or without foundation. *See Boelter*, 2016 WL 361554, at *4.

***The parties' discovery exchanges to date demonstrate that discovery disputes will persist until Spotify's Motion to Dismiss is resolved.*** MLC believes that it is entitled to a broad range of documents concerning Spotify's motivations, licensing practices, pricing and marketing decisions, and other subscription tiers. Spotify's position is that if any discovery is warranted

---

[3] *See* Civil Management Plan and Scheduling Order, *Hon. Analisa Torres*, https://www.nysd.uscourts.gov/hon-analisa-torres (last updated June 25, 2019); *see also* Dkt. 20.

(which it is not), it must be focused only on whether audiobook streaming is an "other product[] or service[] having more than token value." The distance between these two discovery positions ultimately reflects the positions the parties have expressed in the Motion to Dismiss briefing. *See supra.* Though Spotify will make every effort to resolve any discovery disputes through the meet-and-confer process, it has become clear that, until the Court addresses the arguments raised in the Motion to Dismiss, the parties will remain at odds about the proper subjects and scope of discovery, leading to continuous disputes and substantial and unnecessary burden on the parties and the Court while the Motion to Dismiss is pending. *See Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, No. 08-cv-2437, 2008 WL 11510668, at *3 (S.D.N.Y. June 12, 2008) (granting stay where "there is likely to be significant motion practice regarding the scope and extent of disclosure"); *Alapaha View Ltd. v. Prodigy Network, LLC*, No. 20-cv-7572, 2021 WL 1893316, at *2 (S.D.N.Y. May 10, 2021) (ordering stay where "proceeding with discovery while the motion is pending would waste the parties' resources and would constitute an undue burden on Defendant" when ruling on dismissal motion "may significantly narrow, if not eliminate, the issues remaining" (citation omitted)).

***Finally, a temporary stay will neither prejudice MLC nor unnecessarily delay the proceedings.*** The stay Spotify seeks would last only while the Motion to Dismiss is pending. If the Court were to deny the Motion, discovery would resume with both parties in substantially the same position they are in today; if, however, the Court grants the Motion, both Spotify and MLC will avoid costly and ultimately unnecessary discovery. *Cf. Boelter*, 2016 WL 361554, at *4 (finding that it would be "prudent to postpone the significant costs of discovery at this juncture" and granting the defendant's motion to stay pending resolution of its motion to dismiss). As multiple courts in this Circuit have recognized, "[a] stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue." *See Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (citation omitted); *see also, e.g., Harbinger Capital Partners LLC v. Egern*, No. 15-cv-5722 (AT), Dkt. 45 (S.D.N.Y. Oct. 21, 2015) (granting motion to stay pending resolution of motion to dismiss); *Feliciano v. General Motors LLC*, No. 14-cv-6374 (AT), Dkt. 43 (S.D.N.Y. Sept. 8, 2015) (same); *Spruill v. City of New York*, No. 21-cv-181 (AT), Dkt. 56 (S.D.N.Y. July 14, 2021) (same).

In light of the significant burden of proceeding with discovery that will likely be rendered unnecessary, and the extraordinary circumstance that NMPA—the counterparty to the *Phonorecords IV* settlement at the heart of this dispute—agrees with Spotify this dispute is properly a pure question of law, not fact, Spotify requests that this Court stay discovery for good cause pending resolution of Spotify's Motion to Dismiss.

Respectfully submitted,

/s/ *Allison L. Stillman*

Allison L. Stillman
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1331

Facsimile: (212) 751-4864
Email: alli.stillman@lw.com

Sarang V. Damle
Michael Bern (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: sy.damle@lw.com
michael.bern@lw.com

*Attorneys for Spotify USA Inc.*

cc: All counsel of record (via ECF & email)