UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MECHANICAL LICENSING COLLECTIVE,<br><br>      Plaintiff,<br><br>  v.<br><br>SPOTIFY USA INC.,<br><br>      Defendant. | No. 1:24-cv-03809 (AT) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR RECONSIDERATION AND VACATUR OF THE JUDGMENT**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................ 2

I. The Complaint Was Dismissed Without Consideration Of All Claims That Spotify Failed To Pay Royalties Due To The MLC ............................................................. 2

II. The Court's Ruling That Premium Constitutes A Bundle Misapplied The Standard Required On A Motion To Dismiss And Failed To Consider Controlling Law .................. 4

III. In The Alternative, The Judgment Should Be Vacated To Provide The MLC An Opportunity To Seek Leave To Amend ................................................................................ 7

CONCLUSION ........................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Bethea* v. *Winfield Sec. Corp.*,
    No. 23 CIV. 922 (AT), 2024 WL 2783753 (S.D.N.Y. May 29, 2024)......................3

*Block* v. *First Blood Assocs.*,
    988 F.2d 344 (2d Cir. 1993)..............................................................................10

*Boyce* v. *Soundview Technology Group, Inc.*,
    464 F.3d 376 (2d Cir. 2006).................................................................................7

*Di Pompo* v. *Mendelson*,
    Civ. No. 21-1340, 2022 WL 1093500 (S.D.N.Y. Apr. 7, 2022)...........................3

*Farsura* v. *QC Terme US Corp.*,
    No. 21 CIV. 9030 (AT), 2022 WL 16838212 (S.D.N.Y. Nov. 8, 2022) ..............2, 4

*Foman* v. *Davis*,
    371 U.S. 178 (1962)..............................................................................................7

*Honickman* v. *BLOM Bank SAL*
    No. 22-1039, 2024 WL 852265 (2d Cir. Feb. 29, 2024),
    *cert. granted*, 145 S. Ct. 117 (2024) ...................................................................7

*In re Generali COVID-19 Travel Ins. Litig.*
    577 F. Supp. 3d 284 (S.D.N.Y. 2021)..................................................................7

*Kane* v. *Mount Pleasant Cent. Sch. Dist.*,
    80 F.4th 101 (2d Cir. 2023) ................................................................................11

*Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*,
    729 F.3d 99 (2d Cir. 2013)...................................................................................2

*Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015)...............................................................................10

*Lynch* v. *City of New York*,
    952 F.3d 67 (2d Cir. 2020)...................................................................................6

*Mandala* v. *NTT Data, Inc.*,
    88 F.4th 353 (2d Cir. 2023) ....................................................................2, 7, 9, 10

*Martin* v. *Sprint/United Mgmt. Co.*,
    Civ. No. 15-5237, 2016 WL 2757431 (S.D.N.Y. May 12, 2016) ......................10

*Metzler Inv. Gmbh* v. *Chipotle Mexican Grill, Inc.*,
    970 F.3d 133 (2d Cir. 2020)..............................................................................7, 9

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Nakahata* v. *New York-Presbyterian Healthcare Sys., Inc.*,
   723 F.3d 192 (2d Cir. 2013)..................................................................................................10

*Olson* v. *Major League Baseball*,
   29 F.4th 59 (2d Cir. 2022) ........................................................................................................2

*Pasternack* v. *Shrader*,
   863 F.3d 162 (2d Cir. 2017)....................................................................................................10

*Shrader* v. *CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995).................................................................................................2, 5

*State Tchrs. Ret. Bd.* v. *Fluor Corp.*,
   654 F.2d 843 (2d Cir. 1981)....................................................................................................10

*Swan* v. *Page*,
   No. 23-7912-CV, 2024 WL 5165516 (2d Cir. Dec. 19, 2024) ..................................................4

*Vega* v. *Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015)........................................................................................................8

*Williams* v. *Citigroup Inc.*,
   659 F.3d 208 (2d Cir. 2011).................................................................................................7, 9

**Statutes**

17 U.S.C. § 115................................................................................................................ *Passim*

**Other Authorities**

37 C.F.R. § 210.27(i) ................................................................................................1, 5, 8

37 C.F.R. § 385.2 ......................................................................................................8, 9

37 C.F.R. § 385.21 .......................................................................................................8

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 4, 6

Fed. R. Civ. P. 59(e) .................................................................................................1, 2, 7

Fed. R. Civ. P. 60(b) .................................................................................................1, 2, 7

Fed. R. Civ. P. 15.............................................................................................................7

Local Rule 6.3..............................................................................................................1, 2

Pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) and Local Rule 6.3, plaintiff Mechanical Licensing Collective (MLC) submits this memorandum of law in support of its motion for (i) reconsideration of the Court's order granting defendant Spotify USA Inc.'s motion to dismiss with prejudice (the Order), Dkt. 61, vacatur of the judgment, Dkt. 62, and reinstatement of the MLC's claims in full, or, in the alternative, (ii) vacatur of the judgment, Dkt. 62, so that the MLC may then seek leave to amend its Complaint.

## **PRELIMINARY STATEMENT**

The injustice that would result from dismissal of the Complaint *at this stage*, and without giving the MLC the opportunity to move for leave to replead, would be manifest. At stake is an unprecedented interpretation of regulatory language that would have far-reaching and profound financial consequences on an entire creative industry, as well as for the federal statutory licensing scheme that underlies the collection and distribution of more than a billion dollars in mechanical royalties each year.

The MLC therefore seeks reconsideration of the Court's conclusion that the allegations in the Complaint that Spotify misreported its Premium service as a Bundle were not sufficient to withstand a Rule 12(b)(6) motion. In dismissing the Complaint, the Court overlooked claims for relief pleaded by the MLC with respect to underpayment of royalties related to Audiobooks Access and Bundle reporting. It also improperly dismissed the MLC's allegations that Spotify's prior reporting of Premium as a standalone Subscription Offering sufficiently pleaded a cause of action for underpayment of royalties, particularly in light of Spotify's repeated certifications that its reporting was "true, complete, and correct" pursuant to Section 115. *See* 37 C.F.R. § 210.27(i). And the Court resolved factual issues with respect to the MLC's "token value" claims that should not have been decided on a motion to dismiss.

Alternatively, at a minimum, the judgment should be vacated so that the MLC may then seek leave to amend the Complaint. Under controlling Second Circuit precedent, a plaintiff (such as the MLC) that has not previously amended its complaint, is required to be given "at least one opportunity to replead," with the benefit of the Court's ruling on the deficiencies of the original complaint. *Mandala* v. *NTT Data, Inc.*, 88 F.4th 353, 361 (2d Cir. 2023). That well-established precedent applies with particular urgency here given that the Court's ruling on the interpretation of Section 115 has consequences that go far beyond the four corners of the Complaint that was before the Court.

## ARGUMENT

### I. The Complaint Was Dismissed Without Consideration Of All Claims That Spotify Failed To Pay Royalties Due To The MLC

Federal Rules 59(e) and 60(b) authorize a party to file a motion for reconsideration in the form of a motion to amend or alter a judgment (Rule 59(e)) or a motion for relief from a judgment (Rule 60(b)). *See*, *e.g.*, *Olson* v. *Major League Baseball*, 29 F.4th 59, 72 (2d Cir. 2022); *see also* Local Rule 6.3. Reconsideration is warranted, for among other reasons, "to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013); *see also Farsura* v. *QC Terme US Corp.*, No. 21 CIV. 9030 (AT), 2022 WL 16838212, at *1 (S.D.N.Y. Nov. 8, 2022) (Torres, J.) (same). Reconsideration is also proper where the moving party can point to authority that "might reasonably be expected to alter the conclusion reached by the court." *Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

In considering Spotify's motion to dismiss, the Court properly accepted as true the Complaint's factual allegations that "Spotify provides Audiobooks Access subscribers with the same unlimited, on-demand, and ad-free music-streaming service that is included in the Premium

2

plan," and that the "Audiobooks Access and Premium plans are, therefore, virtually identical." Dkt. 61, at 5; Dkt. 1, ¶¶ 7, 48, 51 n.22. But the Court appears to have overlooked the accompanying claim for relief. *See Bethea* v. *Winfield Sec. Corp.*, No. 23 CIV. 922 (AT), 2024 WL 2783753, at *2 (S.D.N.Y. May 29, 2024) (Torres, J.) (granting reconsideration where the "complaint could also be read to state [an additional] claim"). As set forth in paragraph 58 of the Complaint, the MLC alleged that, "to the extent Audiobooks Access provides subscribers with the same access to unlimited on-demand ad-free music as Premium, Spotify has failed to properly account for and pay royalties owed to the MLC for Audiobooks Access under Section 115." Dkt. 1, ¶ 58. If Premium and Audiobooks Access are "virtually identical," then Spotify must report Audiobooks Access to the MLC in the same way as Premium. As a result, Spotify "failed to properly account for and pay royalties owed to the MLC for Audiobooks Access under Section 115." *Id*. The Court's holding that Premium qualifies as a Bundle does not resolve, but rather confirms, the sufficiency of the MLC's Audiobooks Access claim, *see id.*, rendering dismissal of the Complaint with prejudice clearly erroneous. *See Di Pompo* v. *Mendelson*, Civ. No. 21-1340, 2022 WL 1093500, at *1–2 (S.D.N.Y. Apr. 7, 2022) (granting reconsideration where court failed to address an argument raised by a party).

The allegations of the Complaint also fairly support an alternative claim: if Premium is a Bundle as the Court has concluded, Spotify nonetheless underpaid royalties owed to the MLC for Premium by misapplying the rate formula applicable to a Bundle. The Complaint lays out that statutory royalty formula, which requires Spotify to use the standalone retail price of the non-music component in calculating the appropriate Service Provider Revenue, if such a standalone price exists. Dkt. 1, ¶¶ 32, 33. The Complaint further alleges that Spotify's reporting of Premium as a Bundle coincided with the launch of Audiobooks Access, an offering Spotify

priced at $9.99—the same price Spotify used in its Bundle calculations. Dkt. 1, ¶¶ 4, 7, 43, 48. Those facts raise an inference that Spotify improperly used the price of Audiobooks Access as the standalone price of Premium's audiobook component even though Audiobooks Access is not a standalone audiobook service. *See Swan* v. *Page*, No. 23-7912-CV, 2024 WL 5165516, at *2 (2d Cir. Dec. 19, 2024) ("Even when 'allegations [are] not specifically pleaded as "in the alternative,"' Rule 8 'offers sufficient latitude to construe separate allegations in a complaint as alternative theories.'"). As a result, and in light of the allegation that Spotify was required to report and pay royalties in accordance with Section 115, *see* Dkt. 1, ¶ 56, the Complaint plausibly states a claim for relief that was not addressed in the Order dismissing the Complaint. *See Farsura*, 2022 WL 16838212, at *3 (granting reconsideration "[a]fter a searching review of the complaint and the record").[1]

## II. The Court's Ruling That Premium Constitutes A Bundle Misapplied The Standard Required On A Motion To Dismiss And Failed To Consider Controlling Law

The Court correctly noted that to withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face'" and that the Court "must draw all reasonable inferences in the non-movant's favor." Dkt. 61, at 5–6. But in concluding, as a matter of law, that Premium meets the definition of a Bundle under Section 115, the Court failed to accept all alleged facts as true and draw all reasonable inferences in the MLC's favor. The Court also failed to consider controlling Section 115 regulations requiring Spotify to accurately report and pay royalties on Premium, which

---

[1] In the alternative, as discussed *infra* Part III, the Court should vacate the judgment so that the MLC can then seek leave to amend its Complaint to plead additional facts in support of its claim that Spotify misapplied the Bundle rate regulations and underpaid royalties to the MLC.

contradicts the Court's determination that Spotify "could have" paid more royalties than otherwise required.  See Dkt. 61, at 9; 37 C.F.R. § 210.27(i); *see also Shrader*, 70 F.3d at 257.

*First*, in reviewing the allegations of the Complaint concerning Spotify's decision not to report Premium as a Bundle when it initially added audiobook listening, the Court appears to have accepted Spotify's argument that no inference could be drawn from the fact that it "paid more in royalties to MLC than it was otherwise required to pay." Dkt. 61, at 9.  But Section 115's binding regulations required an officer of Spotify to certify to the MLC the accuracy of its reporting of Premium as a standalone Subscription Offering.  That provision, 37 C.F.R. § 210.27(i), required Spotify to certify either that its monthly reports to the MLC "accurately reflect, in all material respects, [Spotify's] usage of musical works, the statutory royalties applicable thereto . . . and any other data that is necessary for the proper calculation of the statutory royalties in accordance with 17 U.S.C. [§] 115 and applicable regulations," or that "all statements of fact contained [in the reports] are true, complete, and correct to the best of [Spotify's] knowledge, information, and belief, and are made in good faith."  Section 115 thus imposes an absolute obligation of accuracy with respect to Spotify's reporting and payment of royalties for Premium.

That Spotify initially and repeatedly reported and certified Premium as a standalone Subscription Offering (after adding audiobook listening) is sufficient to sustain the Complaint's allegations that Premium is not a Bundle.  Having subsequently certified under the law that Premium is not a Bundle, it cannot now say otherwise.  In reassessing the adequacy of the Complaint, it is appropriate and proper for the Court to consider the import of the controlling regulations, even if a particular provision had not been previously brought to the attention of the Court.  *See Shrader*, 70 F.3d at 257 (holding it was not an abuse of discretion to grant reconsideration based on new authority such as "substantial legislative history" and "additional

5

relevant case law"). Therefore, the Court should reconsider its conclusion that Spotify had discretion in how to report its offerings after adding audiobook listening in November 2023. *See* Dkt. 61, at 9. The Complaint's allegations concerning Spotify's prior reporting of Premium (inclusive of audiobook listening) as a standalone Subscription Offering, and not as a Bundle, are sufficient to state a claim for relief for underpayment of royalties that should not properly be dismissed on a Rule 12(b)(6) motion.

*Second*, reconsideration should also be granted because the Court erred in ruling, as a matter of law, that Premium's 15 monthly hours of audiobook listening provided "more than token value." Dkt. 61, at 10–11. In so holding, the Court engaged in factfinding that is not permitted on a motion to dismiss. For example, in accepting Spotify's argument that it might not have raised the price of Premium immediately after adding audiobook listening because it was "motivated by 'customer acquisition,'" Dkt. 61, at 11 n.5, the Court drew inferences in favor of Spotify, rather than the MLC. The "choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *See Lynch* v. *City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Anderson News, L.L.C.* v. *American Media, Inc.*, 680 F.3d 162, 184–85 (2d Cir. 2012)).

The Court also concluded that audiobooks "*generally* are products of value," Dkt. 61, at 13 n.6 (emphasis added), but, in so doing, did not credit the Complaint's allegations that audiobook listening (when added to Premium) did not have "more than token value" to the tens of millions of Premium subscribers who purchased the service to get access to unlimited, on-demand, ad-free music, not audiobook listening. Dkt. 1, ¶ 52. Those allegations raise factual issues that cannot be resolved on a Rule 12(b)(6) motion, irrespective of whether audiobooks "generally are

6

products of value." *Cf. Boyce* v. *Soundview Technology Group, Inc.,* 464 F.3d 376, 387 (2d Cir. 2006) (explaining that "determining value is a factual inquiry").

**III.   In The Alternative, The Judgment Should Be Vacated To Provide The MLC An Opportunity To Seek Leave To Amend**

In the event that the Court does not grant reconsideration, it should nonetheless vacate the judgment pursuant to Rules 59(e) and 60(b) so that the MLC has the opportunity to seek leave to amend its Complaint under Rule 15. It is well established in the Second Circuit that "a party seeking to file an amended complaint post-judgment must first have the judgment vacated pursuant to Rules 59(e) or 60(b)." *Metzler Inv. Gmbh* v. *Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 145 (2d Cir. 2020). When a party seeks post-judgment relief so that it may then move to amend its complaint, courts must give "due regard" to the "liberal spirit" of Rule 15 and the finality interests embodied in Rules 59(e) and 60(b) by "ensuring plaintiffs at least one opportunity to replead." *Mandala*, 88 F.4th at 362; *see also Williams* v. *Citigroup Inc.*, 659 F.3d 208, 213–14 (2d Cir. 2011). The Second Circuit case law builds on the Supreme Court's holding in *Foman* v. *Davis*, 371 U.S. 178, 182 (1962), that a request to vacate the judgment "to file a first amended complaint" should not be denied "without any justifying reason," such as impermissible delay, bad faith, undue prejudice to the defendant, or futility. *Mandala*, 88 F.4th at 362; *see also Williams*, 659 F.3d at 213–14.[2]

The Court determined that, under the facts alleged, Premium constitutes a Bundle. That judgment should be vacated to allow the MLC to seek leave to amend its Complaint to plead

---

[2]   The Supreme Court granted certiorari in a case implicating the Second Circuit's standard for analyzing a post-judgment request to vacate to allow leave to amend. *See Honickman* v. *BLOM Bank SAL*, No. 22-1039, 2024 WL 852265 (2d Cir. Feb. 29, 2024), *cert. granted*, 145 S. Ct. 117 (2024). "Grants of certiorari do not change the law, and a district court remains bound by circuit precedent until the Supreme Court or the court of appeals changes that precedent." *In re Generali COVID-19 Travel Ins. Litig.,* 577 F. Supp. 3d 284, 294 n.2 (S.D.N.Y. 2021).

additional facts relating to Spotify's prior reporting of Premium as a standalone Subscription Offering. Those facts would include, but would not be limited to, details regarding Spotify's repeated written certifications pursuant to federal law that Premium (inclusive of audiobook listening) is a standalone Subscription Offering (and not a Bundle). *See* 37 C.F.R. § 210.27(i). Spotify's certifications, when accepted as true and all inferences drawn in the MLC's favor, are sufficient to support the MLC's claim that Premium is not a Bundle. *See Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) ("On a motion to dismiss, the question is . . . whether plaintiffs allege enough to nudge their claims across the line from conceivable to plausible.").

The MLC would also allege additional facts that support a claim for improper calculation and underpayment of royalties for Premium, even under the Bundle formula. Those allegations would make clear that, in using the subscription price of Audiobooks Access for the purpose of reporting Service Provider Revenue, Spotify has necessarily failed to satisfy the Bundle reporting regulations and has underpaid royalties on Premium. *See* 37 C.F.R. § 385.2 (defining "Service Provider Revenue"); *id.* § 385.21(b) (titled "Royalty rates and calculations").

If Premium is a Bundle under the regulations, the Service Provider Revenue for Premium, which is the music revenue from Premium subject to mechanical royalties, is calculated on a per subscriber basis (less applicable deductions) as follows:

$$\frac{\text{Standalone Price of Music Component}}{\text{Standalone Price of Music Component} + \text{Standalone Price of Audiobook Component}} \times \text{Bundle Price} = \text{Service Provider Revenue}$$

If the service provider does not offer a component of the Bundle on a standalone basis and there is "no standalone published price" for that component, the service provider must use the "average standalone published price . . . for the most closely comparable product[s] or service[s] in the U.S." as the price of that component. 37 C.F.R. § 385.2. And, if "no reasonably comparable product"

8

exists, the service provider "may use another good faith, reasonable measure of the market value of the component." *Id.*

Additional allegations would also make clear that the price of Audiobooks Access cannot be used as the "standalone published price" of Premium's audiobook component in the denominator of the fractional portion of the Service Provider Revenue formula because Audiobooks Access is not a standalone audiobook service; Audiobooks Access provides audiobook listening *and* music. *See id.* The MLC would also plead that there are no "reasonably comparable" standalone products on the market that offer only 15 monthly hours of audiobook listening, which then requires Spotify to use a "good faith, reasonable measure of the market value of the [audiobook] component" in the fractional portion of the formula. *See id.* The MLC would allege that the $9.99 price Spotify uses in the fractional portion of the formula is inconsistent with market comparables, is not made in "good faith," and is not a "reasonable measure of the market value" of 15 monthly hours of audiobook listening. *See id.* The MLC would also allege that Spotify's improper inflation of Premium's audiobook component price decreased the pro-rata portion of Premium's subscription price attributable to music, resulting in significant underpayment of royalties to the MLC.

The MLC therefore requests that the judgment be vacated so that the MLC may promptly move for leave to file an amended complaint. *See Metzler*, 970 F.3d at 145. The MLC has not amended its Complaint previously in this case, and there is no "justifying reason" to deny the MLC's motion to vacate the judgment so that leave to amend may be sought. *See Mandala*, 88 F.4th at 362. As the Second Circuit has explained, the "failure to seek leave to amend pre-judgment, standing alone, does not constitute undue delay or otherwise justify denying relief from judgment for a plaintiff seeking to file a first amended complaint." *Id.*; *see Williams*, 659 F.3d at

9

214. The MLC's request is also consistent with Second Circuit precedent holding that the proper time to seek leave to amend is after the district court rules on a motion to dismiss. *See Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). After all, "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Id.* Notably, "[i]n most if not all Second Circuit cases denying post-judgment leave to replead, the plaintiff had already taken at least one shot at amendment," but the MLC has not. *See Mandala*, 88 F.4th at 362; *see also Nakahata* v. *New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198 (2d Cir. 2013).

Spotify cannot make a sufficient showing of prejudice that outweighs the MLC's right to seek leave to replead. The Second Circuit has held that "complaints of 'the time, effort and money . . . expended in litigating [the] matter,' without more, [do not] constitute prejudice sufficient to warrant denial of leave to amend." *Pasternack* v. *Shrader*, 863 F.3d 162, 174 (2d Cir. 2017); *see also Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (setting forth the standard for prejudice). Further, "[t]his is not a case where the amendment came on the eve of trial and would result in new problems of proof," *see State Tchrs. Ret. Bd.* v. *Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981), because the case was in its "early stages" of discovery before dismissal, *see Martin* v. *Sprint/United Mgmt. Co.*, Civ. No. 15-5237, 2016 WL 2757431, at *5 (S.D.N.Y. May 12, 2016).

Nor would amendment be futile. As discussed *supra*, the amendments that the MLC would propose would cure the deficiencies outlined by the Court in its Order. Indeed, the MLC's proposed basis for the recovery of additional royalties is premised on the Court's determination that Premium constitutes a Bundle and proceeds from a straightforward

10

interpretation of the governing regulations. The proposed complaint would thus not be subject to dismissal for failure to state a claim. *See Kane* v. *Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 107 (2d Cir. 2023).

## CONCLUSION

The Order dismissing the case should be reconsidered, the judgment should be vacated, and the MLC's claims reinstated in full. In the alternative, the judgment should be vacated so that the MLC may then seek leave to amend its Complaint.

Dated: February 12, 2025
     New York, New York

                                PAUL, WEISS, RIFKIND,
                                WHARTON & GARRISON LLP

                                */s/ Jay Cohen*
                                Jay Cohen
                                Darren W. Johnson
                                Dylan O. Smith
                                1285 Avenue of the Americas
                                New York, NY  10019-6064
                                Telephone: (212) 373-3000
                                jaycohen@paulweiss.com
                                djohnson@paulweiss.com
                                dosmith@paulweiss.com

                                *Attorneys for Plaintiff*
                                *Mechanical Licensing Collective*

## CERTIFICATION OF COMPLIANCE

I hereby state that the foregoing Memorandum of Law was prepared on a computer using Microsoft Word. The total number of words in this brief, excluding the caption, table of contents, table of authorities, signature block, and this certification is 3,427. In preparing this certificate, I relied on the word count program in Microsoft Word.

Dated: February 12, 2025
      New York, New York

                                PAUL, WEISS, RIFKIND,
                                WHARTON & GARRISON LLP

                                */s/ Jay Cohen*
                                Jay Cohen
                                Darren W. Johnson
                                Dylan O. Smith
                                1285 Avenue of the Americas
                                New York, NY  10019-6064
                                Telephone: (212) 373-3000
                                jaycohen@paulweiss.com
                                djohnson@paulweiss.com
                                dosmith@paulweiss.com

                                *Attorneys for Plaintiff*
                                *Mechanical Licensing Collective*