**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MECHANICAL LICENSING COLLECTIVE, <br><br> *Plaintiff*, <br><br> v. <br><br> SPOTIFY USA INC., <br><br> *Defendant*. | Case No. 1:24-cv-03809-AT-KHP |

**DEFENDANT SPOTIFY USA INC.'S OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR RECONSIDERATION AND VACATUR OF JUDGMENT</u>**

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ...............................................................................................................1

II. LEGAL STANDARD..........................................................................................................2

III. ARGUMENT.......................................................................................................................3

    A. MLC's Attempt to Relitigate Points Already Considered and Rejected Provides No Basis to Reconsider the Court's Holding that Premium is a Bundle ......................................................................................................................3

        1. MLC's minor variation on its rejected argument that Spotify is bound to its earlier reporting of Premium as a standalone product comes too late. ..........................................................................................4

        2. MLC's argument that Spotify users might not value audiobooks is an argument that was considered and rejected.............................................5

    B. MLC's Attempts To Raise New Or Abandoned Claims Also Provide No Basis for Reconsideration ........................................................................................5

        1. MLC cannot use reconsideration to advance a new claim that Spotify underpaid royalties even if Premium is a Bundle. ..........................5

        2. MLC cannot revive its abandoned argument that Spotify underpaid royalties for its standalone Audiobooks Access product. ............................6

    C. Leave to Amend Is Unwarranted and Would be Futile. ..........................................8

        1. MLC cannot show "extraordinary circumstances" warranting a post-judgment opportunity to amend its complaint. .....................................8

        2. MLC's proposed amendments would be futile............................................9

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*AG Funds, L.P. v. Sanofi*,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015) ................................................................................... 10

*Analytical Survs., Inc. v. Tonga Partners, L.P.*,
    684 F.3d 36 (2d Cir. 2012) ................................................................................................ 4, 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 ........................................................................................................................ 8

*Bethea v. Winfield Sec. Corp.*,
    No. 23-cv-00922, 2024 WL 2783753 (S.D.N.Y. May 29, 2024) ......................................... 7

*Earl v. Good Samaritan Hosp. of Suffern N.Y.*,
    625 F. Supp. 3d 292 (S.D.N.Y. 2022) .................................................................................. 6

*Ekpe v. City of New York*,
    No. 20-cv-9143-AT, 2024 WL 1621207 (S.D.N.Y. Apr. 12, 2024) ..................................... 8

*Farsura v. QS Terme US Corp.*,
    No. 21-cv-9030-AT, ECF No. 1-2 (S.D.N.Y. Nov. 2, 2021) ................................................ 6

*Friedman v. Endo Int'l PLC*,
    No. 16-cv-3912, 2018 WL 2021561 (S.D.N.Y. Apr. 27, 2018) ........................................... 8

*Holland v. City of New York*,
    197 F. Supp. 3d 529 (S.D.N.Y. 2016) .................................................................................. 6

*Holland v. Lions Gate Ent. & Films*,
    No. 21-cv-02944-AT, 2025 WL 449325 (S.D.N.Y. Jan. 29, 2025) ............................... 2, 5, 8

*In re Pinnock*,
    833 F. App'x 498 (2d Cir. 2020) .......................................................................................... 8

*Mandala v. NTT Data, Inc.*,
    88 F.4th 353 (2d Cir. 2023) ......................................................................................... 3, 8, 9

*Mazzei v. The Money Store*,
    No. 20-cv-03702-AT, 2021 WL 4429631 (S.D.N.Y. Sept. 27, 2021) ........................... 2, 3, 5

*Medina v. Tremor Video, Inc.*,
    No. 13-cv-8364, 2015 WL 3540809 (S.D.N.Y. June 5, 2015), *aff'd*, 640 F.
    App'x 45 (2d Cir. 2016) ....................................................................................................... 3

*Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*,
  970 F.3d 133 (2d Cir. 2020) ................................................................................................. 3, 8

*OGI Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.*,
  No. 06-cv-9441, 2007 WL 2900225 (S.D.N.Y. Oct. 4, 2007) ..................................................... 2

*Rivera v. Fed. Bureau of Prisons*,
  08-cv-5590, 2013 WL 5052153 (S.D.N.Y. Sep. 12, 2013) ......................................................... 9

*Ruotolo v. City of New York*,
  514 F.3d 184 (2d Cir. 2008) ........................................................................................................ 2

*SEC v. Rio Tinto PLC*,
  No. 17-cv-07994-AT, 2021 WL 818745 (S.D.N.Y. Mar. 3, 2021) .............................................. 2

*Shull v. TBTF Prods., Inc.*,
  No. 20-cv-3529, 2021 WL 3027181 (2d Cir. July 19, 2021) .................................................. 3, 8

*SuperCom, Ltd. v. Sabby Volatility Warrant Master Fund Ltd.*,
  No. 21-cv-02857-AT, 2022 WL 2467783 (S.D.N.Y. July 6, 2022) ........................................... 9

*SuperCom, Ltd. v. Sabby Volatility Warrant Master Fund Ltd.*,
  No. 21-cv-02857-AT, 2023 WL 3919450 (S.D.N.Y. Mar. 15, 2023) ............................... 2, 5, 8

*Swan v. Page*,
  No. 23-cv-7912, 2024 WL 5165516 (2d Cir. Dec. 19, 2024) ..................................................... 6

*Wade Park Land Holdings, LLC v. Kalikow*,
  No. 21-cv-1657, 2022 WL 2479110 (S.D.N.Y. July 6, 2022) ................................................... 9

*Wilbush v. Ambac Fin. Grp., Inc.*,
  271 F. Supp. 3d 473 (S.D.N.Y. 2017) ........................................................................................ 7

**RULES**

Fed. R. Civ. P. 8(d)(2) ......................................................................................................................... 6

Fed. R. Civ. P. 11(b) ........................................................................................................................... 7

Fed. R. Civ. P. 59(e) ........................................................................................................................... 2

**REGULATIONS**

37 C.F.R.
  § 210.27 ................................................................................................................................. 4, 8
  § 210.27(i) .................................................................................................................................. 4
  § 210.27(i)(5)(ii) ........................................................................................................................ 9
  § 210.27(k) ............................................................................................................................... 10
  § 385.2 ....................................................................................................................................... 3

## OTHER AUTHORITIES

*1040 U.S. Individual Income Tax Return*,
    IRS, https://www.irs.gov/pub/irs-pdf/f1040.pdf ...................................................................... 10

https://www.spotify.com/us/audiobooks/#plans ............................................................................ 10

I.     **INTRODUCTION**

MLC's post-judgment motion—a last-ditch attempt to resuscitate a frivolous lawsuit—must be rejected. None of MLC's arguments offers any basis to doubt, let alone reconsider, the Court's conclusion that Spotify Premium is a Bundle. MLC does not demonstrate that the Court's decision was "clear error" or would cause "manifest injustice." MLC only rehashes rejected arguments about Spotify's prior reporting of Premium as a standalone product, and that Spotify subscribers do not value audiobooks. That is not a proper basis for reconsideration. MLC's off-hand claim of "far-reaching and profound financial consequences" (Mot. for Recons., Dkt. No. 71 ("Mot."), at 1) does not support reconsideration either. Holding a party to the language of regulations *that its members actively bargained for* through intense negotiations amongst sophisticated parties is not manifest injustice.

Rather than seriously question the Court's actual holding, MLC primarily advances two entirely new and different claims that it could have, but did not, press earlier. First, having made the strategic choice to focus its complaint on the argument that Premium is *not* a Bundle, it now tries to inject a new claim in the alternative that *even if Premium is a Bundle*, Spotify improperly calculated royalties for that Bundle. Second, it attempts to revive an abandoned (and futile) claim that Spotify underpaid royalties on its separate Audiobooks Access product, a claim also distinct from the question of whether Premium is a Bundle. Those claims likewise do not justify reconsideration, and MLC's pivot to them underscores how little it has to say about the Court's holding on the claims and arguments that MLC actually did make.

As for MLC's request to vacate the judgment so it can seek to amend the complaint to raise the same arguments and claims described above, MLC and its experienced counsel had multiple chances to amend earlier in the case. Instead, MLC chose to rely on the pleading it had already filed, at the risk of waiving the right to amend "to cure any defects that have been made apparent

by the briefing." Torres Indiv. Prac. III(B)(iv). MLC's attempt to backpedal now is particularly unpersuasive because its amendments are entirely futile; they are attempts to raise the same recycled arguments and baseless new claims that underpin MLC's request for reconsideration.

## II.   LEGAL STANDARD

MLC breezes past the legal standards governing its motion, misleadingly omitting crucial parts of the authority on which it purports to rely. It's easy to see why. The standards are not kind to MLC's efforts to relitigate its case, and MLC's motion falls well short of each.

The standard for reconsideration is higher than MLC lets on. As this Court recently acknowledged, "[r]econsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly.'" *Holland v. Lions Gate Ent. & Films*, No. 21-cv-02944-AT, 2025 WL 449325, at *1 (S.D.N.Y. Jan. 29, 2025) (citation omitted). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Mazzei v. The Money Store*, No. 20-cv-03702-AT, 2021 WL 4429631, at *1 (S.D.N.Y. Sept. 27, 2021) (cleaned up). MLC's claim of "manifest injustice" requires a showing that the "prior decision is 'dead wrong.'" *OGI Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.*, No. 06-cv-9441, 2007 WL 2900225, at *3 n.1 (S.D.N.Y. Oct. 4, 2007) (denying reconsideration of motion to dismiss). Given this high standard, courts—and this Court in particular—routinely deny motions to reconsider dismissals. *See, e.g.*, *Holland*, 2025 WL 449325, at *1; *SuperCom, Ltd. v. Sabby Volatility Warrant Master Fund Ltd.*, No. 21-cv-02857-AT, 2023 WL 3919450, at *1 (S.D.N.Y. Mar. 15, 2023); *Mazzei*, 2021 WL 4429631, at *1; *SEC v. Rio Tinto PLC*, No. 17-cv-07994-AT, 2021 WL 818745, at *1 (S.D.N.Y. Mar. 3, 2021).

MLC's post-judgment request to amend the complaint faces equally high hurdles. It requires vacating the judgment under Fed. R. Civ. P. 59(e) or 60(b). *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). Such vacatur is appropriate only in "extraordinary"

2

circumstances. *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020) (cleaned up); *Medina v. Tremor Video, Inc.,* No. 13-cv-8364, 2015 WL 3540809, at *1-2 (S.D.N.Y. June 5, 2015), *aff'd*, 640 F. App'x 45 (2d Cir. 2016). MLC is also simply wrong that a plaintiff "that has not previously amended its complaint, is *required* to be given 'at least one opportunity to replead,' with the benefit of the Court's ruling on the deficiencies of the original complaint." Mot. at 6 (emphasis added) (citation omitted). "[E]ven where a plaintiff has not had one such opportunity [to replead], a district court may properly deny her post-judgment motion for leave to amend if her proposed amendments would be futile," which, as discussed below, is the case here. *Shull v. TBTF Prods., Inc.*, No. 20-cv-3529, 2021 WL 3027181, at *3 (2d Cir. July 19, 2021); *see also Mandala v. NTT Data, Inc.*, 88 F.4th 353, 362-63 (2d Cir. 2023) (repleading unnecessary where there is "a valid rationale like undue delay or futility").

### III. ARGUMENT

#### A. MLC's Attempt to Relitigate Points Already Considered and Rejected Provides No Basis to Reconsider the Court's Holding that Premium is a Bundle

In briefing Spotify's motion to dismiss, MLC and Spotify agreed that whether Premium qualifies as a Bundle turned on only two questions: (1) whether audiobook streaming is an "other product[] or service[]" distinct from music streaming; and (2) whether audiobook streaming has "more than token value." 37 C.F.R. § 385.2; *see* Mot. to Dismiss, Dkt. No. 25 ("MTD"), at 10; Mot. to Dismiss Opp'n., Dkt. No. 28 ("MTD Opp'n."), at 15, 18, 25. After thoughtful analysis, this Court correctly answered both questions affirmatively, Dkt. No. 61 ("Order") at 10, 13, and neither of MLC's two arguments targeting that holding meets the high standard for reconsideration. Rather, they are improper attempts to "relitigat[e] old issues, … secur[e] a rehearing on the merits, [and] otherwise tak[e] a second bite at the apple." *Mazzei*, 2021 WL 4429631, at *1 (cleaned up).

3

1. <u>MLC's minor variation on its rejected argument that Spotify is bound to its earlier reporting of Premium as a standalone product comes too late.</u>

MLC argues that because Spotify previously decided to overpay royalties and report Premium as a standalone product, it was bound to that decision forevermore. Mot. at 5-6. If that sounds like a familiar argument, it is. *See* MTD Opp'n. at 2-4, 17. It's also one the Court squarely rejected. "That Spotify did not immediately report Premium as a Bundle to MLC in November 2023 although it could have, and thus likely paid more in royalties to MLC than it was otherwise required to pay, does not mean that Spotify's later decision to reclassify Premium as a Bundle is invalid." Order at 9. As this Court noted, "MLC points to no provision of § 115 or its implementing regulations that suggests that a digital service provider like Spotify forfeits the opportunity to report an offering as a Bundle simply because it previously did not do so." *Id.*

MLC's reconsideration motion belatedly attempts to identify such a regulation. Under 37 C.F.R. § 210.27(i), digital music providers certify monthly "reports of usage" to MLC. MLC argues that, because Spotify certified reports that initially treated Premium as a standalone offering, it is forever bound to that treatment. Mot. at 5.

At most, this represents a minor variation on the argument MLC raised and this Court rejected before. Despite many prior opportunities, MLC did not cite § 210.27(i) in support of its argument that Spotify was bound to its prior reporting. Nothing prevented MLC from doing so. Indeed, MLC cited 37 C.F.R. § 210.27 in its complaint, so it was well aware of that regulation. Compl., Dkt. No. 1, at 21. MLC's regret at not pointing the court to this regulation earlier is not a proper basis for granting reconsideration, and the motion can be denied on that basis alone. *See, e.g.*, *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), as amended (July 13, 2012) (rejecting attempt to "present[] the case under new theories"). In any event, this

4

regulation would not have advanced MLC's position, even if it had been cited earlier, as is discussed *infra* at 9-10.

        2.      <u>MLC's argument that Spotify users might not value audiobooks is an argument that was considered and rejected.</u>

MLC also attacks the Court's Bundle holding on the ground that the Court erred in holding that 15 monthly hours of audiobook streaming has "more than token value." Mot. at 6. This argument also was raised before. *Compare* MTD Opp'n. at 13 *with* Mot. at 6. This Court did not overlook that argument, but rather addressed it directly: "Applying the ordinary meaning of 'token value' to the facts as alleged, the Court can draw only one conclusion: that 15 hours of monthly audiobook streaming is a product or service that 'ha[s] more than token value." Order at 13. The Court's decision was correct and MLC offers no new arguments in response; its recycled arguments provide no basis for reconsideration.[1] *See, e.g.*, *Holland*, 2025 WL 449325, at *1; *SuperCom*, 2023 WL 3919450, at *1; *Mazzei*, 2021 WL 4429631, at *1.

    **B.**    **MLC's Attempts To Raise New Or Abandoned Claims Also Provide No Basis for Reconsideration**

MLC also seeks reconsideration based on one new claim that could have been raised earlier as it arises out of the same set of facts, and one claim it forfeited earlier in this case. Neither warrants reconsideration.

        1.      <u>MLC cannot use reconsideration to advance a new claim that Spotify underpaid royalties even if Premium is a Bundle.</u>

MLC argues that reconsideration should be granted to consider an alternative claim it never raised, but could have, in its complaint: that, *even if Spotify Premium is a Bundle*, Spotify nonetheless underpaid royalties by misapplying the rate formula. *See* Mot. at 3-4. MLC could

---

[1] MLC's claim that the Court engaged in improper fact finding (Mot. at 6) fails to acknowledge the Court's explanation that any non-judicially-noticed facts "outside the four corners of the complaint . . . are unnecessary to the Court's decision and are not relied upon." Order at 13 n.6.

5

have easily raised that claim in the alternative. Fed. R. Civ. P. 8(d)(2). Instead, its complaint focused only on the "underpayment of royalties" resulting from "Spotify's *characterization of Premium as a Bundled Subscription Offering*." Compl. at 22. (emphasis added).

Indeed, MLC effectively concedes this point, stating only that the allegations "*raise[d] an inference* that Spotify improperly used the price of Audiobooks Access" in the Bundle rate formula. Mot. at 4 (emphasis added). But the Court was "not required to either speculate or puzzle out [MLC's] allegations," *Earl v. Good Samaritan Hosp. of Suffern N.Y.*, 625 F. Supp. 3d 292, 296 (S.D.N.Y. 2022), particularly when MLC is represented by sophisticated counsel. *See Holland v. City of New York*, 197 F. Supp. 3d 529, 537 (S.D.N.Y. 2016) (even in the case of a *pro se* plaintiff, courts "cannot invent factual allegations that he has not pled"). MLC's cited authorities are distinguishable. In both, unlike here, the plaintiffs had expressly offered the alternative liability theory in their respective complaints. *Swan v. Page*, No. 23-cv-7912, 2024 WL 5165516, at *2 (2d Cir. Dec. 19, 2024); *Farsura v. QS Terme US Corp.,* No. 21-cv-9030-AT, ECF No. 1-2 (S.D.N.Y. Nov. 2, 2021).

MLC strategically chose to go all in on its theory that Spotify underpaid royalties by improperly classifying Premium as a Bundle, full stop. Having lost that bet, MLC cannot use a post-judgment motion for reconsideration to place a different one. *See, e.g.*, *Analytical Surveys*, 684 F.3d at 52.

> 2. MLC cannot revive its abandoned argument that Spotify underpaid royalties for its standalone Audiobooks Access product.

MLC next tries to revive a claim that was barely referred to in its complaint, and was completely forfeited at the motion to dismiss stage. Specifically, the claim is that Spotify underpaid royalties for its separate Audiobooks Access product because—although it is advertised

6

as providing only free, ad-supported music streaming, Compl. ¶¶ 46, 48—it in fact secretly provides access to the same ad-free, on-demand music streaming as Premium, *id.* ¶ 58.

In moving to dismiss MLC's complaint in its entirety, Spotify explained why MLC's premise was false and that the allegation had apparently been abandoned during the pre-motion-letters process. *See* MTD at 17 n.16; *see also* Dkt. No. 18 at 2 n.2. In response, MLC's opposition did not suggest it was maintaining any claim related to underpayment of royalties for Audiobooks Access. Instead, it focused its opposition *entirely* on its argument that Spotify Premium is not a Bundle, and pointed to the Audiobooks Access product solely in support of that argument. *See* MTD Opp'n. 17-18. Again, MLC made a strategic choice, and it cannot now use a reconsideration motion to salvage this forfeited claim. *See Wilbush v. Ambac Fin. Grp., Inc.*, 271 F. Supp. 3d 473, 487 n.9 (S.D.N.Y. 2017) ("Where a plaintiff fails to raise claims in opposition to dismissal in the district court, any such claims are forfeited.").[2]

To be clear, MLC's allegations regarding the music functionality of Audiobooks Access are simply false, as MLC could have confirmed prior to filing suit (and again prior to seeking reconsideration).[3] At the very least, MLC's assertion that "it appears" that Audiobooks Access secretly offers users ad-free, on-demand music is facially implausible and not sufficient to state a

---

[2] MLC's reliance on *Bethea v. Winfield Sec. Corp.*, No. 23-cv-00922, 2024 WL 2783753 (S.D.N.Y. May 29, 2024) is misplaced. That pregnancy-discrimination case involved allegations that could be interpreted as raising claims under multiple potential statutory provisions, and the Court—at the urging of amici representing antidiscrimination organizations—found that it had overlooked some such provisions. *Id.* Here the court has not overlooked any controlling law.

[3] By continuing to press this false claim, counsel for MLC has shirked the Rule 11 obligation to make an "inquiry reasonable under the circumstances" that "the factual allegations have evidentiary support." Fed. R. Civ. P. 11(b). As was explained repeatedly after the filing of the complaint, one can readily confirm that Spotify's Audiobooks Access product and the Free product have identical music functionality by creating new accounts for both products, and comparing that functionality. Spotify reserves rights to seek appropriate sanctions if MLC continues to press this allegation.

claim for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (holding that courts should disregard "naked assertions devoid of further factual enhancement" (cleaned up)); *Ekpe v. City of New York*, No. 20-cv-9143-AT, 2024 WL 1621207, at *2 (S.D.N.Y. Apr. 12, 2024). Given that MLC cannot even meet the plausibility standard, it comes nowhere close to meeting the significantly higher bar for reconsideration. *Holland*, 2025 WL 449325, at *1; *SuperCom*, 2023 WL 3919450, at *1.

    **C.**    **Leave to Amend Is Unwarranted and Would be Futile.**

Alternatively, MLC seeks post-judgment leave to amend its complaint to add (1) allegations about Spotify's certifications under 37 C.F.R. § 210.27(i), and (2) allegations about underpayment of royalties for Premium even under the Bundle formula. Mot. 7-9. Leave should be denied because (1) MLC has failed to demonstrate that there are "extraordinary circumstances" warranting post-judgment relief, and (2) both proposed amendments would be futile. *In re Pinnock*, 833 F. App'x 498, 501 (2d Cir. 2020); *Metzler*, 970 F.3d 133, 143; *Shull*, 2021 WL 3027181, at *3; *Mandala*, 88 F.4th 353, 362-63. Moreover, in addition to wasting the Court's resources, permitting MLC's frivolous suit to proceed would prejudice music services across the industry (including Spotify), who, by law, are bankrolling MLC's lawsuit. *See* MTD at 3-4.

    1.    <u>MLC cannot show "extraordinary circumstances" warranting a post-judgment opportunity to amend its complaint.</u>

Under Rule 59(e) and Rule 60(b), the Court "may exercise its discretion more exactingly here" since MLC "had an opportunity to assert the amendment earlier, but waited until after judgment before requesting leave in any robust way." *Friedman v. Endo Int'l PLC*, No. 16-cv-3912, 2018 WL 2021561, at *1 (S.D.N.Y. Apr. 27, 2018) (citation omitted). Indeed, this "Court's Individual Practices in Civil Cases specifically give plaintiffs an opportunity to amend their complaint following the exchange of pre-motion letters in advance of a motion to dismiss."

*SuperCom, Ltd. v. Sabby Volatility Warrant Master Fund Ltd.*, No. 21-cv-02857-AT, 2022 WL 2467783, at *3 n.4 (S.D.N.Y. July 6, 2022).  MLC is "represented by experienced counsel" and "had ample opportunity to . . . file an amended complaint, but chose not to do so."  *Id.*

Denial is particularly appropriate because, as explained above, MLC's newfound challenges to Spotify's royalty calculations are an attempt to add new claims post-judgment.  *See Rivera v. Fed. Bureau of Prisons*, 08-cv-5590, 2013 WL 5052153, at *3  (S.D.N.Y. Sep. 12, 2013) ("A Rule 60(b) motion does not provide the movant an opportunity to raise new claims." (cleaned up)); *see also, e.g.*, W*ade Park Land Holdings, LLC v. Kalikow*, No. 21-cv-1657, 2022 WL 2479110, at *4 (S.D.N.Y. July 6, 2022) (denying post-judgment motion for "leave to add a new claim" because "Plaintiffs did not need the benefit of the Court's decision to include these allegations in their pleadings").  This gamesmanship should not be rewarded.

2.   <u>MLC's proposed amendments would be futile.</u>

Tellingly, MLC did not attach a proposed amended complaint.[4]  Regardless, the proposed amendments would be futile.  *Mandala.*, 88 F.4th at 362-63.

First, MLC seeks to add allegations about Spotify's prior certifications of monthly usage reports.  The certification used by Spotify confirms the accuracy of usage data and financial inputs. *See* 37 C.F.R. § 210.27(i)(5)(ii).  Nothing in the certification regulation suggests that Spotify "forfeits the opportunity to report an offering as a Bundle simply because it previously did not do so."  Order at 9.  Indeed, as this Court appreciated, reporting Premium as a standalone product leads to *overpayment* of royalties.  *Id.*  As an analogue, if a taxpayer chooses not to take a deduction for which she is eligible (thus overpaying her taxes), nobody would seriously argue that she is

---

[4] MLC apparently seeks vacatur of the judgment in order to file a *subsequent* motion seeking leave to amend, to which it would presumably add a proposed amended complaint with its specific allegations.  Torres Indiv. Prac. III(H).  MLC's efforts to obtain repeated bites at the apple only underscores why its motion is a waste of judicial and party resources.

9

precluded from claiming the deduction the next year, even though she had previously certified the tax return to be "true, correct, and complete" "to the best of [her] knowledge and belief."[5]  To the extent MLC's complaint is that Spotify's earlier certifications were inaccurate because they reported Premium as a standalone product even though it qualified as a Bundle, the regulations expressly permit Spotify to adjust its earlier reports, cure any possible defect, and obtain a refund of overpaid royalties—which only underscores the irrelevance of those earlier certifications to the legal question of whether Premium is a Bundle.  *See generally* 37 C.F.R. § 210.27(k).

Second, MLC seeks to amend the complaint to claim Spotify underpaid royalties even if Premium is a Bundle.  MLC claims that, in determining the standalone price of the audiobook component of Premium for purposes of the Bundle rate calculation, it was improper to use the price of Audiobooks Access ($9.99) since those subscribers also get a certain type of access to music.  *See* Mot. at 8-9.  But Audiobooks Access subscribers get access to Spotify's "*free*, ad-supported service."  Compl. ¶¶ 46, 48 (emphasis added); https://www.spotify.com/us/audiobooks/#plans.  Thus, the $9.99 price is solely for the audiobook component (15 monthly hours of audiobook streaming), which is identical to the audiobook component of Premium.  It thus makes perfect sense to use the price of Audiobooks Access as the standalone price for audiobook access.

Notably, while MLC claims the $9.99 price is "inconsistent with market comparables," Mot. at 9, it does not actually refer to any, *see AG Funds, L.P. v. Sanofi*, 87 F. Supp. 3d 510, 549 (S.D.N.Y. 2015) ("In the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile.").  That is likely because available marketplace evidence confirms that the price of a comparable audiobook service—if anything—

---

[5]  *See 1040 U.S. Individual Income Tax Return*, IRS, https://www.irs.gov/pub/irs-pdf/f1040.pdf.

is *higher* than $9.99. *See* MTD at 16 (providing as examples an individual audiobook sold for $26.99 and an Audible subscription priced at $14.95/month). Therefore, the proposed amendment is futile.

Dated: February 26, 2025							Respectfully submitted,

								LATHAM & WATKINS LLP

								*/s/ Allison L. Stillman*
								Allison L. Stillman
								Grace McLaughlin
								1271 Avenue of the Americas
								New York, NY 10020
								Telephone: (212) 906-1200
								alli.stillman@lw.com
								grace.mclaughlin@lw.com

								Sy Damle
								Michael E. Bern (*pro hac vice*)
								555 Eleventh Street, NW
								Suite 1000
								Washington, D.C. 20004
								Telephone: (202) 637-2200
								sy.damle@lw.com
								michael.bern@lw.com

								*Attorneys for Spotify USA Inc.*

11

## **CERTIFICATION OF COMPLIANCE**

I hereby state that the foregoing Opposition to Plaintiff's Motion for Reconsideration was prepared on a computer using Microsoft Word. The total number of words in this brief, excluding the caption, table of contents, table of authorities, signature block, and this certification is 3,414. In preparing this certificate, I relied on the word count program in Microsoft Word.

Dated: February 26, 2025

LATHAM & WATKINS LLP

*/s/ Allison L. Stillman*
Allison L. Stillman
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: alli.stillman@lw.com
