UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MECHANICAL LICENSING COLLECTIVE,

                Plaintiff,

-against-

SPOTIFY USA INC.,

                Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/11/2025
```

24 Civ. 3809 (AT)

**ORDER**

ANALISA TORRES, District Judge:

      By order dated January 28, 2025, the Court dismissed with prejudice the complaint filed by Plaintiff, Mechanical Licensing Collective ("MLC"), against Defendant, Spotify USA Inc. ("Spotify"). *Mech. Licensing Collective v. Spotify USA Inc.* (*MLC*), No. 24 Civ. 3809, 2025 WL 328001 (S.D.N.Y. Jan. 29, 2025). The Clerk of Court entered judgment and closed the case the following day. ECF No. 62. Before the Court is MLC's motion for reconsideration and vacatur of the judgment. ECF No. 70. For the reasons stated below, the motion is DENIED IN PART and GRANTED IN PART.

## LEGAL STANDARD

      MLC brings its motion under Federal Rules of Civil Procedure 59(e) and 60(b). Mem. at 1, ECF No. 71. It asks the Court to vacate the judgment, reconsider the dismissal order, and deny Spotify's motion to dismiss. *Id.* In the alternative, MLC asks that the Court vacate the judgment to allow MLC to move to file an amended complaint. *Id.*

      It is "well-settled" that litigants may not use motions for reconsideration filed under Rules 59(e) and 60(b) as "vehicle[s] for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quotation omitted). The standard "is strict, and reconsideration will generally be denied unless the moving

party can point to controlling decisions or data that the Court overlooked." *Id.* (citation omitted); *see also Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (explaining that reconsideration should be granted "only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice'" (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992))).

"[S]pecial considerations come into play," however, "[w]hen vacatur is sought in order to obtain leave to file a[] [first] amended complaint." *Mandala v. NTT Data, Inc.*, 88 F.4th 353, 361 (2d Cir. 2023).  To balance the "liberal spirit" of Federal Rule of Civil Procedure 15, which provides for leave to amend "when justice so requires," with the strict finality of Rule 60, which provides narrow avenues for relief from a final judgment, the Second Circuit has generally "ensure[d]" that plaintiffs seeking post-judgment leave to amend are given "at least one opportunity to replead," so long as there is no "undue delay, bad faith[,] or dilatory motive on the part of the movant . . . [or] undue prejudice to the opposing party," and any amendment would not be futile. *Id.* at 361–62 (quotations omitted).

## ANALYSIS[1]

MLC raises four grounds on which the Court should vacate its judgment and reconsider its dismissal order or, alternatively, vacate the judgment to allow MLC to move to file an amended complaint.

*First*, MLC contends that the Court did not consider that Spotify has failed to properly account for and pay royalties to MLC in connection with Spotify's Audiobooks Access plan.

---

[1] The Court presumes familiarity with the facts alleged in the complaint, Compl., ECF No. 1, and the reasoning supporting the dismissal order, *see generally MLC*, 2025 WL 328001, and does not repeat them here other than as necessary.

Mem. at 2–3.  The complaint's only allegation related to this claim is conclusory, and there are no facts to support it—particularly, no facts related to Spotify's reporting and payment of royalties in connection with its Audiobooks Access plan.  *See* Compl. ¶ 58, ECF No. 1.  Accordingly, the Court was not required to credit the allegation.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  Even if MLC had properly pleaded the claim, MLC likely forfeited it by failing to raise it in its briefing opposing Spotify's motion to dismiss.  *See Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) (explaining that claims not raised by a counseled plaintiff in opposition to a motion to dismiss may be deemed abandoned provided there is no "manifest injustice"); *e.g., Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44, 46 n.1 (2d Cir. 2018).  And, if the claim were not abandoned, the Court would have dismissed it on the merits for lack of supporting facts.  *See Iqbal*, 556 U.S. at 681.

The Court's decision not to address MLC's conclusory claim that it inadvertently or strategically forfeited does not present the "proverbial rare case" of manifest injustice.  *Colbert*, 824 F. App'x at 11 (quotation omitted).  MLC's request for reconsideration is, therefore, denied.  Nevertheless, because the claim is not demonstrably futile and the Court has a "strong preference for resolving disputes on the merits" rather than on the technical ground of procedural default, the Court will allow MLC to seek leave to plead the claim in an amended complaint.  *Mandala*, 88 F.4th at 362 (quotation omitted).

*Second*, MLC seeks reconsideration based on a theory that it did not raise directly in its complaint or opposition papers, but which MLC believes could have been inferred from the complaint: that Spotify has improperly used the price of the Audiobooks Access plan as the standalone retail price of the non-music component of Premium when calculating the royalties due in connection with Premium.  Mem. at 3–4.  "[A] searching review of the complaint,"

3

however, does not reveal facts sufficient to support the conclusion that Spotify used the price of Audiobooks Access as the standalone, non-music price component in Premium's Bundle royalty formula. *Farsura v. QC Terme US Corp.*, No. 21 Civ. 9030, 2022 WL 16838212, at *3 (S.D.N.Y. Nov. 8, 2022). MLC's request that the Court reconsider the dismissal order in light of this claim is, therefore, denied. *See Analytical Survs.*, 684 F.3d at 52. Because the claim is not demonstrably futile, however, the Court will allow MLC to seek leave to plead the claim in an amended complaint.

*Third*, MLC argues that the Court overlooked MLC's allegations that Spotify repeatedly certified the accuracy of its prior reporting of Premium as a standalone subscription offering. Mem. at 5–6. These allegations are sufficient, MLC contends, to demonstrate that Premium is a standalone subscription offering and not a Bundle. *Id.* at 8; Reply at 3–4, ECF No. 73.

The Court did not overlook these allegations; it rejected them as irrelevant and insufficient to establish that Premium is a standalone subscription offering. The fact that "Spotify did not immediately report Premium as a Bundle to MLC in November 2023 although it could have, and thus likely paid more in royalties to MLC than it was otherwise required to pay, does not mean that Spotify's later decision to reclassify Premium as a Bundle is invalid." *MLC*, 2025 WL 328001, at *5. In other words, a music provider's decision to classify its product as a standalone subscription offering or a Bundle has no bearing on the Court's independent analysis of the legal issue. Although a provider's over- or under-payment of royalties could bear on the remedy ordered in a royalty reporting case, it has little relevance to a court's analysis of the legal question posed by the regulations: does a product qualify as a Bundle or is it a standalone subscription offering? Although Providers like Spotify are required to make their reports and royalty payments to MLC in good faith and to certify the accuracy of their reporting under 37

C.F.R. § 210.27(i), any legal conclusion a provider draws in making those reports—including its decision as to whether to classify the product as a Bundle or a standalone subscription offering—does not factor into, and cannot supplant, the Court's analysis of the issue.[2]

Accordingly, MLC's allegations that Spotify reported Premium as a standalone subscription offering when Premium included fifteen monthly hours of audiobook listening—*i.e.*, that Spotify likely paid more in royalties than it was otherwise required to pay—do not alter the Court's determination that Premium is properly characterized as a Bundle. *MLC*, 2025 WL 328001, at *5. Because the Court addressed this argument in its dismissal order and MLC has not identified any controlling law or evidence that the Court overlooked in reaching its conclusion, MLC's request for reconsideration of this issue is denied. *See Analytical Survs.*, 684 F.3d at 52.

*Fourth*, MLC contends that the Court overlooked its arguments and engaged in improper factfinding when the Court held that the complaint failed to plead facts sufficient to show that fifteen hours of monthly audiobook listening is of no more than "token value." Mem. at 6–7; *see MLC*, 2025 WL 328.001, at *5–6. The Court considered and rejected these arguments in the dismissal order, finding that "token value" for purposes of 37 C.F.R. § 385.2 is not limited to the subjective views of Spotify and its users. *See MLC*, 2025 WL 328001, at *6 ("MLC cannot plausibly claim that having access to audiobooks is not something of intrinsic and monetary value to many, even if only a fraction of Spotify's millions of Premium subscribers may take advantage of it."). MLC's complaint contains no allegations suggesting that fifteen hours of audiobook listening per month is something of merely "minimal, perfunctory, symbolic, inconsequential, or insubstantial value" generally, *id.* (citation omitted), and MLC does not

---

[2] To borrow from Spotify's analogy, a taxpayer's certified belief that they overpaid their taxes is of no consequence to a factfinder's independent analysis of whether the taxpayer did, in fact, overpay. *See* Opp. at 9–10, ECF No. 72.

5

suggest that it is prepared to make such allegations now. Indeed, the Court took judicial notice of the "obvious" and "generally known" fact that "audiobooks generally are products of value," *i.e.*, products that may be found for sale in commercial settings for more than a *de minimis* price, and it rejected MLC's claim of improper factfinding head-on. *Id.* at *6 n.6. Because the Court addressed MLC's arguments in its dismissal order and MLC has not identified any controlling law or evidence that the Court overlooked in reaching its conclusion, MLC's request for reconsideration of this issue, too, is denied.

In sum, the Court denies MLC's request under Rules 59(e) and 60(b) to reconsider the dismissal order. The Court will, however, vacate the judgment to allow MLC to seek leave to file an amended complaint addressing the first and second claims discussed above—that Spotify has allegedly underpaid the royalties due on the Audiobooks Access plan and improperly calculated the royalties owed in connection with Premium by relying on Audiobooks Access as the standalone subscription price of the Bundle's non-music component.

## CONCLUSION

For the reasons stated above, MLC's motion is DENIED IN PART and GRANTED IN PART. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 70, vacate the judgment at ECF No. 62, and reopen the case. Within 21 days of the date of this order, MLC shall file its motion for leave to amend the complaint.[3]

SO ORDERED.

Dated: March 11, 2025
       New York, New York

_____
ANALISA TORRES
United States District Judge

---

[3] MLC need not file a pre-motion letter prior to filing its contemplated motion for leave to amend.