# EXHIBIT 1

Allison L. Stillman
Direct Dial: 212.906.1747
alli.stillman@lw.com

**LATHAM & WATKINS**LLP

1271 Avenue of the Americas
New York, New York  10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

March 21, 2025

**VIA EMAIL**

Jay Cohen
Darren Johnson
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
djohnson@paulweiss.com
jaycohen@paulweiss.com

Re:   *Mechanical Licensing Collective v. Spotify USA Inc.*, No. 1:24-cv-03809

Dear Jay:

Further to our discussion by phone on March 14, 2025—as well as a number of prior discussions we have had since the Mechanical Licensing Collective ("MLC") filed this litigation in May of 2024—we write to clarify two factual errors that the MLC has repeated over the course of this litigation: (1) that subscribers to Spotify's Audiobooks Access Tier ("AAT") receive the "same unlimited, on-demand, and ad-free music streaming service that is included in the Premium plan"; and (2) that Spotify would owe the MLC higher royalties if it had not used AAT as the standalone subscription price to calculate the royalties owed for Premium.  As we have explained to you repeatedly, neither allegation is true.

While these errors have been troubling to the extent they have persisted throughout the litigation, they are particularly important to correct now, in light of the Court's recent order allowing MLC, for the sake of procedural exhaustion, to file a motion for leave to file an amended complaint addressing these exact issues (and only these issues, having twice confirmed that Spotify Premium is a Bundle): (i) whether Spotify "underpaid the royalties due on the Audiobooks Access plan" because AAT allegedly provides the same music streaming experience as Premium and (ii) whether Spotify "improperly calculated the royalties owed in connection with Premium by relying on Audiobooks Access as the standalone subscription price of the Bundle's non-music component."  ECF No. 74 at 6.  But, as explained in detail below, both claims are based on incorrect facts.  Having now again highlighted and clarified the correct information to MLC in writing, Spotify reiterates that it reserves all rights should MLC choose to continue repeating falsehoods and inaccuracies in its request to file an amended complaint, including the right to pursue all appropriate sanctions.

Allison L. Stillman
March 21, 2025
Page 2

LATHAM&WATKINS LLP

## Spotify's Audiobooks Access Tier Contains The Same Music Functionality As Spotify's Ad-Supported Free Tier

That this claim continues to appear across this litigation is astounding given that in March 2024—approximately *two months before* MLC filed its Complaint—MLC asked Spotify whether the music service in AAT is ad-supported and Spotify immediately confirmed that it was. *See* MLC-00004467 (March 2024 email thread between R. Marshall (General Counsel, MLC) and S. Domeier (Senior Legal Counsel, Spotify)). In late May, only two weeks after the Complaint was filed, Spotify met with MLC in person and explained, among other things, that AAT includes only Spotify Free for music streaming. Spotify again confirmed this in another meeting with MLC in July. In parallel, Spotify has noted at every point in this litigation (and Spotify again confirms) that it is simply false that AAT subscriptions include Premium music. *See* July 1, 2024, Letter from A. Stillman to J. Cohen at 3 n.5; July 19, 2024, Pre-Motion Letter (ECF No. 18) at 2 n.2; Memorandum in Support of Motion to Dismiss (ECF No. 25) at 8, 17 n.16; Reply in Support of Motion to Dismiss (ECF No. 29) at 10-11; Responses and Objections to Plaintiff's First Set of Interrogatories at 24; Dec. 27, 2024, Email from A. Stillman to J. Cohen; Opposition to Plaintiff's Motion for Reconsideration (ECF No. 72) at 7 n.3 (noting that "one can readily confirm that Spotify's Audiobooks Access product and the Free product have identical music functionality by creating new accounts for both products, and comparing that functionality."); *id*. at 6-8.[1] MLC and its experienced attorneys could have easily conducted their own investigation to confirm this. That MLC did not—particularly where MLC had this information before initiating this litigation—evidences a lack of reasonable inquiry into this factual claim before it was put before the court.

In an effort to correct, hopefully for the final time, MLC's apparent misperception that AAT is the same product as Premium, Spotify confirms again the following: An AAT subscriber only has access to Spotify Free, which has been the case since the launch of AAT.

For MLC's ease, below is a comparison of the functionality between Free and Premium that can also be accessed via http://www.spotify.com/premium:

---

[1] To the extent the MLC had questions about this at any time, it should have asked, as Spotify and its counsel invited (even implored) both your team and MLC staff on many occasions.

**Allison L. Stillman**
**March 21, 2025**
**Page 3**

LATHAM&WATKINS LLP

| What you'll get | Spotify's Free plan | Spotify's Premium plans |
|---|---|---|
| Ad-free music listening | — | ✓ |
| Download to listen offline | — | ✓ |
| Play songs in any order | — | ✓ |
| High audio quality | — | ✓ |
| Listen with friends in real time | — | ✓ |
| Organize listening queue | — | ✓ |

      None of the features relating to Spotify Premium above are available via AAT accounts and never have been. Though you have not articulated the basis for MLC's misperception that AAT contains the same music experience as Premium, we write to clarify two aspects of Spotify Free—ad load and on-demand streaming—that vary as part of the normal Spotify Free user experience, and thus may have contributed to your misperception.

      First, if a user signs up for a brand new Free account (or an AAT account), then there is a period of time during which the user receives on-demand music with no advertisements (but not other Premium functionality such as offline listening or high audio quality). In some cases, this may be a two-week trial. Following this trial period, the ad load for new Free accounts (and thus new AAT accounts) increases, and the ability to play on-demand music ceases.

      Second, Free users have the ability to play on-demand music (with ads) when listening using a desktop or tablet, but not on a mobile device; AAT users have the exact same experience.

      Because an AAT subscriber experiences the same music streaming functionality as a Free user, there is no factual basis for MLC's assertion that AAT provides the same music experience as Premium.

**Allison L. Stillman**
**March 21, 2025**
**Page 4**

## The $9.99 Standalone Price Spotify Used To Determine The Royalties Owed On Premium Is Valid *With Or Without* AAT

MLC has alleged that Spotify "underpaid royalties owed to the MLC for Premium" by using AAT as the standalone price of Premium's audiobook component in its Bundle calculations. Mem. in Support of Motion for Reconsideration at 3–4. MLC apparently intends to allege that "Spotify's improper inflation of Premium's audiobook component price decreased the pro-rata portion of Premium's subscription price attributable to music, resulting in significant underpayment of royalties to the MLC." *Id* at 9.

As explained above, MLC's position, which is that Spotify's use of AAT as the standalone price is "improper[]" because AAT is not a standalone audiobook service, is wrong. Spotify was therefore clearly entitled under the regulations to calculate and pay royalties to MLC based on the price of AAT. *See* 37 C.F.R. § 385.2.

Even assuming, *arguendo,* that AAT was not a proper basis for the calculations, however, **this would not change the amount of royalties due to the MLC**. The regulations provide that, where there is no standalone price for a component of a Bundle, "the Service Provider shall use the average standalone published price for End Users for the most closely comparable product or service in the U.S. or, if more than one comparable exists, the average of standalone prices for comparables." 37 C.F.R. § 385.2. "If no reasonably comparable product or service exists in the U.S., then the Service Provider may use another good faith, reasonable measure of the market value of the component." *Id.* Thus, even if Spotify had not used AAT to determine the royalties owed on Premium, Spotify would use the price of the most closely comparable product.

Here, the "most closely comparable product" is Amazon's Audible Standard subscription, which allows users to listen to one audiobook per month for a $9.99 monthly fee. *See* Learn about Audible Standard, Audible, https://help.audible.com/s/article/learn-about-standard-plan?language=en_US (last accessed Mar. 21, 2025); What membership plans does Audible offer?, Audible, https://help.audible.com/s/article/learn-about-audible-plus?language=en_US (last accessed Mar. 21, 2025).

Allison L. Stillman
March 21, 2025
Page 5



Though Audible's Standard tier is not identical to AAT, many, if not most, English-language audiobooks are under fifteen hours—making one book per month and fifteen hours of audiobook listening per month rough approximates.[2] Indeed, some sources estimate that the average length of an audiobook is 10 hours,[3] which would mean you could listen to one-and-a-half books a month

---

[2] *See, e.g.*, *To Kill a Mockingbird*, Barnes & Noble, https://www.barnesandnoble.com/w/to-kill-a-mockingbird-harper-lee/1100151011?ean=2940170266890 (audiobook length 12 hours and 17 minutes); *Beloved*, Barnes & Noble, https://www.barnesandnoble.com/w/beloved-toni-morrison/1144935425 (audiobook length 12 hours and 5 minutes); Harry Potter and the Sorcerer's Stone, Barnes & Noble, https://www.barnesandnoble.com/w/harry-potter-and-the-sorcerers-stone-j-k-rowling/1100036321?ean=2940169184242 (audiobook length 8 hours and 18 minutes).

[3] *See, e.g.*, Tajammul Pangarkar, *Audiobooks Statistics 2025 By New Way of Storytelling*, Scoop Market (Jan. 14, 2025), https://scoop.market.us/audiobooks-statistics/; Harshmeet, *Understanding the Length of Audiobooks: A Deep Dive into Durations and Narratives*, Dubverse (June 8, 2024), https://dubverse.ai/blog/understanding-the-length-of-audiobooks-a-deep-dive-into-durations-and-narratives/.

Allison L. Stillman
March 21, 2025
Page 6

**LATHAM&WATKINS**LLP

on Spotify Premium, and only one on Audible Standard. This suggests that Spotify's use of $9.99 as the standalone price is appropriate and, if anything, *conservative*.

And even if one were to ignore Audible's Standard tier product, there are any number of additional data points in the market that Spotify can rely on to arrive at the $9.99 standalone value of the audiobook component of Premium. This includes the fact that Spotify and other audiobook sellers charge far more than $9.99 for individual a la carte audiobooks. Furthermore, Spotify's regular financial reporting obligations under IFRS (*i.e.*, outside the context of Section 115) require it to assign a standalone price to the audiobook component of Premium for revenue recognition purposes, and in that context Spotify has concluded—independently of the price of AAT—that $9.99 represents a reasonable and conservative standalone price. *Compare* 37 C.F.R. § 385.2 ("If no reasonably comparable product or service exists in the U.S., then the Service Provider may use another good faith, reasonable measure of the market value of the component."). If Spotify has concluded for purposes of IFRS reporting that $9.99 is a reasonable standalone price, it is unclear how MLC hopes to prove for the narrower purpose of Section 115 that the price is not reasonable.

## Even Using A Lower Standalone Price, Spotify's Royalty Obligation Would Not Be Higher

Finally, even setting all that aside, using a lower standalone price of the audiobook component of Premium would not necessarily lead to *any* increase in royalties to MLC, let alone a "significant" increase, as your Motion for Reconsideration asserted. That is because the royalties Spotify owes for its Bundle products are calculated based on the greater of three prongs: (i) a specified percentage of Service Provider Revenue, (ii) a specified percentage of Total Content Cost ("TCC") and (iii) a Per-Subscriber Minimum ("PSM"). Spotify has been paying for its Bundle offerings on the TCC and PSM prongs. *See generally* 37 C.F.R. 385.21(b). Absent a well-supported and well-pleaded allegation that the proper standalone price was ***so far below $9.99*** as to render Spotify liable for additional royalties—which MLC simply cannot allege in good faith, for all the reasons above—MLC would not even have Article III standing to bring its claim. *Maddox v. Bank of N.Y. Mellon Tr.*, 997 F.3d 436, 442 (2d Cir. 2021) ("Article III standing requires plaintiffs to show (1) an injury in fact, (2) a causal connection between that injury and the conduct at issue, and (3) a likelihood that the injury will be redressed by a favorable decision." (cleaned up)).

\*   \*   \*

In sum, there is no "there" there with respect to the claims the court has permitted MLC to pursue via a motion to seek leave to file an amended complaint. There is no supportable grounding for the facts MLC seeks to allege in order to assert the claims MLC has identified; they would fail as a matter of law; and they would not even result in any financial redress to MLC, making the pursuit not only unjustified but completely ineffectual. Before filing any further pleading in this case, MLC has an obligation under the Federal Rules to weigh the information provided in this

**LATHAM&WATKINS**LLP

letter carefully. Should MLC instead choose to press forward with an amended complaint, as noted, Spotify reserves all rights to seek appropriate remedies.

Sincerely,

*/s/ Allison L. Stillman*
Allison L. Stillman
of LATHAM & WATKINS LLP