**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MECHANICAL LICENSING COLLECTIVE,

                              Plaintiff,

v.

SPOTIFY USA INC.,

                             Defendant.

No. 1:24-cv-03809 (AT) (KHP)

---

**ANSWER OF DEFENDANT SPOTIFY USA INC. TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Spotify USA Inc., ("Spotify") by and through its undersigned counsel, hereby answers Plaintiff Mechanical Licensing Collective ("MLC")'s first amended complaint filed on October 1, 2025 (the "Complaint").

**PRELIMINARY STATEMENT**

Plaintiff Mechanical Licensing Collective, Inc. ("MLC") suffered a decisive defeat on the central issue that prompted this litigation. Spotify's Premium service is a "Bundle"—comprising a music Subscription Offering and an audiobook service—a conclusion so unassailable that this Court resolved the issue as a matter of law on the pleadings. The law is settled: Spotify is entitled to pay royalties on Premium to MLC based solely on the portion of subscription revenue attributable to music.

What remains of MLC's case are two peripheral issues that it has strained to carry across the pleading threshold, both of which are unsupportable by the facts. MLC's first claim is that Spotify miscalculated the royalties owed for its Premium Bundle. Specifically, MLC claims that Spotify erred by using $9.99 as the "standalone retail price" of the audiobook streaming component

of Premium when calculating the royalties due for that Bundle, and the audiobook streaming component should be priced at some lower—but unspecified—amount.  But $9.99 is, if anything, a conservatively *low* price.  Of the audiobook subscriptions in the market that give access to the equivalent range of bestsellers available on Spotify, ***none*** can be purchased for less than $9.99, and most cost much more.[1]  The least expensive of the audiobook services cited by MLC in its Amended Complaint, Amazon's Audible Plus, is $7.95, and it gives access to virtually no bestsellers.[2]  No other subscription audiobook service in the U.S. of which Spotify is aware costs less than $7.95 per month.  What this means is that *the least* that the audiobook component of Spotify Premium could conceivably be valued at, consistent with the law, is $7.95 per month.  And *even if* Spotify were to use $7.95 as the standalone price in the Bundle calculation (which it should not), the result would be an extremely small percentage increase in royalties paid to the MLC.

The MLC's second claim is that Spotify's "Audiobooks Access" product should be treated as a "Bundle."  That theory runs headlong into the plain text and meaning of the regulations, which define a "Bundle" as a combination of a "subscription" music offering plus some other product or

---

[1] For example, Audible Premium Plus costs $14.95 per month.  Barnes & Noble's audiobooks service costs $14.99 per month.  Kobo Plus, Everand, and Audiobooks.com VIP cost $9.99 per month, $11.99 per month, and $14.95 per month respectively.  *See Learn about Premium Plus*, AUDIBLE, https://help.audible.com/s/article/learn-about-premium-plus (last visited Oct. 23, 2025); *B&N Audiobooks*, BARNES & NOBLE, https://www.barnesandnoble.com/h/bn-audiobooks (last visited Oct. 23, 2025); *Kobo Plus*, KOBO, https://tinyurl.com/yzjappkr (last visited Oct. 23, 2025); *Meet Everand*, EVERAND, https://www.everand.com/ (last visited Oct. 23, 2025); *Sign Up*, AUDIOBOOKS.COM, https://www.audiobooks.com/signup (last visited Oct. 23, 2025).

[2] *Compare The Plus Catalog*, AUDIBLE, https://tinyurl.com/2dwjm6bx (last visited Oct. 23, 2025) *with Audible Charts Bestselling Audiobooks*, AUDIBLE, https://tinyurl.com/2s3949yd.  Audiobooks included in Amazon's Audible Plus Catalog are identifiable by a reference, on the audiobook's individual webpage, to subscription renewal options for Audible Plus.  *See, e.g.*, *The Room Next Door*, AUDIBLE, https://tinyurl.com/mv66trhv (last visited Oct. 23, 2025).  Audiobooks available only in Audible's Premium Plus Catalog include Premium Plus subscription information on their individual webpages.  *See, e.g.*, *Nobody's Girl*, AUDIBLE, https://tinyurl.com/22aapujj (last visited Oct. 23, 2025).  None of Audible's bestselling audiobooks is available in the Audible Plus Catalog.

service.  The music component of Audiobooks Access is Spotify Free, which is a *nonsubscription* music offering that is given free to any consumer.  Therefore, there is no plausible argument that "Audiobook Access" could in fact be a "Bundle" under the existing regulations.

But even if MLC's theory could be correct, the royalties at stake with respect to this issue, even if they could be properly calculated, would be miniscule—a drop in comparison to the ocean of royalties Spotify pays to the MLC.

Ultimately, despite public statements by MLC and publisher representatives to the contrary,[3] MLC's remaining claims would not result in any dramatic increase in royalty payments to songwriters and publishers, even if MLC were correct about its present legal theories (which it is not).  All of this raises serious questions about MLC's motivations in continuing to spend resources on this litigation.

In short, limited discovery (which is all that is appropriate here given the nature of the claims and the low stakes) will dispositively demonstrate that MLC's new claims are as baseless as the one that this court already rejected.

## **<u>GENERAL DENIAL</u>**

Except as otherwise expressly stated herein, Spotify (1) generally denies each and every allegation in the Complaint, including, without limitation, any allegations contained in the preamble, introduction, headings, subheadings, and footnotes of the Complaint; (2) specifically denies that it has misreported or underpaid mechanical royalties owed to the MLC for its Premium and Audiobooks Access Offerings; (3) declines to adopt or acknowledge as accurate any defined

---

[3] *See* Murray Stassen, *MLC Can File Amended Complaint in 'Bundling' Lawsuit Against Spotify, Court Says*, MUSIC BUS. WORLDWIDE (Sept. 26, 2025), https://www.musicbusinessworldwide.com/mlc-can-file-amended-complaint-in-bundling-lawsuit-against-spotify-court-says/ (reflecting comments from MLC and the National Music Publishers Association regarding the granting of MLC's motion to file an amended complaint).

terms in the Complaint to the extent they constitute allegations directed at Spotify; and (4) declines to adopt or acknowledge as accurate any characterizations of Section 115 of the Copyright Act, Title 37 Part 385 of the Code of Federal Regulations, or Title 37 Part 210 of the Code of Federal Regulations to the extent they constitute allegations directed at Spotify. Spotify reserves the right to challenge the authenticity of all sources and documents referred to or purportedly quoted from in the Complaint. Spotify reserves the right to seek to amend or supplement its Answer as may be necessary or appropriate.

## RESPONSES TO SPECIFIC ALLEGATIONS

## NATURE OF THE ACTION

1.      To the extent the allegations in Paragraph 1 contain legal conclusions and MLC's characterization of its legal claims, no response is required. To the extent a response is required, Spotify denies the allegations contained in this paragraph.

2.      To the extent the allegations in Paragraph 2 purport to characterize provisions of the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately and completely characterized the requirements of these provisions and refers the Court to the statute and its associated regulations for a true and complete description of the matter MLC purports to describe in Paragraph 2. To the extent a response is required, Spotify admits that it receives a compulsory blanket license that allows it to offer musical works for listening by its users. Spotify admits that subscribers to its Premium, Basic, and Audiobooks Access Subscription Offerings pay a monthly fee to access these Offerings. Spotify denies the remaining allegations contained in this paragraph.

3.      Paragraph 3 contains legal conclusions to which no response is required. To the extent the allegations in Paragraph 3 purport to characterize provisions of the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately and completely characterized the

requirements of these provisions and refers the Court to the statute and its associated regulations for a true and complete description of the matter MLC purports to describe in Paragraph 3.  Spotify denies the remaining allegations contained in this paragraph.

4.      Paragraph 4 contains legal conclusions and MLC's characterizations of its legal claims, to which no response is required.  To the extent a response is required, Spotify admits that this Court has previously found Spotify's Premium Subscription Offering to be a Bundle.  Spotify denies the remaining allegations contained in this paragraph.

5.      Paragraph 5 contains legal conclusions to which no response is required.  To the extent the allegations in Paragraph 5 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 5.  To the extent a response is required, Spotify admits that the relevant regulations concerning royalty rates and calculations associated with the license under 17 U.S.C. § 115 are set forth, *inter alia*, in 37 C.F.R. Part 385.  Spotify denies the remaining allegations contained in this paragraph.

6.      Paragraph 6 contains legal conclusions to which no response is required.  To the extent the allegations in Paragraph 6 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 6.

7.      The allegations in Paragraph 7 contain legal conclusions to which no response is required.  To the extent the allegations in Paragraph 7 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that

regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 7. Spotify denies the remaining allegations contained in this paragraph.

8. Spotify admits that in November 2023 it added 15 hours of monthly audiobook listening to its Premium Subscription Offering. Spotify admits that its Premium Subscription Offering contained non-music content prior to the addition of 15 monthly hours of audiobooks listening. Spotify denies the remaining allegations contained in this paragraph.

9. The allegations in Paragraph 9 contain legal conclusions, to which no response is required. To the extent the allegations in Paragraph 9 purport to characterize 37 C.F.R. Part 210, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 210 for a true and complete description of the matter MLC purports to describe in Paragraph 9. To the extent a response is required, Spotify admits that it chose to report and pay royalties for Premium as a Standalone Portable Subscription Offering from November 2023 through February 2024, leading to an overpayment of royalties to MLC. Spotify denies the remaining allegations contained in this paragraph.

10. Spotify admits that it launched its Audiobooks Access Subscription Offering in March 2024. Spotify denies the remaining allegations contained in this paragraph.

11. Spotify admits that it reported and paid royalties on Premium as a Bundle starting in March 2024. Spotify admits that $9.99 is the price for Premium's audiobook component in the Service Provider Revenue formula applicable to Bundles. To the extent this paragraph contains statements of opinion or seeks to draw inferences based on when Spotify launched Audiobooks Access, no response is required. To the extent a response is required, Spotify denies the remaining allegations in this paragraph.

12.     The allegations in Paragraph 12 contain legal conclusions, to which no response is required.  To the extent a response is required, Spotify admits that, starting in March 2024, it reported $10.99 as the standalone price for Premium Individual's music component and $9.99 as the standalone price for Premium Individual's audiobooks component.  Spotify admits that accounting for the standalone value of Premium Individual's, Premium Duo's, and Premium Family's audiobooks components affected the service revenue attributable to music, as reflected in the equation set forth in this paragraph.  Spotify denies that the resulting percentage reduction in service revenue attributable to music is relevant to the proper standalone price of the audiobook component of the Bundle under the relevant regulations.  Spotify denies the remaining allegations contained in this paragraph.

13.     Paragraph 13 contains legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 13 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of those regulations and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 13.  To the extent a response is required, Spotify denies the remaining allegations contained in this paragraph.

14.     To the extent the allegations in Paragraph 14 contain legal conclusions and/or MLC's characterization of its legal claims, no response is required.  To the extent the allegations in Paragraph 14 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 14.  To the extent a response is required, Spotify admits that Premium subscribers have

7

access to 15 hours of monthly audiobook streaming, with the option of purchasing additional listening hours. Spotify denies the remaining allegations contained in this paragraph.

15.    To the extent the allegations in Paragraph 15 contain legal conclusions, and/or MLC's characterization of its legal claims, no response is required. To the extent the allegations in Paragraph 15 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 15. Spotify denies the remaining allegations contained in this paragraph.

16.    To the extent the allegations in Paragraph 16 contain legal conclusions, and/or MLC's characterization of its legal claims, no response is required. To the extent the allegations in Paragraph 16 purport to characterize Section 115 of the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately and completely characterized the requirements of those provisions and refers the Court to Section 115 of the Copyright Act and the relevant regulations for a true and complete description of the matter MLC purports to describe in Paragraph 16. Spotify denies the remaining allegations contained in this paragraph.

17.    To the extent the allegations in Paragraph 17 contain legal conclusions, and/or MLC's characterization of its legal claims, no response is required. To the extent the allegations in Paragraph 17 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of this regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 17. To the extent a response is required, Spotify denies the allegations contained in this paragraph.

18.    To the extent the allegations in Paragraph 18 contain legal conclusions and/or MLC's characterization of its legal claims, no response is required.  To the extent the allegations in Paragraph 18 purport to characterize Section 115 of the Copyright Act or 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of those provisions and refers the Court to Section 115 of the Copyright Act and 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 18.  Spotify denies the remaining allegations contained in this paragraph.

## THE PARTIES AND PRIOR PROCEEDINGS

19.    To the extent the allegations in Paragraph 19 purport to characterize Section 115 of the Copyright Act or 37 C.F.R. Part 210, Spotify denies that MLC has accurately and completely characterized the requirements of those provisions and refers the Court to Section 115 of the Copyright Act and 37 C.F.R. Part 210 for a true and complete description of the matter MLC purports to describe in Paragraph 19.  To the extent a response is required, Spotify denies the remaining allegations contained in this paragraph for lack of knowledge or information sufficient to form a belief as to their truth.

20.    Spotify admits that it is a corporation formed and existing under the laws of the State of Delaware and with an office located at 4 World Trade Center, 150 Greenwich Street, New York, New York 10007.  Spotify admits that it undertakes business activities in this District. Spotify admits that it obtained a compulsory blanket license beginning on January 1, 2021 because it was operating under a previous statutory mechanical license.  Spotify admits that it filed a Notice of License with MLC confirming its operation under the compulsory blanket license on or about December 1, 2020.  Spotify denies the remaining allegations in this paragraph for lack of knowledge or information to form a belief as to their truth.

21.     Spotify admits that MLC filed its original Complaint on May 16, 2024.  Spotify admits that the original Complaint alleged that Premium was not a Bundle but denies that the original complaint alleged that Spotify misreported and underpaid royalties on Audiobooks Access Tier.  Spotify admits that the Court dismissed the entirety of MLC's original Complaint with prejudice and entered judgment, that MLC moved for reconsideration and vacatur of the judgment, and that the Court granted the MLC's motion for vacatur of the judgment.  Spotify admits that the Court granted MLC permission to seek leave to file and amended Complaint addressing two claims: "that Spotify has allegedly underpaid the royalties due on the Audiobooks Access plan and improperly calculated the royalties owed in connection with Premium by relying on Audiobooks Access as the standalone subscription price of the Bundle's non-music component."  Spotify denies the remaining allegations in this paragraph.

### JURISDICTION AND VENUE

22.     The allegations in Paragraph 22 consist of legal conclusions and MLC's characterization of its legal claims, to which no response is required.  To the extent a response is required, Spotify admits that MLC purports to base jurisdiction over the subject matter of this action on the statutory provisions cited.

23.     The allegations in Paragraph 23 consist of legal conclusions and MLC's characterization of its legal claims, to which no response is required.  To the extent a response is required, Spotify admits that MLC purports to base personal jurisdiction over the subject matter of this action on the allegations in this paragraph.

24.     The allegations in Paragraph 24 consist of legal conclusions and MLC's characterization of its legal claims, to which no response is required.  To the extent a response is required, Spotify admits that MLC purports to claim that venue is proper in this District based on the allegations in this paragraph.  Spotify otherwise denies the allegations in this paragraph.

## THE FACTS

25.     The allegations in Paragraph 25 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 25 purport to characterize Section 106 of the Copyright Act, Spotify denies that MLC has accurately and completely characterized the requirements of that statute and refers the Court to Section 106 of the Copyright Act for a true and complete description of the matter MLC purports to describe in Paragraph 25.

26.     The allegations in Paragraph 26 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 26 purport to characterize Section 115 of the Copyright Act, Spotify denies that MLC has accurately and completely characterized the requirements of that statute and refers the Court to Section 115 of the Copyright Act for a true and complete description of the matter MLC purports to describe in Paragraph 26.

27.     The allegations in Paragraph 27 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 27 purport to characterize Section 115 of the Copyright Act, Spotify denies that MLC has accurately and completely characterized the requirements of that statute and refers the Court to Section 115 of the Copyright Act for a true and complete description of the matter MLC purports to describe in Paragraph 27.

28.     The allegations in Paragraph 28 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 28 purport to characterize section 115 of the Copyright Act, Spotify denies that MLC has accurately and completely characterized the requirements of that statute and refers the Court to the statute for a true and complete description of the matter MLC purports to describe in Paragraph 28.

29.     The allegations in Paragraph 29 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 29 purport to characterize the Music Modernization Act, Spotify denies that MLC has accurately and completely characterized the

requirements of that legislation and refers the Court to the statute for a true and complete description of the matter MLC purports to describe in Paragraph 29.

30.     The allegations in Paragraph 30 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 30 purport to characterize regulatory activity by the Register of Copyrights, Spotify denies that MLC has accurately and completely characterized the relevant regulations and refers the Court to those regulations for a true and complete description of the matter MLC purports to describe in Paragraph 30.

31.     The allegations in Paragraph 31 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 31 purport to characterize the Copyright Act, Spotify denies that MLC has accurately and completely characterized the requirements of that statute and refers the Court to the Copyright Act for a true and complete description of the matter MLC purports to describe in Paragraph 31.

32.     The allegations in Paragraph 32 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 32 purport to characterize the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately and completely characterized the requirements of these provisions and refers the Court to the Copyright Act and its associated regulations for a true and complete description of the matter MLC purports to describe in Paragraph 32.

33.     Paragraph 33 consists of legal conclusions to which no response is required.  To the extent a response is required, Spotify admits that the Phonorecords I decision was issued in 2009.  To the extent the allegations in this paragraph purport to characterize the determinations of the Phonorecords I proceedings, Spotify denies that MLC has accurately and completely

characterized those determinations and refers the Court to the records of those proceedings for a true and complete description of the matter MLC purports to describe in Paragraph 33.

34.    Paragraph 34 consists of legal conclusions to which no response is required.  To the extent a response is required, Spotify admits that the Phonorecords II decision was issued in 2013.  To the extent the allegations in this paragraph purport to characterize the determinations of the Phonorecords II proceedings, Spotify denies that MLC has accurately and completely characterized the requirements of those determinations and refers the Court to the records of those proceedings for a true and complete description of the matter MLC purports to describe in Paragraph 34.

35.    Paragraph 35 consists of legal conclusions to which no response is required.  To the extent a response is required, Spotify admits that the Phonorecords III decision was issued in 2019.  To the extent the allegations in this paragraph purport to characterize the determinations of the Phonorecords III proceedings, Spotify denies that MLC has accurately and completely characterized those determinations and refers the Court to the records of those proceedings for a true and complete description of the matter MLC purports to describe in Paragraph 35.

36.    Spotify admits that the Phonorecords IV proceeding resulted in a settlement between the music publishers and digital music providers, including Spotify, which led to the promulgation of the current rates and terms embodied in Section 115, which govern for the period of January 1, 2023 through December 31, 2027.

37.    The allegations in Paragraph 37 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 37 purport to characterize provisions of the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately and completely characterized the requirements of these provisions and refers the Court to the statute and its

associated regulations for a true and complete description of the matter MLC purports to describe in Paragraph 37.

38.     The allegations in Paragraph 38 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 38 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 38.

39.     The allegations in Paragraph 39 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 39 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 39.

40.     The allegations in Paragraph 40 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 40 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 40.

41.     The allegations in Paragraph 41 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 41 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 41.

42.    The allegations in Paragraph 42 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 42 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 42.

43.    The allegations in Paragraph 43 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 43 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 43.

44.    The allegations in Paragraph 44 contain legal conclusions and opinion, to which no response is required.  To the extent the allegations in Paragraph 44 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 44.

45.    The allegations in Paragraph 45 contain legal conclusions and opinion, to which no response is required.  To the extent the allegations in Paragraph 45 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 45.

46.    The allegations in Paragraph 46 contain legal conclusions and opinion, to which no response is required.  To the extent the allegations in Paragraph 46 purport to characterize provisions of the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately

and completely characterized the requirements of these provisions and refers the Court to the statute and its associated regulations for a true and complete description of the matter MLC purports to describe in Paragraph 46.

47.    The allegations in Paragraph 47 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 47 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 47.

48.    The allegations in Paragraph 48 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 48 purport to characterize provisions of the Copyright Act, Spotify denies that MLC has accurately and completely characterized the requirements of that statute and refers the Court to 17 U.S.C. § 115 for a true and complete description of the matter MLC purports to describe in Paragraph 48.

49.    The allegations in Paragraph 49 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 49 purport to characterize provisions of the Copyright Act, Spotify denies that MLC has accurately and completely characterized the requirements of that statute and refers the Court to 17 U.S.C. § 115 for a true and complete description of the matter MLC purports to describe in Paragraph 49.

50.    The allegations in Paragraph 50 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 50 purport to characterize provisions of the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately and completely characterized the requirements of these provisions and refers the Court to the statute and its

associated regulations for a true and complete description of the matter MLC purports to describe in Paragraph 50.

51.     The allegations in Paragraph 51 contain legal conclusions and statements of opinion, to which no response is required.  To the extent the allegations in Paragraph 51 purport to characterize provisions of the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately and completely characterized the requirements of these provisions and refers the Court to the statute and its associated regulations for a true and complete description of the matter MLC purports to describe in Paragraph 51.  To the extent the allegations in Paragraph 51 purport to characterize an August 21, 2024 letter written by Shira Perlmutter, Spotify refers the Court to the letter for a true and complete recitation of the statements contained therein.

52.     The allegations in Paragraph 52 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 52 purport to characterize provisions of the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately and completely characterized the requirements of these provisions and refers the Court to the statute and its associated regulations for a true and complete description of the matter MLC purports to describe in Paragraph 52.

53.     The allegations in Paragraph 53 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 53 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 53.

54.     The allegations in Paragraph 54 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 54 purport to characterize 37 C.F.R. Part 385,

Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 54.

55.    The allegations in Paragraph 55 contain legal conclusions and incomplete factual hypotheticals, to which no response is required.  To the extent the allegations in Paragraph 55 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 55.

56.    The allegations in Paragraph 56 contain legal conclusions and opinions, to which no response is required.  To the extent the allegations in Paragraph 56 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 56.

57.    The allegations in Paragraph 57 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 57 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 57.

58.    The allegations in Paragraph 58 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 58 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 58.

59.     The allegations in Paragraph 59 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 59 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 59.

60.     The allegations in Paragraph 60 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 60 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 60.

61.     The allegations in Paragraph 61 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 61 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 61.

62.     The allegations in Paragraph 62 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 62 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 62.

63.     Spotify admits that it launched in the United States in July 2011 and offered a subscription service called Premium.  Spotify admits that Premium subscribers had access to tens of millions of musical works at the time Spotify first made the Premium service available in the

United States. Spotify denies that the version of Premium launched in 2011 is the same or similar to Spotify's Premium subscription offerings available today. Spotify admits that Premium has over 44 million subscribers and annual revenues in excess of $5 billion and is one of the largest on-demand music subscription services in the United States. To the extent paragraph 63 contains legal conclusions concerning the availability of a blanket compulsory license at the time Spotify first made a Premium subscription available in the United States, no response is required.

64. Spotify admits that it launched the Premium Family tier in the United States on October 20, 2014. Premium further admits that it launched Premium Duo in the United States on July 1, 2020. Spotify otherwise denies the remaining allegations in Paragraph 64 as improper characterizations of the Duo and Family tier subscriber requirements.

65. Spotify admits that, in October 2023, it announced that Premium subscribers would gain access to 15 hours of monthly audiobook streaming. Spotify admits that Premium subscribers began receiving this benefit in November 2023. Spotify denies the remaining allegations in this paragraph.

66. Spotify admits that, starting in June 2024, the pricing of Premium Individual was $11.99 per month for monthly subscribers, the pricing of Premium Duo was $16.99 per month for monthly subscribers, and Premium Family was $19.99 per month for monthly subscribers. Spotify further admits that Spotify introduced its Basic subscription plans in June 2024. Spotify further admits that Basic subscription plans are available only to existing Premium subscribers. Spotify denies the remaining allegations in this paragraph.

67. Spotify admits that Basic Individual plans cost $10.99 per month for monthly subscribers, that Basic Duo plans cost $14.99 per month for monthly subscribers, and that Basic Family plans cost $16.99 per month for monthly subscribers. To the extent this paragraph contains

statements of opinion or seeks to draw inferences based on the undisputed prices of Basic subscription plans and current or past Premium subscription plans, no response is required.

68.    Spotify admits that Audiobooks Access is priced at $9.99 per month and that Audiobooks Access launched in March 2024.  Spotify further admits that Audiobooks Access subscribers receive 15 hours of monthly audiobook streaming.  To the extent this paragraph contains statements of opinion or seeks to draw inferences based on undisputed facts regarding the launch of Audiobooks Access, the reporting of Premium as a Bundle, or the pricing of different subscription plans, no response is required.  Spotify denies the remaining allegations in this paragraph.

69.    To the extent this paragraph contains statements of opinion or seeks to draw inferences based on the contents of the webpage referenced, no response is required.  Spotify otherwise admits that Spotify's homepage did not mention Audiobooks Access on May 16, 2024.  Spotify denies the remaining allegations in this paragraph.

70.    Spotify denies the allegations in this paragraph.

71.    To the extent this paragraph contains statements of opinion or seeks to draw inferences based on the contents of the webpage referenced, no response is required.  Spotify otherwise admits that the webpage referenced does not reference the Audiobooks Access plan at the top of the page.

72.    Spotify admits that visitors to spotify.com/us/audiobooks are presented with an option to "Explore Premium."  Spotify otherwise denies the allegations in this paragraph.

73.    Spotify admits that Premium subscribers and Audiobooks Access subscribers have access to the same catalog of audiobooks.  Spotify otherwise denies the allegations in this paragraph.

74.    Spotify denies the allegations in this paragraph, except Spotify admits that the same catalog of music is available for listening by both Premium subscribers and Audiobook Access subscribers via their access to the more limited functionality of Spotify Free.

75.    Spotify denies the allegations in Paragraph 75 to the extent they suggest that Spotify provides audiobooks listening in only nine other countries.   Spotify otherwise admits the allegations in this paragraph.

76.    To the extent the allegations in this paragraph are based on MLC's investigation, Spotify denies these allegations for lack of knowledge or information as to their truth.   Spotify otherwise denies the allegations in Paragraph 76.

77.    The allegations in Paragraph 77 contain legal conclusions, to which no response is required.   Spotify otherwise denies the allegations in this paragraph.

78.    The allegations in Paragraph 78 contain legal conclusions, to which no response is required.   To the extent the allegations in Paragraph 78 purport to characterize provisions of 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 78.   Spotify denies any remaining allegations of Paragraph 78.

79.    The allegations in Paragraph 79 contain legal conclusions, to which no response is required.   To the extent the allegations in Paragraph 79 purport to characterize provisions of 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 79.

80.     The allegations in Paragraph 80 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 80 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 80.

81.     Spotify admits that, beginning in March 2024, it reported the retail price of the Subscription Offering component of Premium Individual at $10.99, the Subscription Offering component of Premium Duo as $14.99, and the Subscription Offering component of Premium Family as $16.99.  Spotify further admits that, starting in March 2024 and for all Premium tiers, it reported the retail price of the audiobook streaming service components of its Premium subscription offerings at $9.99.  Spotify otherwise denies the remaining allegations in this paragraph.

82.     The allegations in Paragraph 82 contain legal conclusions, to which no response is required.  To the extent a response is required, Spotify denies the allegations in this paragraph.

83.     To the extent the allegations in Paragraph 83 purport to represent the contents of the entry for "Stand-Alone" in the online Oxford English Dictionary as of March 31, 2025, Spotify lacks sufficient knowledge and therefore denies those allegations.  To the extent Paragraph 83 purports to interpret 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 83.  To the extent the allegations in Paragraph 83 contain legal conclusions, no response is required.  Spotify otherwise denies the allegations in this paragraph.

84.     Spotify admits that subscribers to Audiobooks Access can access some music through Spotify.  To the extent the allegations in Paragraph 84 contain legal conclusions, no response is required.  Spotify otherwise denies the allegations in this paragraph.

85.     The allegations in Paragraph 85 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 85 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 85.  To the extent a response is required, Spotify denies the allegations in this paragraph.

86.     The allegations in Paragraph 86 contain legal conclusions, to which no response is required.  To the extent a response is required, Spotify denies the allegations in this paragraph.

87.     The allegations in Paragraph 87 contain legal conclusions, to which no response is required.  To the extent a response is required, Spotify lacks sufficient information and therefore denies the allegations in this paragraph, and otherwise denies the allegations in this paragraph.

88.     The allegations in Paragraph 88 contain legal conclusions and opinions, to which no response is required.  To the extent the allegations in Paragraph 88 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 88.  To the extent a response is required, Spotify lacks sufficient information and therefore denies the allegations in this paragraph, and otherwise denies the allegations in this paragraph.

89.     The allegations in Paragraph 89 contain statements of opinion to which no response is required.  To the extent a response is required, Spotify admits that *The Nightingale: A Novel* by

Kristin Hannah, as it appears on Spotify, is 17 hours and 37 minutes long; *Demon Copperhead: A Novel*, by Barbara Kingsolver, as it appears on Spotify, is 21 hours and 3 minutes long; *Dune*, as it appears on Spotify, by Frank Herbert is 21 hours and 4 minutes long; *The Fellowship of the Ring* by J.R.R. Tolkien, as it appears on Spotify, is 22 hours and 38 minutes long; *The 48 Laws of Power* by Robert Green, as it appears on Spotify, is 23 hours and 6 minutes long; *A Court of Mist and Fury* by Sarah J. Maas, as it appears on Spotify, is 23 hours and 16 minutes long; and *The Way of Kings* by Brandon Sanderson, as it appears on Spotify, is 45 hours and 30 minutes long. Spotify lacks sufficient information and therefore denies the remaining allegations in this paragraph, and otherwise denies the allegations in this paragraph.

90. The allegations in Paragraph 90 contain legal conclusions and opinions, to which no response is required. To the extent the allegations in Paragraph 90 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 90. To the extent a response is required, Spotify lacks sufficient information and therefore denies the allegations in this paragraph, and otherwise denies the allegations in this paragraph.

91. Spotify admits that if Premium subscribers want to relisten to a book, or part of the book, their allocated audiobook listening time would reduce as normal. The remaining allegations in Paragraph 91 consist of an incomplete hypothetical to which no response is required. To the extent a response is required, Spotify lacks sufficient information to form a belief as to the remaining allegations in Paragraph 91 and therefore denies those allegations.

92.     Spotify admits that it measures the amount of time spent streaming audiobooks based on the time it takes or would take to play those audiobooks at normal speed.  The remaining allegations in Paragraph 92 consist of an incomplete hypothetical to which no response is required.

93.     To the extent the allegations in Paragraph 93 contain legal conclusions, no response is required.  Spotify otherwise denies the allegations in this paragraph.

94.     To the extent the allegations in Paragraph 94 contain legal conclusions, no response is required.  To the extent the allegations in Paragraph 94 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 94.  Spotify otherwise denies the allegations in this paragraph.

95.     The allegations in Paragraph 95 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 95 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 95.  Spotify otherwise denies the allegations in this paragraph.

96.     The allegations in Paragraph 96 contain legal conclusions, to which no response is required.  Spotify otherwise denies the allegations in this paragraph.

97.     Spotify admits that Audible Plus and Kobo Plus Listen are currently priced at $7.95 and $7.99, respectively.  Spotify otherwise denies the allegations in this paragraph.

98.     Spotify admits that pre-existing Premium subscribers have the ability to switch to Basic plans and that Basic plans do not offer 15 hours of monthly audiobook streaming.  Spotify

admits that the retail price of Basic Individual is $10.99; Basic Duo is $14.99; and Basic Family is $16.99, but Spotify denies the suggested implication of those prices and otherwise denies the allegations in this paragraph.

99.    The allegations in Paragraph 99 contain legal conclusions, to which no response is required.  Spotify admits that accounting for the standalone value of Premium Individual's, Premium Duo's, and Premium Family's audiobook streaming components affected the service revenue attributable to music.  Spotify denies that the resulting percentage reduction in service revenue attributable to music is relevant to the proper standalone price of the audiobook component of the Bundle under the relevant regulations.  Spotify otherwise denies the allegations in this paragraph.

100.    Spotify admits the allegations in Paragraph 100.  Spotify denies that any reduction in service revenue attributable to music resulting from Spotify's accounting of audiobook streaming is relevant to the proper standalone price of the audiobook component of the Bundle under the relevant regulations.

101.    Spotify admits the allegations in Paragraph 101.  Spotify denies that any reduction in service revenue attributable to music resulting from Spotify's accounting of audiobook streaming is relevant to the proper standalone price of the audiobook component of the Bundle under the relevant regulations.

102.    Spotify admits the allegations in Paragraph 102.  Spotify denies that any reduction in service revenue attributable to music resulting from Spotify's accounting of audiobook streaming is relevant to the proper standalone price of the audiobook component of the Bundle under the relevant regulations.

103.    The allegations in Paragraph 103 contain legal conclusions, to which no response is required.  Spotify otherwise denies the allegations in this paragraph.

104.    The allegations in Paragraph 104 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 104 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 104.  Spotify otherwise denies the allegations in this paragraph.

105.    Spotify denies the allegations in Paragraph 105.

106.    The allegations in Paragraph 106 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 106 purport to characterize provisions of the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately and completely characterized the requirements of these provisions and refers the Court to the statute and its associated regulations for a true and complete description of the matter MLC purports to describe in Paragraph 106.  Spotify otherwise denies the allegations in this paragraph.

107.    The allegations in Paragraph 107 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 107 purport to characterize provisions of the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately and completely characterized the requirements of these provisions and refers the Court to the statute and its associated regulations for a true and complete description of the matter MLC purports to describe in Paragraph 107.  Spotify otherwise denies the allegations in this paragraph.

108.    The allegations in Paragraph 108 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 108 purport to characterize 37 C.F.R. Part

385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 108.  Spotify otherwise denies the allegations in this paragraph.

109.    The allegations in Paragraph 109 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 109 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 109.  Spotify otherwise denies the allegations in this paragraph.

110.    The allegations in Paragraph 110 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 110 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in Paragraph 110.  Spotify otherwise denies the allegations in this paragraph.

111.    The allegations in Paragraph 111 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 111 purport to characterize provisions of the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately and completely characterized the requirements of these provisions and refers the Court to the statute and the associated regulations for a true and complete description of the matter MLC purports to describe in Paragraph 111.  Spotify otherwise denies the allegations in this paragraph.

112.    The allegations in Paragraph 112 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 112 purport to characterize provisions of the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately and completely characterized the requirements of these provisions and refers the Court to the statute and its associated regulations for a true and complete description of the matter MLC purports to describe in Paragraph 112.  Spotify otherwise denies the allegations in this paragraph.

113.    Spotify admits that most Audiobooks Access subscribers pay $9.99 a month for their subscriptions.

114.    Spotify denies the allegations in this paragraph.

115.    Spotify admits that Audiobooks Access is a subscription service for which subscribers pay a monthly fee.  Spotify further admits that Audiobooks Access subscribers, like all Spotify users, have access to music on Spotify.  The remaining allegations in Paragraph 115 contain legal conclusions, to which no response is required.  To the extent a response is required, Spotify denies the remaining allegations in this Paragraph.

116.    The allegations in Paragraph 116 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 116 purport to characterize 37 C.F.R. Part 385, Spotify denies that MLC has accurately and completely characterized the requirements of that regulation and refers the Court to 37 C.F.R. Part 385 for a true and complete description of the matter MLC purports to describe in this Paragraph.  Spotify otherwise denies the allegations in this paragraph.

117.    The allegations in Paragraph 117 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 117 purport to characterize provisions of the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately and

completely characterized the requirements of these provisions and refers the Court to the statute and its associated regulations for a true and complete description of the matter MLC purports to describe in Paragraph 117. Spotify otherwise denies the allegations in this paragraph.

118.    The allegations in Paragraph 118 contain legal conclusions, to which no response is required. To the extent the allegations in Paragraph 118 purport to characterize provisions of the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately and completely characterized the requirements of these provisions and refers the Court to the statute and its associated regulations for a true and complete description of the matter MLC purports to describe in Paragraph 118. Spotify otherwise denies the allegations in this paragraph.

## CLAIMS FOR RELIEF

**Recovery of Unpaid Statutory License Royalties and Late Fees Due to Spotify's Violations of 17 U.S.C. § 115 (including §§ 115(c)(2)(I), (d)(4)(A) and (d)(8)(B)); 37 C.F.R. Part 385 (including §§ 385.2, 385.21, Appendix A); and 37 C.F.R. § 210.27**

119.    Spotify incorporates by reference and restates its responses above.

120.    The allegations in Paragraph 120 contain legal conclusions, to which no response is required. To the extent the allegations in Paragraph 120 purport to characterize provisions of the Copyright Act, Spotify denies that MLC has accurately and completely characterized the requirements of that statute and refers the Court to the 17 U.S.C. § 115 for a true and complete description of the matter MLC purports to describe in Paragraph 120.

121.    The allegations in Paragraph 121 contain legal conclusions, to which no response is required. To the extent the allegations in Paragraph 121 purport to characterize provisions of the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately and completely characterized the requirements of those provisions and refers the Court to the statute and its associated regulations for a true and complete description of the matter MLC purports to describe in Paragraph 121.

122.    The allegations in Paragraph 122 contain legal conclusions, to which no response is required.  To the extent a response is required, Spotify denies the allegations in this paragraph.

123.    The allegations in Paragraph 123 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 123 purport to characterize provisions of the Copyright Act or the relevant regulations, Spotify denies that MLC has accurately and completely characterized the requirements of those provisions and refers the Court to the statute and its associated regulations for a true and complete description of the matter MLC purports to describe in Paragraph 123.  To the extent a response is required, Spotify denies the allegations in this paragraph.

124.    The allegations in Paragraph 124 contain legal conclusions, to which no response is required.  To the extent the allegations in Paragraph 124 purport to characterize provisions of the Copyright Act, Spotify denies that MLC has accurately and completely characterized the requirements of that statute and refers the Court to 17 U.S.C. §§ 115 and 505 for a true and complete description of the matter MLC purports to describe in Paragraph 124.  To the extent a response is required, Spotify denies the allegations in this paragraph.

125.    Spotify denies that MLC is entitled to the relief sought in the Prayer for Relief or under any other theory.

126.    Spotify denies that MLC is entitled to the relief sought in the Prayer for Relief or under any other theory.

127.    Spotify denies that MLC is entitled to the relief sought in the Prayer for Relief or under any other theory.

128.    Spotify denies that MLC is entitled to the relief sought in the Prayer for Relief or under any other theory.

129.     Spotify denies that MLC is entitled to the relief sought in the Prayer for Relief or under any other theory.

130.     Spotify denies that MLC is entitled to the relief sought in the Prayer for Relief or under any other theory.

131.     Spotify denies that MLC is entitled to the relief sought in the Prayer for Relief or under any other theory.

132.     Spotify denies that MLC is entitled to the relief sought in the Prayer for Relief or under any other theory.

133.     Spotify denies that MLC is entitled to the relief sought in the Prayer for Relief or under any other theory.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof, persuasion, or production not otherwise legally assigned to them as to any element of MLC's claims, and without waiving and hereby expressly reserving the right to assert any and all such defenses at such time and to such extent as discovery and factual developments establish a basis therefore, Spotify asserts the following affirmative defenses:

### FIRST DEFENSE

MLC's Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

### SECOND DEFENSE

MLC lacks standing to assert and maintain their claims against Spotify.

### THIRD DEFENSE

MLC's claims are barred, in whole or in part, by the doctrine of waiver.

**FOURTH DEFENSE**

MLC's claims are barred, in whole or in part, by the doctrine of equitable estoppel.

**FIFTH DEFENSE**

MLC's claims are barred, in whole or in part, by the doctrine of unclean hands.

**SIXTH DEFENSE**

MLC's claims are barred, in whole or in part, by the doctrine of copyright misuse.

**REQUEST FOR RELIEF**

Wherefore, Defendant respectfully requests that this Court:

1.      Enter judgment in Defendant's favor and against Plaintiff;

2.      Dismiss all claims brought by Plaintiff with prejudice;

3.      Award Defendant its attorneys' fees and costs to the extent permitted by law; and

4.      Grant Defendant such other and further relief as this Court deems just and proper.

Dated:      October 24, 2025              Respectfully submitted,
            New York, New York

                                         **LATHAM & WATKINS LLP**

                                         By: /s/ *Allison L. Stillman*

                                              Allison L. Stillman
                                              LATHAM & WATKINS LLP
                                              1271 Avenue of the Americas
                                              New York, New York 10020
                                              Tel: (212) 906-1200
                                              Fax: (212) 751-4864
                                              alli.stillman@lw.com

                                              Sarang V. Damle
                                              555 Eleventh Street, NW, Suite 1000
                                              Washington, D.C. 20004
                                              Telephone: (212) 906-1659
                                              Facsimile: (202) 637-2201
                                              sy.damle@lw.com

                                              *Attorneys for Defendant Spotify USA Inc.*