A. Stillman
Direct Dial: 212.906.1747
Alli.Stillman@lw.com

1271 Avenue of the Americas
New York, New York 10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

# LATHAM&WATKINS LLP

November 24, 2025

**VIA ECF & EMAIL**

Hon. Analisa Torres
United States District Judge Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Mechanical Licensing Collective v. Spotify USA Inc. (1:24-cv-3809-AT-KHP)*

      Pursuant to Rule III.A.ii of Your Honor's Individual Practices, Defendant Spotify USA Inc. ("Spotify") respectfully submits this letter in opposition to Plaintiff Mechanical Licensing Collective's ("MLC") pre-motion letter seeking to file a motion to certify this Court's January 29, 2025 order (the "Order") for interlocutory appeal or, in the alternative, enter a partial final judgment as to the Order.

      "Section 1292(b) is a rare exception to the final judgment rule that generally prohibits piecemeal appeals," and is therefore only justified in "exceptional circumstances." *SEC v. Ripple Labs, Inc.*, 697 F. Supp. 3d 126, 132 (S.D.N.Y. 2023) (Torres, J.) (internal quotation marks and citations omitted). MLC falls well short of pointing to the kind of extraordinary circumstances warranting such an appeal. To the contrary, the fact that MLC waited ten months to pursue an appeal from this Court's original decision vitiates any claim that the circumstances here are extraordinary. More than that, MLC seeks to appeal that decision after having made the strategic choice to forgo an appeal as of right in favor of asking this Court to permit it to litigate alternative theories that it had not even presented in its original complaint (but could have). The parties and this Court devoted most of this year to litigating, at great burden, MLC's request, and are now engaged in discovery concerning MLC's new theories. MLC has led the parties and this Court to devote substantial resources to the path MLC pursued; permitting MLC to reverse course at this stage is prejudicial and unwarranted.

      Indeed, MLC's request does not come close to satisfying the requirements of the statute. First, the Order does not implicate "a controlling question of law as to which there is a substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Tellingly, MLC makes no serious effort to argue that there is substantial ground for difference of opinion as to whether Spotify Premium meets the regulatory definition of a "Bundle" under 37 C.F.R. § 385.2. For good reason. As this Court recognized when granting Spotify's motion to dismiss, "§ 115 and its implementing regulations are unambiguous, and . . . the only plausible application of the law supports Spotify's position." *See* Dkt. 61 (Opinion and Order Dismissing Complaint) at 7; *see also* Dkt. 87 (Order on Mot. for Amend. Complaint) at 2 (order dismissing complaint was founded in "unambiguous regulatory language"). Notably, MLC's letter contains no argument that 15 hours of audiobook streaming is not "a product[] or service[]" "other" than music streaming, nor any argument that such audiobook streaming lacks "more than token value." 37

C.F.R. § 385.2. In fact, MLC's amended complaint, which MLC insisted on pursuing (instead of the appeal it now seeks to press out of time and out of order) is premised on factual allegations regarding multiple different audiobook-only services for which consumers pay a meaningful amount. Dkt. 88 (First Amend. Complaint) ¶¶ 87–94. These allegations are not arguments in the alternative, and there is no such thing as "facts in the alternative." These now-acknowledged facts fatally undermine MLC's original claim.

As a result, MLC fails to make any case that whether Spotify Premium meets the definition of a "Bundle" is the kind of question that could meet the most basic prerequisite for § 1292(b) certification. Where, as here, a claim presents a "straightforward application" of law to fact, and a party "has not shown 'substantial doubt' as to the correctness of the Court's Dismissal Order," the "exceptional" circumstances warranting certification are lacking. *Netrebko v. Metro. Opera Ass'n, Inc.*, No. 23 CIV. 6857 (AT), 2025 WL 2161448, at *5–6 (S.D.N.Y. July 29, 2025) (Torres, J.) (quoting *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 372 (S.D.N.Y. 2008)).[1]

Rather than attempt to show that there is substantial reason to doubt this Court's decision, MLC instead argues that the question presented is "novel." MLC Letter at 2. But the Second Circuit has made clear that "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996). "Rather, it is the duty of the district judge to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute." *Id.* (internal citation and alterations omitted). Here, having failed to offer any argument that substantial ground for dispute exists—let alone a persuasive one—MLC's request to pursue certification should be denied.

Second, MLC fails to demonstrate that immediate appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). MLC argues that an "immediate appeal" of the Court's Order presents "the most efficient and cost-effective path" forward in this case. MLC Letter at 2. Far from it: ten months ago, MLC had the right to immediate appeal from the Order. It did not do so. Instead, MLC spent ten months securing the right to pursue an alternative theory "that it did not raise directly in its complaint or opposition papers." Dkt. 74 (Order on Mot. for Reconsideration) at 3. With discovery underway on the amended claims, MLC now reverses course and asks for the right to appeal a decision that it could have appealed directly almost a year ago.

MLC points to no cases in which courts have permitted a § 1292(b) appeal in such a procedural posture.[2] And MLC is silent about how an immediate appeal would materially

---

[1] MLC's citation to a letter from two Congressmen and a Senator is misleading and misplaced. This case does not involve a dispute about the meaning of the Music Modernization Act itself. It instead relates to the meaning of Copyright Royalty Board regulations, a question that the letter does not analyze.

[2] Instead, MLC principally points to cases which stand for the unremarkable proposition that § 1292(b) certification is appropriate to clarify controlling questions of law at the outset of

advance the termination of this litigation. To the contrary, it would multiply the proceedings. To begin with, there is no reason to believe the Second Circuit would issue a decision before the close of discovery (currently set for this spring), meaning separate proceedings would be inevitable even with an interlocutory appeal. *See Netrebko*, 2025 WL 2161448, at *6 (recognizing that "separate or continued proceedings" are "inevitable" when interlocutory appeal proceeds alongside discovery and motions practice on remaining claims). Should the Second Circuit affirm this Court's decision, moreover, it would result in exactly the kind of piecemeal litigation that the final judgment rule is intended to avoid—culminating in two separate appeals to two separate panels involving closely related facts. Were the Second Circuit to reverse, meanwhile, it would presumably require the reopening of discovery and renewed dispositive motions practice; in no sense would immediate appellate review "avoid protracted and expensive litigation." *Mills v. Everest Reinsurance Co.*, 771 F. Supp. 2d 270, 273 (S.D.N.Y. 2009).

The far better course is to permit MLC to file an appeal in the normal course, which would encompass both the order dismissing its original Bundle claim and any other issues that arise out of the ongoing litigation before this Court. "This orderly and customary process will, in turn, permit a single panel of the Second Circuit to resolve, in one decision, the open legal issues." *Netrebko*, 2025 WL 2161448, at *7 (internal quotation marks and citation omitted); *see also LoCurto v. AT&T Mobility Servs. LLC*, No. 13-CV-4303 (AT), 2019 WL 2491248, at *3 (S.D.N.Y. June 13, 2019) (denying motion for certification where "reversal of the Order would not terminate the litigation," certification "could further delay this action," and there was no prejudice in waiting to appeal).

Finally, MLC's strategic delay in pursuing an appeal from this Court's dismissal order independently warrants denial of MLC's request. "[E]ven when all three prongs of the § 1292(b) test are met, it is still within the discretion of the Court to deny a request to certify a question for interlocutory appeal." *Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 389 n.3 (S.D.N.Y. 2020). Courts in this circuit have repeatedly recognized that unexplained delays in seeking an appeal counsel in favor of rejecting § 1292(b) certification motions, because such delay cuts against a showing that the case is the "rare" one in which certification is necessary to "avoid protracted litigation." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996); *see also, e.g., Xue v. Koenig*, No. 19-CV-07630 (NSR) (AEK), 2025 WL 897046, at *4 (S.D.N.Y. Mar. 24, 2025) (delay of "over a month after the Court set a briefing schedule" was unreasonable); *In re Terrorist Attacks on Sept. 11, 2001*, No. 02-CV-6977 (GBD) (SN), 2025 WL 2105869, at *7 (S.D.N.Y. July 28, 2025) (five-month delay unreasonable); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 10-CV-275 (PKC), 2012 WL 1308993, at *1 (S.D.N.Y. Apr. 16, 2012) (six-month delay "weigh[ed] strongly against certification"). As noted, MLC waited ten months to pursue an appeal from this Court's Bundle

---

litigation, which would have the effect of ending the litigation. *See, e.g., Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 392–93 (S.D.N.Y. 2020) (holding certification appropriate to resolve controlling issue of subject matter jurisdiction). Here, by contrast, MLC seeks an interlocutory appeal *after* having been granted leave to press forward with new claims that would be litigated in parallel with the appeal.

decision, having made the strategic choice to seek amendment of the complaint instead. That alone warrants denial of its motion.

MLC asks, in the alternative, for this Court to enter a partial final judgment as to the original Bundle claim pursuant to Rule 54(b). *See* MLC Letter at 3. As with § 1292(b) certification, "[c]ertification under Rule 54(b) must be granted 'sparingly' in light of the 'policy against piecemeal appeals.'" *Alix v. McKinsey & Co.*, 470 F. Supp. 3d 310, 318 (S.D.N.Y. 2020) (quoting *Novick v. AXA Network, LLC*, 642 F.3d 304, 310 (2d Cir. 2011)). Moreover, district courts "generally should not grant a Rule 54(b) certification if the same or closely related issues remain to be litigated." *Novick*, 642 F.3d at 311.

MLC's own admissions establish that its dismissed theory and its surviving theories are sufficiently related to make Rule 54(b) certification inappropriate. Central to MLC's theories are claims about the value of the audiobooks component of Spotify's Premium service. *Compare, e.g.*, Dkt. 1 (Compl.) ¶ 8 ("[T]he audiobooks component of Premium does not have more than the 'token value' required to qualify as a Bundled Subscription Offering under Section 115.") *with* Dkt. 88 (First Amend. Complaint) ¶ 4 ("Spotify is underreporting revenue and underpaying royalties by overstating the value of Premium's audiobooks component."); *id.* at ¶ 1 ("Spotify is improperly … overstating the value of the time-limited audiobooks listening available to Premium subscribers[.]"). Similarly, MLC has itself argued that its legal claims are closely related. *See, e.g.,* Dkt. 71 (MLC Mot. for Reconsideration) at 3 ("The Court's holding that Premium qualifies as a Bundle does not resolve, but rather confirms, the sufficiency of the MLC's Audiobooks Access claim."). Given that overlap, it would make little sense to sanction separate appeals. *See Novick*, 642 F.3d at 311 ("It does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case in successive appeals from successive decisions on interrelated issues.") (citation omitted).

Again, MLC could have taken a clean appeal from the dismissal of its original Bundle claim ten months ago. Instead, it asked this Court to permit it to pursue an alternative theory that was not spelled out in its complaint. MLC may be dissatisfied with its prospects in relation to the case remaining before the Court. But now that its alternative claims are live and discovery is ongoing, this litigation should proceed "in the ordinary course to judgment" and finally, "a single round of appellate review on a complete record." *Ripple Labs*, 697 F. Supp. 3d at 137 (citation omitted). Any other course would undermine the goals of judicial efficiency and result in unnecessary delay and duplicative work. Accordingly, Spotify requests that the Court deny MLC leave to file a motion for certification under § 1292(b) or, in the alternative, Rule 54(b).

> Respectfully submitted,
>
> */s/ Allison L. Stillman*
> Allison L. Stillman
> of LATHAM & WATKINS LLP

cc: All Counsel of Record (via ECF)