UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MECHANICAL LICENSING COLLECTIVE,

                     Plaintiff,

        v.

SPOTIFY USA INC.,

                    Defendant.

No. 1:24-cv-03809 (AT)(KHP)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
CERTIFY THE COURT'S DISMISSAL ORDER FOR INTERLOCUTORY APPEAL**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

I.  THIS COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY
APPEAL PURSUANT TO SECTION 1292(b) ................................................................. 5

    A.  The Order Dismissing the Original Complaint Resolved a Controlling
Question of Law That Should Be Heard on Appeal ............................................... 6

    B.  The Order Presents a Question as to Which There Are Substantial
Grounds for a Difference of Opinion .................................................................... 8

    C.  Interlocutory Appeal of the Order Would Materially Advance the Ultimate
Resolution of the Litigation .............................................................................. 12

II.  IN THE ALTERNATIVE, PARTIAL FINAL JUDGMENT UNDER RULE 54(b)
IS WARRANTED ........................................................................................................ 14

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balintulo* v. *Daimler AG*,
727 F.3d 174 (2d Cir. 2013)................................................................5

*Bright* v. *Tishman Const. Corp. of New York*,
No. 95 Civ. 8793 (DLC), 1998 WL 63403 (S.D.N.Y. Feb. 17, 1998) ...............................16

*Cohen* v. *JP Morgan Chase & Co.*,
498 F.3d 111 (2d Cir. 2007)................................................................4

*Consub Del. LLC* v. *Schahin Engenharia Limitada*,
476 F. Supp. 2d 305 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008)..........6, 7

*Ferring B.V.* v. *Allergan, Inc.*,
343 F. Supp. 3d 284 (S.D.N.Y. 2018)................................................................12

*Geneva Pharms. Tech. Corp.* v. *Barr Lab'ys, Inc.*,
No. 98 CIV. 861 (RWS), 2002 WL 31159048 (S.D.N.Y. Sept. 27, 2002) ...............................16

*Ginett* v. *Comput. Task Grp., Inc.*,
962 F.2d 1085 (2d Cir. 1992)................................................................15, 16

*Goldberg* v. *Danaher*,
599 F.3d 181 (2d Cir. 2010)................................................................7

*Herbert* v. *Lando*,
No. 74 Civ. 434-CSH, 1985 WL 463 (S.D.N.Y. Mar. 26, 1985) ...............................13

*In re Air Crash off Long Island, N.Y. on July 17, 1996*,
27 F. Supp. 2d 431 (S.D.N.Y. 1998)................................................................6

*In re Dynex Cap., Inc. Sec. Litig.*,
No. 05 Civ. 1897(HB), 2006 WL 1517580 (S.D.N.Y. June 2, 2006)................................12

*In re Enron Creditors Recovery Corp.*,
No. 01-16034 (AJG), 2009 WL 3349471 (S.D.N.Y. Oct. 16, 2009)................................3, 8

*In re Lehman Bros. Holdings Inc.*,
No. 08-13555 (JMP), 2010 WL 10078354 (S.D.N.Y. Sept. 23, 2010) ...............................8

*Klinghoffer* v. *S.N.C. Achille Lauro*,
921 F.2d 21 (2d Cir. 1990)................................................................6, 8

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Lankler Siffert & Wohl, LLP* v. *Rossi*,
  No. 02 Civ.10055(RWS), 2004 WL 541842 (S.D.N.Y. Mar. 19, 2004), *aff'd*,
  125 F. App'x 371 (2d Cir. 2005) ........................................................................16

*Lynch* v. *City of New York*,
  952 F.3d 67 (2d Cir. 2020)...............................................................................10

*Nat'l Credit Union Admin. Bd.* v. *Goldman Sachs & Co.*,
  No. CV 11-6521-GW(JEMx), 2013 WL 12306438 (C.D. Cal. July 11, 2013)......................14

*United States ex rel. Quartararo* v. *Cath. Health Sys. of Long Island Inc.*,
  521 F. Supp. 3d 265 (E.D.N.Y. 2021) ...................................................................14

*Raffles Tree Apparel Pte. Ltd.* v. *A Base IX Co. LLC*,
  No. 18-cv-05791(JSR), 2019 WL 2117643 (S.D.N.Y. Apr. 29, 2019) ...............................15

*Riverkeeper, Inc.* v. *U.S. E.P.A.*,
  514 F. Supp. 2d 565 (S.D.N.Y. 2007)...............................................................8, 11

*Rothstein* v. *GMAC Mortg., LLC*,
  No. 12 Civ. 3412(AJN), 2014 WL 1329132 (S.D.N.Y. Apr. 3, 2014)...................................13

*Salinas* v. *U.S. Xpress Enters., Inc.*,
  No. 1:13-cv-245, 2016 WL 11745101 (E.D. Tenn. Dec. 13, 2016) ........................................13

*Sec. & Exch. Comm'n* v. *Rio Tinto PLC*,
  17 Civ. 7994 (AT) (DCF), 2021 WL 1893165 (S.D.N.Y. May 11, 2021)
  (Torres, J.).....................................................................................4, 12, 13, 14

*Stevens* v. *HMSHost Corp.*,
  No. 10-CV-3571 (ILG)(VVP), 2015 WL 926007 (E.D.N.Y. Mar. 4, 2015)..........................13

*Tantaros* v. *Fox News Network, LLC.*,
  465 F. Supp. 3d 385 (S.D.N.Y. 2020)...............................................................2, 6

*Transp. Workers Union of Am., Loc. 100, AFL-CIO* v. *N.Y. City Transit Auth.*,
  358 F. Supp. 2d 347 (S.D.N.Y. 2005)...............................................................6, 7, 8

**Statutes**

28 U.S.C. § 1292(b) ......................................................................................... *passim*

**Other Authorities**

37 C.F.R. § 385.2 ......................................................................................2, 4, 9, 10

iii

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

Page(s)

Adam Parness, *Spotify Must Ditch Its 'Blatantly Dishonest' Scheme to Deny Songwriters Their Fair Share (Guest Column)*, BILLBOARD (May 22, 2024), https://www.billboard.com/business/streaming/spotify-pay-songwriters-fair-share-guest-column-1235689545/ .......................................................................3, 11

*Combination*, Oxford English Dictionary, https://www.oed.com/dictionary/combination_n?tab=meaning_and_use#8954 706 (accessed October 9, 2025) ....................................................................................9

Fed. R. Civ. P. 12(b)(6) ..................................................................................7, 10, 12

Fed. R. Civ. P. 54(b) ......................................................................................5, 14, 17

Letter from Congressmen Ted W. Lieu and Adam B. Schiff and Senator Marsha Blackburn to Shira Perlmutter, U.S. Register of Copyrights (June 12, 2024), https://lieu.house.gov/sites/evo-subsites/lieu.house.gov/files/evo-media-document/Letter%20expressing%20concerns%20regarding%20Spotify%20bundle.pdf .........................................................................................................3, 11

*Other*, Oxford English Dictionary, https://www.oed.com/dictionary/other_adj?tab=meaning _and_use#33042619 (accessed October 9, 2025) ...........................................................................................9

Plaintiff Mechanical Licensing Collective (the "MLC") respectfully submits this Memorandum of Law in Support of its Motion to Certify the Court's January 29, 2025 Order of Dismissal (Dkt. 61, the "Order") for Interlocutory Appeal, or, in the alternative, for the Court to enter a partial final judgment as to the claims dismissed in the Order, so that the MLC may then seek immediate appeal of that judgment.

## PRELIMINARY STATEMENT

The Order presents a novel and controlling question of law that is central to the case—whether Spotify's Premium offering ("Premium") indisputably meets the regulatory definition of a "Bundle," or, as the MLC alleged, whether the facts and circumstances underlying Spotify's decision to recharacterize Premium as a Bundle raise a mixed question of fact and law that could not be resolved on a motion to dismiss. That question has yet to be addressed by the Second Circuit or by any court other than this one, and its answer has significant collateral consequences for the livelihood of hundreds of thousands of songwriters, with effects that will reverberate across the entire music industry. Given the importance of the question addressed in the Order, and the impact it will have throughout the music industry, the MLC respectfully submits that the issue merits immediate review by the Second Circuit.

The MLC brings this motion—and filed this lawsuit—on behalf of the hundreds of thousands of songwriters and music publishers whose creative works form the foundation of Spotify's multi-billion dollar music streaming platform. Those songwriters and music publishers are entitled to fair compensation for the works that they create, own, and administer, but have been deprived of hundreds of millions of dollars in royalties by Spotify's recharacterization of Premium as a Bundle upon the launch of Audiobooks Access, even though Premium itself did not change.

As the MLC has alleged, the special rate structure for Bundles exists to ensure that rightsholders receive a fair share of royalty payments when "one or more other products or services

1

having more than token value" are bundled together and sold at a discount.  *See* 37 C.F.R. § 385.2. It was not intended to allow music streaming services to evade their royalty obligations by recharacterizing an existing music-based offering like Premium as a Bundle just because the offering also includes access to non-music content.  That, however, is exactly what Spotify did.

Under 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal where it determines "[1] such order involved a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  Each of these factors counsels in favor of immediate appellate review here.

*First*, Spotify's decision to  recharacterize Premium as a Bundle—and this Court's Order finding as a matter of law that Spotify was permitted to do so—presents a "controlling" question of law that has and will continue to "significantly affect the conduct of [this] action."  *See Tantaros* v. *Fox News Network, LLC.*, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020) (quotation omitted).  If the Second Circuit ultimately disagrees with the Order, the MLC's original claims would be reinstated, requiring re-litigation of the case with additional discovery, additional motion practice, and a second trial.  Granting interlocutory review now would allow for the full and final resolution of all of the MLC's claims together, without duplicative proceedings.

*Second*, the Order presents a question of regulatory interpretation as to which there are substantial grounds for a difference of opinion.  Indeed, the very lawmakers who drafted the legislation that gave rise to the regulatory definition at issue have informed the Register of Copyrights that Spotify's recharacterization of Premium as a Bundle constitutes a "manipulat[ion

of] statutory rates" that is inconsistent with the "faithful implementation" of the Copyright Act.[1]
And Spotify's own former head of music publishing licensing has declared the service's recharacterization of Premium to be "a misguided and unfair reading" of the regulations, and further noted that "there is no world in which the music publishing community truly believed that it was agreeing to bundling provisions in the manner in which they are being abused by Spotify."[2] A substantial ground for difference of opinion exists where, as here, the parties contest a novel application of regulatory or statutory provisions that has not previously been evaluated by the Second Circuit, particularly where other authorities' interpretation of the provision diverges from the Court's. *See, e.g.*, *In re Enron Creditors Recovery Corp.*, No. 01-16034 (AJG), 2009 WL 3349471, at *6–7 (S.D.N.Y. Oct. 16, 2009).

*Third*, an interlocutory appeal is particularly timely now that the Court has granted leave to amend, and the MLC has filed its First Amended Complaint. An immediate appeal presents the most efficient path to a final resolution of the critically important question of first impression addressed in the Order. Otherwise, the MLC would be forced to wait until after the conclusion of a trial on its amended claims, which would leave a cloud of uncertainty hanging over both parties while also creating the risk that a new trial will be necessary if the Second Circuit reverses the Order. An interlocutory appeal would best serve "the institutional efficiency of both the district court and the appellate court," which is "among the chief concerns underlying"

---

[1]    Letter from Congressmen Ted W. Lieu and Adam B. Schiff and Senator Marsha Blackburn to Shira Perlmutter, U.S. Register of Copyrights (June 12, 2024), https://lieu.house.gov/sites/evo-subsites/lieu.house.gov/files/evo-media-document/Letter%20expressing%20concerns%20regarding%20Spotify%20bundle.pdf.

[2]    Adam Parness, *Spotify Must Ditch Its 'Blatantly Dishonest' Scheme to Deny Songwriters Their Fair Share (Guest Column)*, BILLBOARD (May 22, 2024), https://www.billboard.com/business/streaming/spotify-pay-songwriters-fair-share-guest-column-1235689545/.

Section 1292(b). *Sec. & Exch. Comm'n* v. *Rio Tinto PLC*, 17 Civ. 7994 (AT) (DCF), 2021 WL 1893165, at *2–3 (S.D.N.Y. May 11, 2021) (Torres, J.).

Accordingly, the MLC respectfully requests that the Court certify the question of whether Premium is a Bundle as a matter law for interlocutory appeal. In the alternative, the MLC requests that the Court enter a partial final judgment as to the claims dismissed in the Order, which would allow the MLC to seek an immediate appeal of that judgment.

## BACKGROUND

The MLC brought this suit on May 16, 2024, in response to Spotify's decision to recharacterize its Premium offering as a Bundle of music and audiobooks under 37 C.F.R. § 385.2. Dkt. 1, at 2–6. On January 29, 2025, the Court granted Spotify's motion to dismiss the MLC's original Complaint with prejudice. *See* Dkt. 61, at 14. In that Order, the Court determined as a matter of law that Spotify Premium is a Bundle under 37 C.F.R. § 385.2. *See id.* at 7–14; *Cohen* v. *JP Morgan Chase & Co.*, 498 F.3d 111, 114–15 (2d Cir. 2007) ("We review the district court's decision to dismiss [plaintiff's] claim *de novo*, both because it is a ruling of law pursuant to Federal Rule of Civil Procedure 12(b)(6), . . . and because it depends on statutory construction" (citation omitted)). The relevant regulatory provision defines a Bundle as "a combination of a [music] Subscription Offering . . . and one or more other products or services having more than token value, purchased by [users] in a single transaction." Dkt. 61, at 3 (second alteration in original). The Order determined that audiobooks content qualified as an "other product or service" that has "more than token value," and dismissed the Complaint on the basis that "dismissal is appropriate where there are 'no set of facts' in the complaint 'which would entitle [the plaintiff]' to relief." *Id.* at 9, 12–13. The Order further determined that the application of the terms "separate product" and "more than token value" "are not 'inherently factual inquiries,'" but rather "require[] applying unambiguous statutory language to the facts alleged." *Id.* at 13. Leave to amend was initially

4

denied based on a finding of no "reasonable likelihood . . . that 'a valid claim might be stated' upon amendment of the complaint." *Id.* at 13–14 (quoting *Chavis* v. *Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).

The Court subsequently entered a judgment and closed the case. *See* Dkt. 62. The MLC then moved for vacatur of that judgment to seek leave to amend, which the Court granted on March 11, 2025. *See* Dkt. 74. The motion to amend was fully briefed on May 6, 2025, and the Court issued a decision granting the MLC leave to amend on September 25, 2025. *See* Dkt. 81; Dkt. 84. The MLC promptly filed its First Amended Complaint on October 1, 2025. *See* Dkt. 88.

## ARGUMENT

This Court should certify the Order pursuant to 28 U.S.C. § 1292(b) or, in the alternative, enter a partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) to allow the MLC to immediately appeal that judgment.

## I.

### THIS COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO SECTION 1292(b)

Section 1292(b) authorizes a district court to certify an order for interlocutory appeal upon a determination that "[1] such order involved a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." As the Second Circuit has recognized, if an order satisfies these criteria and "'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'" *Balintulo* v. *Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting *Mohawk Indus., Inc.* v. *Carpenter*, 558 U.S. 100, 111 (2009)). All of these factors are present and support swift certification of the Court's Order.

**A.    The Order Dismissing the Original Complaint Resolved a
<u>Controlling Question of Law That Should Be Heard on Appeal</u>**

A question of law is "controlling" for the purposes of Section 1292(b) if its answer would "significantly affect the conduct of the action." *Tantaros*, 465 F. Supp. 3d at 389; *see also Klinghoffer* v. *S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (controlling questions need not be dispositive).  A question is more likely to be controlling to the extent that it presents a novel issue whose determination has significant collateral consequences.  *See Tantaros*, 465 F. Supp. 3d at 389 (controlling question of law exists where the "'certified issue has precedential value for a large number of cases.'" (quoting *Glatt* v. *Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784 (WHP), 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013))); *Transp. Workers Union of Am., Loc. 100, AFL-CIO* v. *N.Y. City Transit Auth.*, 358 F. Supp. 2d 347, 353 (S.D.N.Y. 2005) (finding a controlling issue of law where the "case raise[d] a novel issue of great importance to many other employers").  Additionally, a controlling question of law must be capable of decision by the Second Circuit "with minimal, if any, reference to the record."  *Consub Del. LLC* v. *Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 313 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008); *see also In re Air Crash off Long Island, N.Y. on July 17, 1996*, 27 F. Supp. 2d 431, 435 (S.D.N.Y. 1998) (finding certification appropriate for "purely legal question[s]").

Whether Premium constitutes a Bundle as a matter of law presents a controlling question of law because its answer will "significantly affect the conduct of the action." *Tantaros*, 465 F. Supp. 3d at 389.  The Second Circuit's answer to that question will fundamentally change the conduct of the case, and possibly its ultimate outcome.  Should the Second Circuit determine that the question of whether Premium constitutes a Bundle cannot be decided as a matter of law, the MLC's original claims would be revived, and the parties would engage in discovery, potential summary judgment practice, and ultimately go to trial on that question.

Whether Premium is a Bundle as a matter of law also presents a "novel issue of great importance"—not only to this case, but to all participants in the music streaming industry. *See Transp. Workers Union*, 358 F. Supp. 2d at 353. Spotify is only one of multiple digital streaming services that offer access to millions of songs and generate billions of dollars in annual revenues. The question of whether Premium constitutes a Bundle under the regulations at issue has profound commercial consequences for the songwriters who created those songs as well as the digital streaming services whose business models are built on those songs. If the Second Circuit finds that Premium is not a Bundle as a matter of law, and the MLC establishes through discovery and at trial that Premium does not satisfy the regulatory definition, then Spotify will owe songwriters potentially hundreds of millions of dollars in unpaid royalties. *See* Dkt. 1, at 2. If, on the other hand, the Second Circuit affirms this Court's Order finding that Premium is a Bundle as a matter of law, the ruling's precedent would materially impact the way the MLC assesses the compliance of the usage reports submitted by other digital music services. In either scenario, the consequences are significant.

Certification is particularly appropriate where, as here, the Order was a determination under Rule 12(b)(6), which means that the question on appeal of whether Premium is a Bundle as a matter of law can be assessed "with minimal, if any, reference to the record." *Consub Del. LLC*, 476 F. Supp. 2d at 313; *see also Goldberg* v. *Danaher*, 599 F.3d 181, 183 (2d Cir. 2010) ("[A] motion under Rule 12(b)(6) presents a pure legal question, based on allegations contained within the four corners of the complaint"). Indeed, the only documents the Second Circuit would need to review are the original Complaint, the motion to dismiss briefing, and the Order.

**B.    The Order Presents a Question as to Which There
Are Substantial Grounds for a Difference of Opinion**

A "substantial ground for difference of opinion exists" when an issue is "difficult and of first impression" within the Circuit. *Klinghoffer*, 921 F.2d at 25; *Transp. Workers Union*, 358 F. Supp. 2d at 353 (finding a "substantial ground for difference of opinion" where the question concerned the application of dicta from a single Second Circuit opinion). Courts in the Second Circuit regularly find a substantial ground for difference of opinion where, as here, the parties contest a novel application of statutory provisions that have not previously been evaluated. *See, e.g.*, *In re Enron*, 2009 WL 3349471, at *6–7; *Riverkeeper, Inc.* v. *U.S. E.P.A.*, 514 F. Supp. 2d 565, 571 (S.D.N.Y. 2007) ("[I]n the absence of controlling case law and in view of a proffer of a plausible statutory interpretation, there is a 'substantial ground' for disagreement with my ruling.").

Where, as here, "a controlling question of law presents an issue of first impression, permission to appeal is often granted." *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (JMP), 2010 WL 10078354, at *6 (S.D.N.Y. Sept. 23, 2010) (quoting *In re Enron*, 2009 WL 3349471, at *6). As both parties have acknowledged, the application of the Bundle definition is entirely novel, having not been addressed by any other court inside or outside the Second Circuit. *See* Dkt. 25, at 14; Dkt. 28, at 26.

This matter of first impression also presents a difficult issue of regulatory interpretation. *See In re Enron*, 2009 WL 3349471, at *6; *Riverkeeper, Inc.*, 514 F. Supp. 2d at 571. Indeed, the Order itself acknowledged that Spotify's interpretation of the term "Bundle" was inconsistent with "the ordinary meaning of the word 'bundle.'" *See* Dkt. 61, at 11.

The conclusion in the Order that Premium is a Bundle as a matter of law turned on two fundamental questions: (1) whether Premium is a "combination of a Subscription Offering

8

. . . and one or more other products or services," and (2) whether that other product or service has "more than token value." *Id.* at 3. The Order held that the phrase "combination of a Subscription Offering . . . and one or more other products or services," does not imply "other preexisting, standalone products or services." *Id.* at 10. But there is at least room for reasonable disagreement on that interpretation given Section 385.2's use of the words "other" and "combination," and the MLC's arguments concerning those words. It is not unreasonable to read the full phrase "combination of . . . other products or services" to require pre-existing products or services, especially because the plain meaning of the term "combination" necessarily implies the existence of at least two separate objects that can be combined. *See Combination*, Oxford English Dictionary, https://www.oed.com/dictionary/combination_n?tab=meaning_and_use#8954706 (accessed October 9, 2025) ("The action of combining or joining *two or more separate things* into a whole." (emphasis added)); *see also* Dkt. 28, at 12 ("Spotify did not combine Premium with any other product or service when it launched Audiobooks Access; it merely added another type of nonmusic content to its existing service."). As the MLC argued in its opposition to Spotify's motion to dismiss, the audiobooks content on Premium had never existed as a separate product from Premium, which continued to be "the same single subscription plan" before and after the addition of audiobooks content. Dkt. 28, at 16.

The same result is implied by the use of the term "other," which is ordinarily defined as "[s]eparate or distinct from that or those already specified or implied." *See Other*, Oxford English Dictionary, https://www.oed.com/dictionary/other_adj?tab=meaning_and_use#33042619 (accessed October 9, 2025). The MLC argued in its brief opposing the motion to dismiss that, contrary to Spotify's argument, the audiobooks content on Premium is not "different or distinct" from Premium itself. Dkt. 28, at 16–17. For these reasons, the interpretation of the

phrase "combination of a Subscription Offering . . . and one or more other products or services" presents reasonable grounds for disagreement with the Order.

There also are grounds for reasonable disagreement concerning the Order's interpretation of the phrase "token value." The Order itself recognized that the "MLC's definition of 'token value' has intuitive appeal," but also found that the "MLC does not argue that Bundle or 'token value' are ambiguous terms or phrases." Dkt. 61, at 11–12. However, the MLC did in fact argue that the application of the term "token value" is a mixed question of law and fact, meaning that whether a given product has more than "token value" depends at least in part on analysis of the surrounding facts, including the value placed on that product by consumers and the Service Provider. Dkt. 28, 24–27. In the course of that argument, the MLC emphasized that the interpretation of "token value" was a novel question and distinguished case law presented by Spotify suggesting that the term is unambiguous. *Id.* at 26–27.

Further, the Order interpreted the MLC's "token value" argument to mean that "a product or service has more than token value for purposes of § 385.2 only if it contributes to a meaningful price increase when offered as a package with a Subscription Offering." Dkt. 61, at 10 (citing Dkt. 28, at 13). The MLC did not argue that a "meaningful price increase" is **necessary**; rather, it argued that the absence of a meaningful price increase is probative evidence that a product or service has mere "token value" within the broader, factual analysis required by the regulation. *See* Dkt. 28, at 13. Spotify countered that point with a factual argument outside of the Complaint that it could have retained the original Premium price point for the purpose of "customer acquisition," an argument that the Order credited. Dkt. 61, at 11 n.5 (quoting Dkt. 25, at 17–18). There is at least reasonable ground for disagreement as to whether the Court should have credited that factual argument from Spotify, the Rule 12(b)(6) movant. *See Lynch* v. *City of New York*, 952

10

F.3d 67, 75 (2d Cir. 2020) (The "choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion.").

These portions of the Order indicate that there is, at the very least, room for reasonable disagreement on the novel and controlling question of whether Premium is a Bundle as a matter of law. Indeed, the very lawmakers who drafted the Music Modernization Act, which created the regulatory definition at issue, have informed the Register of Copyrights of their concern that Spotify's recharacterization of Premium as a Bundle constitutes "manipulat[ion of] statutory rates" inconsistent with the "faithful implementation" of the Act.[3] And Spotify's own former head of music publishing licensing has concurred, labeling Spotify's recharacterization of Premium as a Bundle as "a misguided and unfair reading" of the regulations, and further noting that "there is no world in which the music publishing community truly believed that it was agreeing to bundling provisions in the manner in which they are being abused by Spotify."[4]

Moreover, Spotify's own conduct underscores that there is reasonable disagreement as to whether Premium is a Bundle as a matter of law. For months after it added audiobooks content to Premium, Spotify itself continued to certify—in accordance with federal law—that Premium was **not** a Bundle, until March 2024, when it recharacterized Premium as a Bundle. *See* Dkt. 28, at 10. Spotify's own inconsistent certifications of Premium as both a Bundle and not a Bundle, together with the other factual allegations in the original Complaint, demonstrate that "there is a 'substantial ground' for disagreement" with the Order's determination that Premium is a Bundle under the regulations as a matter of law. *Riverkeeper*, 514 F. Supp. 2d at 571.

---

[3]   *See supra* n.1.

[4]   *See supra* n.2.

C.     **Interlocutory Appeal of the Order Would Materially**
       **Advance the Ultimate Resolution of the Litigation**

An immediate appeal of the Order will materially advance the ultimate resolution of the litigation.  In evaluating the third prong of Section 1292(b), courts must assess whether an interlocutory appeal would best serve "the institutional efficiency of both the district court and the appellate court," which is "among the chief concerns underlying" Section 1292(b).  *Rio Tinto*, 2021 WL 1893165, at *2–3 (Torres, J.) (quotations omitted).  Accordingly, certification is appropriate where interlocutory appellate review would "'advance the time for trial or . . . shorten the time required for trial.'"  *Ferring B.V.* v. *Allergan, Inc.*, 343 F. Supp. 3d 284, 290 (S.D.N.Y. 2018) (quoting *Transp. Workers Union*, 358 F. Supp. 2d at 350).  Further, as this Court has recognized, the ultimate resolution of the litigation is advanced by an interlocutory appeal where appellate review would solidify the parties' negotiating positions, making settlement more likely. *See Rio Tinto*, 2021 WL 1893165, at *3.

Now is the optimal time for an appeal of the Order.  "[S]ubstantial resources may be expended in vain both by the parties and this Court if [the Court's] initial conclusion proves incorrect."  *In re Dynex Cap., Inc. Sec. Litig.*, No. 05 Civ. 1897(HB), 2006 WL 1517580, at *3 (S.D.N.Y. June 2, 2006).  If the parties proceed to trial and the Second Circuit overturns the Order after a final judgment, a second trial on the claims in the original Complaint will be necessary. Duplicative trials would require an extreme and unnecessary expenditure of resources by both parties, and would waste the Court's time with the re-examination of witnesses and the duplicative presentation of evidence that could have been presented together.  This Court's decision in *Rio Tinto* is instructive.  There, the Court dismissed certain of the plaintiff's claims under Rule 12(b)(6) and certified the order of dismissal for an interlocutory appeal, reasoning that "[i]f the Second Circuit reverses . . . the parties could resolve all actionable claims at one trial . . . [as opposed to]

seeking appellate review following trial, after which a second trial might be necessary." *Rio Tinto*, 2021 WL 1893165, at *3. Now that the MLC has filed its First Amended Complaint, this case presents the same issue: only some of the MLC's claims have been dismissed, and it would be much more efficient to certify an interlocutory appeal now so that all claims can be tried together in the event of a reversal at the Second Circuit. *See also Herbert* v. *Lando*, No. 74 Civ. 434-CSH, 1985 WL 463, at *2 (S.D.N.Y. Mar. 26, 1985) ("If, following that trial, this Court's orders on summary judgment are reversed, and plaintiff prevails in the Court of Appeals, there will have to be a second, expanded trial.").

Nor would an earlier motion to certify an interlocutory appeal have been appropriate or efficient. Before the Court granted leave to amend, briefing certification for an interlocutory appeal would have risked wasting the Court's and the parties' time and resources because at any moment the Court might have declined leave to amend and entered a final judgment, giving the MLC the immediate ability to appeal as of right and rendering moot any motion practice over an interlocutory appeal. But now that the Court has granted leave to amend, and the MLC has filed its First Amended Complaint, an immediate appeal presents the most efficient path to a final resolution of the critically important question of first impression addressed in the Order.

This is precisely why "§ 1292(b) sets no deadline for certification," and instead gives the Court the flexibility to certify an interlocutory appeal in circumstances such as these in order to promote the efficient functioning of the judicial system. *Rothstein* v. *GMAC Mortg., LLC*, No. 12 Civ. 3412 (AJN), 2014 WL 1329132, at *3 (S.D.N.Y. Apr. 3, 2014) (rejecting argument that motion for certification was untimely); *Stevens* v. *HMSHost Corp.*, No. 10-CV-3571 (ILG)(VVP), 2015 WL 926007, at *1 (E.D.N.Y. Mar. 4, 2015) (same); *Salinas* v. *U.S. Xpress Enters., Inc.*, No. 1:13-cv-245, 2016 WL 11745101, at *2 (E.D. Tenn. Dec. 13, 2016) ("The statute

that provides for certification of interlocutory appeals, 28 U.S.C. § 1292(b), does not include a deadline to move for certification.  Instead, a district court has discretion to allow an interlocutory appeal.").  And pursuant to that flexibility, courts have certified interlocutory appeals on timetables similar to (if not substantially longer) than the period of time at issue here.  *See, e.g.*, *United States ex rel. Quartararo* v. *Cath. Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 274 (E.D.N.Y. 2021) (certifying interlocutory appeal after three years where the court failed to rule on prior motion for certification); *Nat'l Credit Union Admin. Bd.* v. *Goldman Sachs & Co.*, No. CV 11-6521-GW(JEMx), 2013 WL 12306438, at *6 (C.D. Cal. July 11, 2013) (permitting interlocutory appeal eight months after order).

Moreover, without such certification, the MLC will be forced to wait until after the conclusion of a trial on its amended claims, which would leave "a cloud of legal uncertainty" hanging over these proceedings, impacting the music industry at large.  *Rio Tinto*, 2021 WL 1893165, at *3 (an interlocutory appeal will "remove a cloud of legal uncertainty over these proceedings and may significantly affect the parties' bargaining positions and may hasten the termination of this litigation through settlement" (internal citation and quotation marks omitted)). Further, certification of an interlocutory appeal will not slow proceedings in this Court, as the MLC would seek an expedited appeal.

## II.

### IN THE ALTERNATIVE, PARTIAL FINAL
### <u>JUDGEMENT UNDER RULE 54(b) IS WARRANTED</u>

If the Court does not see fit to certify the Order for interlocutory review, the MLC respectfully requests that the Court instead enter the Order as a partial final judgment pursuant to Federal Rule of Civil Procedure 54(b).  Entry of a partial final judgment under Rule 54(b) is appropriate where "(1) multiple claims or multiple parties must be present, (2) at least one claim,

or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make 'an express determination that there is no just reason for delay.'" *Ginett* v. *Comput. Task Grp., Inc.*, 962 F.2d 1085, 1091 (2d Cir. 1992) (emphases removed).  All three elements are satisfied here.

First, the MLC's original Complaint brought claims based on allegations that Premium is not a Bundle.  *See* Dkt. 1, at 21–22; Dkt. 61.  The First Amended Complaint now brings distinct claims concerning the calculation of royalties for Spotify's subscription tiers.  *See* Dkt. 87; Dkt. 88.  Therefore, multiple claims are present.

Second, the Order dismissed the claims brought in the original Complaint, ending any further litigation of those claims before this Court.  *See* Dkt. 61, at 14.  A claim is deemed finally decided if "the decision ends the litigation of that claim on the merits and leaves nothing for the court to do but execute the judgment entered on that claim."  *Ginett*, 962 F.2d at 1092 (internal quotation marks and citation omitted).  If the case proceeds to trial before the Order is appealed, the only action the Court will take with respect to the claims dismissed in the Order will be to enter a judgment of dismissal once the claims in the First Amended Complaint are decided. Indeed, before vacatur, the Court had already entered judgment with respect to the claims dismissed in the Order.  *See* Dkt. 62.

Third, there is no just reason for delay because "in 'the interest of sound judicial administration,' . . . entry of partial judgment 'will make possible a more expeditious and just result for all parties.'"  *Raffles Tree Apparel Pte. Ltd.* v. *A Base IX Co. LLC*, No. 18-cv-05791(JSR), 2019 WL 2117643, at *1 (S.D.N.Y. Apr. 29, 2019) (quoting *Ginett*, 962 F.2d at 1092).  Expediency and sound judicial administration are served where, as here, "the certification of the judgments will not involve potentially duplicative work for either the district court or the

15

appellate court, and will not involve consideration of the merits of issues not appealed." *Lankler Siffert & Wohl, LLP* v. *Rossi*, No. 02 Civ.10055(RWS), 2004 WL 541842, at *5 (S.D.N.Y. Mar. 19, 2004), *aff'd*, 125 F. App'x 371 (2d Cir. 2005). Here, an immediate appeal does not present any risk of duplicative work—whether an appeal is permitted before trial or not, the Second Circuit will review the Order only once. Nor will appellate review of the Order require consideration of issues not appealed—the claims raised in the First Amended Complaint are independent from those dismissed in the Order and need not be reviewed to render a decision concerning the Order. *See Bright* v. *Tishman Const. Corp. of New York*, No. 95 Civ. 8793 (DLC), 1998 WL 63403, at *8 (S.D.N.Y. Feb. 17, 1998) (finding no just reason for delay where "with respect to the legal questions presented, [the remaining claim was] entirely independent from the issues encapsulated by the partial judgment.").

Indeed, an immediate appeal *reduces* the potential for duplicative work by this Court. As discussed *supra*, a reversal from the Second Circuit after trial on the MLC's amended claims presents the risk of a duplicative trial. Duplicative trials would certainly cause "financial hardship to [each] party," which is another reason militating against delay of final judgment. *See Lankler*, 2004 WL 541842, at *5 (internal quotation marks and citation omitted). Further, also as discussed *supra*, "an appellate resolution would facilitate a settlement of the remaining claims," preserving judiciary resources. *Geneva Pharms. Tech. Corp.* v. *Barr Lab'ys, Inc.*, No. 98 CIV. 861 (RWS), 2002 WL 31159048, at *2 (S.D.N.Y. Sept. 27, 2002) (granting partial final judgment).

For these reasons, if the Court decides not to certify the Order for interlocutory appeal, the MLC requests that it still protect "the interest of sound judicial administration" by entering a partial final judgment that the MLC may appeal expeditiously. *Ginett*, 962 F.2d at 1095.

## **CONCLUSION**

For the foregoing reasons, the MLC respectfully requests that the Court certify the

Order for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), or, in the alternative, enter a

partial final judgment with respect to the claims dismissed in the Order pursuant to Federal Rule

of Civil Procedure 54(b).

Dated: December 19, 2025
        New York, New York

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

*/s/ Jay Cohen*
Jay Cohen
Darren W. Johnson
Dylan O. Smith
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
jaycohen@paulweiss.com
djohnson@paulweiss.com
dosmith@paulweiss.com

*Attorneys for Plaintiff*
*Mechanical Licensing Collective*

17

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby state that the foregoing Memorandum of Law was prepared on a computer using Microsoft Word.  The total number of words in this brief, excluding the caption, table of contents, table of authorities, signature block, and this certification is 5,305.  In preparing this certificate, I relied on the word count program in Microsoft Word.

Dated: December 19, 2025
New York, New York

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

*/s/ Jay Cohen*
Jay Cohen
Darren W. Johnson
Dylan O. Smith
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
jaycohen@paulweiss.com
djohnson@paulweiss.com
dosmith@paulweiss.com

*Attorneys for Plaintiff*
*Mechanical Licensing Collective*