PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

BEIJING         SAN FRANCISCO
BRUSSELS        TOKYO
HONG KONG       TORONTO
LONDON          WASHINGTON, DC
LOS ANGELES     WILMINGTON

DIRECT DIAL: (212) 373-3163
EMAIL: jaycohen@paulweiss.com

January 15, 2026

**VIA ECF**

The Honorable Katharine H. Parker
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, New York, NY 10007

    *Mechanical Licensing Collective* v. *Spotify USA Inc.*, No. 1:24-cv-03809

Dear Judge Parker:

  In accordance with Your Honor's Individual Practices in Civil Cases § II(b), the parties in the above-captioned action write jointly to identify discovery disputes the parties would like to discuss at the January 22 status conference. In accordance with Your Honor's instructions at the November 3, 2025 status conference Defendant Spotify USA Inc. notes that these disputes require further briefing. Nov. 3, 2025 Hr'g Tr. at 12:15–23. The MLC believes it is premature to request briefing, and that a determination as to further briefing should only be made after the January 22, 2026 conference.

  Since the November 3 conference, and in line with the scheduling order (Dkt. 96), the parties exchanged document requests, interrogatories and initial productions. The parties have also exchanged proposed date ranges and custodians for ESI searches. While discussions remain ongoing, the parties have identified six disputes on which they are at an impasse:

  **1. Spotify Senior Executive Custodians.** The MLC has requested that Daniel Ek (Spotify's former CEO and current Chairman), Alex Norström (Spotify's former Chief Business Officer, current co-CEO), Gustav Söderström (Spotify's former Chief Product & Technology Officer, current co-CEO), and Ben Kung (Spotify's former interim CFO, current Vice President, Finance) be included as custodians in Spotify's document searches. Spotify has declined to search those individuals' documents. The MLC's position is that given the enormous financial consequences of the pricing and reporting decisions at issue, it is almost certain that these individuals played a role in the events at issue. Spotify's position is that obtaining discovery from Spotify's Chairman, CEOs, and former interim CFO is inappropriate at this stage because (1) through custodial interviews and review of documents, Spotify has already identified and disclosed to the MLC the individuals who played the most significant, decision-making roles in the narrow remaining issues in the case, (2) the MLC has yet to review documents from all of these individuals and (3) the MLC has failed to meaningfully meet and confer regarding why additional discovery is needed beyond those individuals.

**2. The MLC's Identification Interrogatories.** MLC interrogatories No. 7–12 asked Spotify to identify the individuals involved in discussions and responsible for the decision (i) to report Premium to the MLC as a Bundle (No. 7, 8), (ii) of whether and when to launch Audiobooks Access (No. 9, 10), and (iii) to launch Audiobooks Access only in the United States (No. 11, 12). Spotify declined to identify any individuals in response to those interrogatories. The MLC's position is that identification of these individuals is important for determining potential document custodians and witnesses because these individuals are likely to have information relevant to Spotify's intent and good faith in launching Audiobooks Access at a monthly subscription price of $9.99, and then using that price to value the audiobooks content in Premium when it recharacterized Premium as a Bundle. Spotify's position is that interrogatories No. 7–12 have no connection to the decision to use the Audiobooks Access price as the standalone price for the Premium Bundle's audiobook product, both of which are topics covered by MLC Interrogatories 1–4, which Spotify has already answered, and that this further information is irrelevant to this question of market value and disproportionate to the needs of this case.

**3. The MLC's Intent-Related Document Requests.** Several of the MLC's document requests (e.g., Nos. 1, 2, 3, 4, 5, 10, 11, 14, 16, 19, 21, 22 and 23) seek documents that go to Spotify's motivation in (i) adding audiobooks to Premium, (ii) launching Audiobooks Access, and (iii) launching and pricing Basic. Spotify has declined to produce any documents in response to these requests. The MLC's position is that these documents are relevant to Spotify's intent and good faith in launching Audiobooks Access at a monthly subscription price of $9.99, then using that price to value the audiobooks content in Premium when it recharacterized Premium as a Bundle, and then launching Basic at a monthly subscription price of $10.99, all of which bears on whether $9.99 was a "good faith, reasonable measure of the market value of" Spotify's audiobooks content, or whether the price was instead unreasonable and adopted in bad faith. 37 C.F.R. § 385.2. Spotify's position is that it has already agreed to produce documents on the value of audiobooks and pricing for Audiobooks Access in response to other document requests issued by the MLC, of which there are fifty-one, but that the above requests—which seek a sweeping set of documents about Spotify's broad, nonspecific "motivation[s]" for adding an audiobook streaming product to the Premium bundle, launching (rather than *pricing*) Audiobooks Access, or launching and pricing a product (Basic) with no connection to the remaining claims in this case—are neither relevant nor proportional, *especially* because whether $9.99 is a "good faith, reasonable measure of the market value" of the Premium bundle's audiobook product is at best a tertiary issue that arises only if one first (illogically and improbably) concludes there is no even *reasonably* comparable audiobook streaming product in the market.[1]

**4. Spotify's Interrogatories.** The MLC objected to each of Spotify's thirteen Interrogatories based in part on grounds that Local Rule 33.3 limits Interrogatories at the commencement of discovery to certain topics (e.g., to the identity of individuals with relevant knowledge, information relevant to damages, and information regarding relevant documents).

---

[1] Spotify further notes that 37 C.F.R. § 385.2 states that a service is to use the "standalone published price" for each product within a "Bundle" when calculating royalties. In the absence of a standalone published price for the relevant product, the service must use "the average standalone published price for End Users for the *most closely comparable product* or service in the U.S. or, if more than one comparable exists, the average of standalone prices for comparables." Finally, and only "[i]f no reasonably comparable product or service exists in the U.S.," the service "may" use "another good faith, reasonable measure of the market value of the component." *Id.*

Spotify's position is that there is no other appropriate time in discovery in this case—fact discovery is set to end on March 13, 2026—and the MLC must provide answers to interrogatories seeking information such as, e.g., the MLC's process for determining the standalone value of Bundle components and its policies concerning offerings with free components. The timing of these Interrogatories is appropriate. The MLC's position is that Spotify's interrogatories were served in the beginning stages of discovery pursuant to a deadline for "[i]nitial sets of interrogatories" in the scheduling order (Dkt. 96 at 1), and Spotify has not identified any reason why these initial interrogatories should not be subject to the limitations set forth in Local Rule 33.3(a).

      **5. Spotify's Affirmative Defense-Related Discovery.** Several of Spotify's discovery requests (e.g. RFPs 4 and 13, ROGs 1, 2, 3, 5, 6, and 13) seek documents or information concerning MLC's application of its policies and regulations across similarly situated digital services providers. Spotify's position is that these requests are at minimum relevant to Spotify's affirmative defenses of unclean hands and copyright misuse, which courts have recognized require an assessment of whether similarly situated parties were treated equitably. The MLC's position is that it already has agreed, in response to RFP 4, to produce "documents sufficient to show its process for 'confirm[ing] proper payment of royalties due,' pursuant to 17 U.S.C. § 115(d)(3)(G)(i)(I)(cc), for Bundles reported by blanket Licensees." The MLC also has agreed, in response to RFP 12, to produce all documents concerning the MLC's interpretation or enforcement of Bundles offered by other services.

      **6. The Music Offering in Spotify Audiobooks Access.** Spotify's RFP 23 seeks documents and communications concerning MLC's allegation that it "investigated" the music available in Audiobooks Access and found the music offering similar to that in Spotify Premium. First Am. Compl. ¶ 76. Spotify has explained that the music offerings in Audiobooks Access and Spotify *Free* are identical: both are ad-supported and both offer users only limited control on play order. Spotify's position is that in order to understand the basis of and refute MLC's allegations concerning the music functionality included in Audiobooks Access, MLC must produce documents related to its investigation. The MLC's position is that there is no dispute that the music offering for new Audiobooks Access subscribers is similar to the music offering for Premium subscribers, at least for some period of time. *See* Dkt. 80-1 at 3 (declaration from Spotify's counsel affirming that "if a user signs up for a brand new" Audiobooks Access account, "then there is a period of time during which the user receives on-demand music with no advertisements"). Because these facts are not in dispute, discovery of investigations by the MLC's counsel in advance of filing the original complaint is entirely unnecessary, and in any event, those materials would be shielded from production by the attorney-client and/or work-product privileges.

      The parties look forward to discussing these issues with Your Honor at the January 22, 2026 Case Management Conference.

Respectfully submitted,

| **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** | **LATHAM & WATKINS LLP** |
|---|---|

*/s/ Jay Cohen*
Jay Cohen
Darren W. Johnson
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
jaycohen@paulweiss.com
djohnson@paulweiss.com

*Attorneys for Plaintiff Mechanical Licensing Collective*

*/s/ Allison Levine Stillman*
Allison Levine Stillman
Grace McLaughlin
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212-906-1200
alli.stillman@lw.com
grace.mclaughlin@lw.com

Sarang Vijay Damle
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
Telephone: 202-637 2200
sy.damle@lw.com

*Attorneys for Defendant Spotify USA, Inc.*