UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MECHANICAL LICENSING COLLECTIVE,

                          Plaintiff,

        v.                                        No. 1:24-cv-03809 (AT)(KHP)

SPOTIFY USA INC.,

                          Defendant.

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER
SUPPORT OF ITS MOTION TO CERTIFY THE COURT'S
<u>DISMISSAL ORDER FOR INTERLOCUTORY APPEAL</u>**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

I. THIS COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO SECTION 1292(b) ...................................................... 3

    A. The Order Implicates a Controlling Question of Law ........................................... 3

    B. There Are Substantial Grounds for a Difference of Opinion.................................. 4

    C. Interlocutory Appeal of the Order Would Materially Advance the Ultimate Resolution of the Litigation ................................................................................... 6

    D. Spotify's Other Arguments Are Similarly Meritless ............................................. 8

II. IN THE ALTERNATIVE, PARTIAL FINAL JUDGMENT UNDER RULE 54(b) IS WARRANTED ................................................................................................... 9

CONCLUSION............................................................................................................................. 11

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Magnetics, Inc.* v. *Bayfront Partners, Inc.*,
    106 F.3d 11 (2d Cir. 1997)................................................................................................11

*In re Air Crash*
    *off Long Island, N.Y. on July 17, 1996*, 27 F. Supp. 2d 431 (S.D.N.Y. 1998) ..........................9

*Bowne of New York City, Inc.* v. *AmBase Corp.*,
    161 F.R.D. 270 (S.D.N.Y. 1995) .......................................................................................10

*Ginett* v. *Computer Task Grp., Inc.*,
    962 F.2d 1085 (2d Cir. 1992)............................................................................................10

*In re Lehman Bros. Holdings Inc.*,
    No. 08-13555 (JMP), 2010 WL 10078354 (S.D.N.Y. Sept. 23, 2010) .....................................6

*M&A Metals, Inc.* v. *Fina*,
    No. 21CV5570PKCPK, 2023 WL 2734794 (E.D.N.Y. Mar. 31, 2023)....................................6

*New York by James* v. *Citibank, N.A.*,
    No. 24-CV-659 (JPO), 2025 WL 1194377 (S.D.N.Y. Apr. 22, 2025) ..................................7, 9

*United States ex rel. Quartararo* v. *Cath. Health Sys. of Long Island Inc.*,
    521 F. Supp. 3d 265 (E.D.N.Y. 2021) .................................................................................8

*SEC* v. *Ripple Labs, Inc.*,
    697 F. Supp. 3d 126 (S.D.N.Y. 2023).............................................................................3, 4

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).......................................................................................................2, 7

Fed. R. Civ. P. 54(b) ........................................................................................................ *passim*

Plaintiff Mechanical Licensing Collective (the "MLC") respectfully submits this Reply Memorandum of Law in Further Support of its Motion to Certify the Court's January 29, 2025 Order of Dismissal (Dkt. 61, the "Order") for Interlocutory Appeal pursuant to Section 1292(b), or, in the alternative, for the Court to enter a partial final judgment pursuant to Rule 54(b) as to the claims dismissed in the Order, so that the MLC may then seek immediate appeal of that judgment.

## PRELIMINARY STATEMENT

Spotify does not dispute that the issue decided in the Order—whether Spotify's Premium offering indisputably meets the regulatory definition of a Bundle, or whether the facts and circumstances underlying Spotify's decision to recharacterize Premium as a Bundle, raised a mixed question of law and fact that should not have been resolved on a motion to dismiss—has yet to be addressed by any court other than this one. And Spotify does not dispute that the answer to that novel question of law has "significant collateral consequences for the livelihoods of hundreds of thousands of songwriters, with effects that will reverberate across the entire industry." Dkt. 105, at 1. That is enough, under well-established case law in this Circuit, to support certification for interlocutory appeal pursuant to Section 1292(b) or, in the alternative, entry of a partial final judgment under Rule 54(b).

Spotify nonetheless opposes any immediate review by the Second Circuit, relying on a hodgepodge of arguments that misconstrue the facts and misapply the law.

*First*, Spotify claims that the Order does not involve a "pure question of law" that is appropriate for § 1292(b) certification. That is wrong. Whether it was proper for the Court to dismiss the MLC's claim based on facts not pled in the original Complaint is precisely the sort of "pure question of law" that is appropriate for immediate review because the Second Circuit can decide it quickly without having to pore through any underlying factual record.

*Second*, Spotify argues that there is no ground for a substantial difference of opinion because the Order found that the regulations at issue are "unambiguous." But the fact that this Court reached that conclusion does not preclude the possibility of alternative interpretations, including those of the lawmakers responsible for the legislation at issue, and those of Spotify's own former head of music publishing, all of whom have declared Spotify's recharacterization of Premium as a Bundle to be inconsistent with the regulations.

*Third*, Spotify suggests that an interlocutory appeal would not materially advance the ultimate termination of the litigation because it would lead to "piecemeal" litigation in two different courts. That argument ignores that an immediate appeal is the most efficient path to resolving the highly consequential question of first impression addressed in the Order. If the parties proceed to trial on the MLC's amended claims and the Second Circuit overturns the Order after a final judgment, a second trial on the claims in the original Complaint will be necessary. Immediate appeal of the original Complaint is the only way to avoid wasting both the parties' and this Court's time and resources with the re-examination of witnesses and the duplicative presentation of evidence that could have been presented together in a single proceeding. Spotify further suggests that the Second Circuit would not issue a decision in time for the original and amended claims to be tried together, but this ignores that an appeal of the Order is ripe for expedited review under the Circuit's governing rules because it would be an appeal of an order resolving a Rule 12(b)(6) motion to dismiss.

*Fourth*, Spotify argues that certification is not warranted because the MLC delayed in pursuing an appeal. Not true. The only way for the MLC to preserve its amended claims was to seek immediate leave to amend, and it was *Spotify* that delayed the amendment timing by contesting the MLC's application through multiple rounds of briefing. The need for interlocutory

2

appellate review only arose once the Court granted leave to amend. If the Court had not done so and entered a final judgment, the MLC would have had the immediate ability to appeal as of right, rendering moot any motion practice over an interlocutory appeal.

*Finally*, Spotify asserts that the MLC's original and amended claims are sufficiently related to make Rule 54(b) certification inappropriate. But Spotify does not dispute that the claim dismissed in the Order is distinct and independent from the claims in the First Amended Complaint. In fact, Spotify is pressing the separateness of the amended claims in proceedings before the Magistrate where it is refusing to allow the MLC any discovery touching upon the claims that were dismissed in the Order. *See* Dkt. 110, at 2. In any event, it is well-settled that the mere presence of overlapping factual allegations is not enough to preclude partial judgment under Rule 54(b).

## ARGUMENT

### I.

### THIS COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO SECTION 1292(b)

**A.   The Order Implicates a Controlling Question of Law**

As established in the MLC's opening brief, the controlling question of law at issue is whether the Court properly applied the motion to dismiss standard when determining that Premium is a Bundle as a matter of law. Dkt. 105, at 6–7. In response, Spotify, relying on this Court's opinion in *SEC* v. *Ripple Labs, Inc.*, 697 F. Supp. 3d 126, 132 (S.D.N.Y. 2023), claims that "'a litigant's argument that the court misapplied the law is not a pure question of law' appropriate for § 1292(b) certification." Dkt. 108, at 13 (misquoting a case parenthetical in *Ripple*). But *Ripple* does not compel denial of certification here. That case involved an order on cross-motions for summary judgment in which "the Court studied an extensive, heavily disputed

3

factual record and detailed expert reports." *Ripple*, 697 F. Supp. 3d. at 132. And, as the Court noted, the movant did "not argue that the Court applied the wrong legal standard in deciding the cross-motions for summary judgment." *Id.* Instead, the movant argued that the Court improperly applied the correct legal test to the facts in the record, and, accordingly, had "not presented a pure question of law that could be decided quickly and cleanly without having to study the record." *Id.* (citation and internal quotation marks omitted). This motion presents the opposite situation. The MLC argues that it was improper for the Court to credit facts outside the four corners of the original Complaint on a motion to dismiss. Whether it was appropriate for the Court to dismiss the MLC's claim based on facts not pled in the Complaint is precisely the sort of question ripe for interlocutory appeal because it presents a "pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Id.* (citation omitted).

### B.   There Are Substantial Grounds for a Difference of Opinion

As the MLC demonstrated in its opening brief, the Order presents a novel question of regulatory interpretation as to which there are substantial grounds for a difference of opinion, as evidenced by the fact that other authorities' interpretation of the regulatory provision at issue diverges from the Court's interpretation. Dkt. 105, at 8–11. In response, Spotify puts great emphasis on the fact that the Court found the regulations to be "unambiguous." Dkt. 108, at 9–10. But this Court's conclusion does not foreclose the possibility of alternative interpretations, including those of the very lawmakers who drafted the legislation that gave rise to the regulatory definition at issue, and those of Spotify's own former head of music publishing licensing, all of whom have publicly stated that Spotify's recharacterization of Premium as a Bundle is inconsistent with the regulations. Dkt. 105, at 11. Indeed, Spotify's own course of conduct suggests that there is reasonable disagreement as to whether Premium is a Bundle as a matter of law, given that months

4

after it added audiobooks content to Premium, Spotify itself continued to certify that Premium was *not* a Bundle. *Id*. Spotify simply ignores this undisputed fact in its opposition.

Spotify also does not challenge the MLC's textual argument that the plain meaning of the words "combination" and "other" necessarily require that an "other product or service" be "separate" from the bundled music subscription. Dkt. 105, at 8–10. And Spotify does not dispute that Premium could not possibly satisfy that definition since at the time Spotify recharacterized Premium as a Bundle, the service already included access to audiobooks. Instead of engaging with these critically important points, Spotify simply falls back on the contested language of the Order, which is the very basis of the MLC's requested interlocutory appeal. Dkt. 108, at 10–12.

Spotify also misleadingly claims that the "MLC points to no real disagreement with any controlling question of law about the meaning of 'token value.'" *Id.* at 12. In fact, the MLC's opening brief explains in detail why there are substantial grounds for a difference of opinion regarding the Order's interpretation of the phrase "token value," including because (i) the application of the term "token value" is a mixed question of law and fact, meaning that whether a given product has more than "token value" depends at least in part on analysis of the surrounding facts, such as the value placed on that product by consumers and the Service Provider, and (ii) the Court improperly credited Spotify's outside-of-the-Complaint factual argument as to why it did not raise the price of Premium after adding audiobooks to the service. Dkt. 105, at 10–11. Spotify provides no meaningful response to these critical points. Instead, Spotify suggests that the "MLC's amended complaint reinforces the robustness of the audiobook market, and its value to consumers." Dkt. 108, at 14. But the fact that certain consumers in certain circumstances may ascribe value to audiobooks does not mean that audiobooks had more than "token value" under the regulations to Spotify's Premium subscribers, the vast majority of whom subscribed to the

service *before* the addition of audiobook content.[1] That is especially true when comparing services like Audible (for which consumers have agreed to pay a monthly subscription price to listen to audiobooks) and services like Premium (for which consumers have agreed to pay a monthly subscription price to listen to music). That distinction is undoubtedly one reason why Spotify determined the market would not bear an increase to the price of Premium simply because it had added audiobooks listening to the service.

Spotify further notes that the MLC "identifies no conflicting authority concerning whether Spotify Premium constitutes a Bundle." Dkt. 108, at 9. But that is because the question is one of first impression, a point that supports, rather than undermines, the need for interlocutory appeal. *See In re Lehman Bros. Holdings Inc.*, No. 08-13555(JMP), 2010 WL 10078354, at *6 (S.D.N.Y. Sept. 23, 2010) (holding that where "a controlling question of law presents an issue of first impression, permission to appeal is often granted").

C. **Interlocutory Appeal of the Order Would Materially Advance the Ultimate Resolution of the Litigation**

The MLC's opening brief also established that an immediate appeal is the most efficient path to a final resolution of the critically important question of first impression addressed in the Order because otherwise, if the parties proceed to trial on the MLC's amended claims and the Second Circuit overturns the Order after a final judgment, a second trial on the claims in the original Complaint will be necessary. Dkt. 105, at 12–14. In response, Spotify suggests that

---

[1] Spotify suggests that the MLC's First Amended Complaint inconsistently alleges that audiobooks have token value. *See* Dkt. 108, at 13–14. But the First Amended Complaint makes alternative claims to the claims alleged in the original Complaint. *See* Dkt. 76, at 18 (moving for leave to amend to plead a "proposed alternative Premium claim" and a new "proposed Audiobooks Access claim"). And it "is axiomatic that a plaintiff is allowed to plead in the alternative and the alternative claims need not be consistent." *M&A Metals, Inc.* v. *Fina*, No. 21CV5570PKCPK, 2023 WL 2734794, at *7 (E.D.N.Y. Mar. 31, 2023).

certification would "exacerbat[e] the burden on party and judicial resources" because it "would force the parties to simultaneously litigate two related issues before two different courts." Dkt. 108, at 16.  But simultaneously pursuing both paths, to the limited extent that would be required for appellate review of the Order, is still more efficient and less burdensome than duplicative trials that would waste this Court's time with the re-examination of witnesses and the duplicative presentation of evidence that could have been presented together.  Immediate appeal of the original Complaint is the only way to avoid that extremely undesirable outcome.

Spotify also points to the possibility that the Second Circuit may affirm the Order on interlocutory appeal, in which case it may have to decide a separate, later appeal involving the MLC's amended claims.  *Id.* at 17.  That possibility is still preferable to, and substantially more efficient than, conducting two separate trials.  And such a result would give all parties finality with respect to this issue of overarching importance and scope to the participants in the streaming music industry.

Spotify further suggests that "it is extremely unlikely that the Second Circuit would issue a decision before substantial further proceedings are completed in this case." *Id.* at 16–17.  But Spotify's argument rests on baseless speculation that the MLC's appeal would not be eligible for expedited appeal.  *Id.* at 17 n.9.  In fact, this is precisely the sort of appeal that is ripe for expedition because it involves a pure question of law with no factual record to consider.  Second Circuit Local Rule 31.2(b)(3) created an Expedited Appeals Calendar for resolving appeals of Rule 12(b)(6) dismissal orders (as is the case here) that requires all briefing to be completed less than two months after the case is placed on the calendar.  That timeline makes it highly likely that the Second Circuit would resolve the appeal well before trial on the claims in the First Amended Complaint.  *See New York by James* v. *Citibank, N.A.*, No. 24-CV-659(JPO), 2025 WL 1194377,

7

at *2 (S.D.N.Y. Apr. 22, 2025) (expedited appeal granted where, as here, the "legal question is far cleaner than most" as the "issue can be decided with minimal, if any, reference to the record") (citation and internal quotation marks omitted).

D.  **Spotify's Other Arguments Are Similarly Meritless**

Unable to articulate any basis for denying certification pursuant to Section 1292(b), Spotify resorts to two other meritless arguments. *First*, Spotify argues that even if the MLC has satisfied the elements of Section 1292(b), the Court still should deny certification because "the fact that MLC waited almost a year to pursue an appeal from this Court's original decision vitiates any claim that the circumstances are extraordinary." Dkt. 108, at 20. This argument ignores that the only way for the MLC to preserve its amended claims was to seek immediate leave to amend, and that it was Spotify that delayed the amendment timing by contesting the MLC's application through multiple rounds of briefing, even though the relevant legal authority made clear that amendment was appropriate under the circumstances. *See* Dkt. 87, at 17 (citing *Foman* v. *Davis*, 371 U.S. 178, 182 (1962)). Spotify attempts to characterize the MLC's decision as "a strategic choice to *forego* an appeal as of right," *id.* at 21 (emphasis in original), but if the MLC had pursued an appeal prior to seeking leave to amend, and if the Second Circuit affirmed the Order, then the MLC would have lost the ability to pursue its amended claims. Nor did it make sense for the MLC to seek interlocutory appeal earlier, because if the Court had declined leave to amend and entered a final judgment, the MLC would have had the immediate ability to appeal as of right, rendering moot any motion practice over an interlocutory appeal. *See United States ex rel. Quartararo* v. *Cath. Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265 (E.D.N.Y. 2021) (finding certification motion was timely where the need for such motion only became apparent years after the relevant order).

*Second*, Spotify attempts to distinguish the numerous cases cited in the MLC's opening brief in which certification was granted, arguing that "in most of the cases that MLC cites, a district court certified an order for interlocutory appeal where . . . reversal by the Second Circuit would have conclusively *ended* the litigation by establishing the court lacked jurisdiction or the claim was otherwise infirm." Dkt. 108, at 18 n.10 (emphasis in original). But nothing in Section 1292(b) cabins interlocutory appeals to such circumstances, and it is indisputable that interlocutory appeals are appropriate and frequently granted even where, as here, reversal would *not* terminate the litigation. *See*, *e.g.*, *In re Air Crash off Long Island, N.Y. on July 17, 1996*, 27 F. Supp. 2d 431, 435 (S.D.N.Y. 1998) (holding that "resolution of an issue need not necessarily terminate an action"). In *Citibank*, for example, the court specifically rejected plaintiff's argument that interlocutory appeal would be inappropriate because "reversal would not reduce the scope of th[e] action." 2025 WL 1194377, at *3. The *Citibank* court held that "while reversal would neither terminate the entire action nor necessarily end litigation on [defendant's] liability," certification was warranted because "it would determine the scope of [plaintiff's] claims at trial." *Id.* (citation and internal quotation marks omitted). The same is true here.

## II.

### IN THE ALTERNATIVE, PARTIAL FINAL JUDGMENT UNDER RULE 54(b) IS WARRANTED

As set forth in the MLC's opening brief, if the Court does not certify the Order for interlocutory review, it should nonetheless enter partial final judgment under Rule 54(b) because the claim dismissed in the Order is distinct and independent from the claims in the First Amended Complaint, and there is no just reason for delaying the appeal of the Order. Dkt. 105, at 14–16. In response, Spotify argues that the MLC's original and amended claims "are sufficiently related" to "make Rule 54(b) certification inappropriate," noting that both claims included factual

allegations about "the value of the audiobooks component of Spotify's Premium service." Dkt. 108, at 23. But the mere presence of overlapping factual allegations is not enough to preclude partial judgment under Rule 54(b). That is especially true here, where Spotify previously has conceded that the amended claims are "peripheral issues" to the MLC's original claims. Dkt. 93, at 1. As the Second Circuit has made clear, "[o]nly those claims 'inherently inseparable' from or 'inextricably interrelated' to each other are inappropriate for rule 54(b) certification." *Ginett* v. *Computer Task Grp., Inc.*, 962 F.2d 1085, 1096 (2d Cir. 1992). Where, as here, "the claims are merely interrelated," such that "the same facts may be involved in several different appeals," partial final judgment is appropriate so long as "the Court of Appeals will decide different issues regarding those facts in each appeal." *See Bowne of New York City, Inc.* v. *AmBase Corp.*, 161 F.R.D. 270, 272–73 (S.D.N.Y. 1995). Tellingly, Spotify does not even attempt to dispute that the issues the Second Circuit would be deciding in an appeal of the Order on the MLC's original claim (involving allegations that Premium is not a Bundle) are entirely different from the issues presented in the MLC's amended claims (involving the proper calculation of royalties for Spotify's subscription tiers). *See* Dkt. 105, at 15.

Spotify also argues that "[t]his case is not the kind of 'infrequent harsh case'" in which "there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." Dkt. 108, at 24 (quoting *Carpenter* v. *City of New York*, 984 F. Supp. 2d 255, 271–72 (S.D.N.Y. 2013)). That simply is not true. As discussed above, an immediate appeal is the only way to avoid duplicative trials that would waste the parties and this Court's time with the re-examination of witnesses and the duplicative presentation of evidence that could have been presented together should the Second Circuit reverse the Order. And Spotify does not dispute that "[d]uplicative trials would certainly cause 'financial hardship to [each] party.'" Dkt. 105, at 16

10

(quoting *Lankler Siffert & Wohl, LLP* v. *Rossi*, No. 02-cv-10055(RWS), 2004 WL 541842, at *5 (S.D.N.Y. Mar. 19, 2004)).  As the Second Circuit has noted, "hardship or injustice" exists "where an expensive and duplicative trial could be avoided if, without delaying prosecution of the surviving claims, a dismissed claim were reversed in time to be tried with the other claims." *Advanced Magnetics, Inc.* v. *Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997) (quoting *Cullen* v. *Margiotta*, 811 F.2d 698 (2d. Cir. 1987), *overruled on other grounds by Agency Holding Corp.* v. *Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987)).  That is precisely the situation here.

## CONCLUSION

For the foregoing reasons, the MLC respectfully requests that the Court certify the Order for an interlocutory appeal pursuant to Section 1292(b), or, in the alternative, enter a partial final judgment with respect to the claims dismissed in the Order pursuant to Rule 54(b).

Dated: January 16, 2026
       New York, New York

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

*/s/ Jay Cohen*
Jay Cohen
Darren W. Johnson
Dylan O. Smith
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: (212) 373-3000
jaycohen@paulweiss.com
djohnson@paulweiss.com
dosmith@paulweiss.com

*Attorneys for Plaintiff
Mechanical Licensing Collective*

## CERTIFICATION OF COMPLIANCE

I hereby state that the foregoing Memorandum of Law was prepared on a computer using Microsoft Word. The total number of words in this brief, excluding the caption, table of contents, table of authorities, signature block, and this certification is 3,499. In preparing this certificate, I relied on the word count program in Microsoft Word.

Dated: January 16, 2026
New York, New York

> PAUL, WEISS, RIFKIND,
> WHARTON & GARRISON LLP
>
> */s/ Jay Cohen*
> Jay Cohen
> Darren W. Johnson
> Dylan O. Smith
> 1285 Avenue of the Americas
> New York, NY  10019-6064
> Telephone: (212) 373-3000
> jaycohen@paulweiss.com
> djohnson@paulweiss.com
> dosmith@paulweiss.com
>
> *Attorneys for Plaintiff*
> *Mechanical Licensing Collective*