**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MECHANICAL LICENSING COLLECTIVE,

       *Plaintiff*,

    v.

SPOTIFY USA INC.,

       *Defendant*.

Case No. 1:24-cv-03809-AT-KHP

**SPOTIFY USA INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION TO STRIKE SPOTIFY'S AFFIRMATIVE DEFENSE OF UNCLEAN HANDS**

## TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ............................................................................... 1

II.   BACKGROUND ................................................................................................... 2

      A.    MLC's Authority Under Section 115 ................................................................2

      B.    The Court Has Held Premium Is A Bundle ......................................................3

      C.    Other Services Have Reported Bundles to the MLC ........................................4

      D.    MLC Has Treated Spotify Differently From Its Competitors As To The
            Assessment Of Royalties For Bundles..............................................................4

      E.    Procedural Background.....................................................................................6

III.  LEGAL STANDARD............................................................................................. 9

IV.   ARGUMENT......................................................................................................... 11

      A.    MLC Fails To Demonstrate That There Is No Question Of Fact That
            Might Allow Spotify's Defense To Succeed ....................................................11

      B.    MLC Fails To Demonstrate That There Is No Question of Law That Might
            Allow Spotify's Defense To Succeed ...............................................................15

            1.    MLC's Bad Faith Exercise Of Its Authority Constitutes Unclean
                  Hands ....................................................................................................15

            2.    The Scope Of MLC's Authority Under Section 115 Is A Question
                  Of Law That Is Inappropriate For Resolution On A Motion To
                  Strike....................................................................................................20

      C.    MLC Fails To Demonstrate Prejudice .............................................................22

V.    CONCLUSION...................................................................................................... 26

i

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*A.W.S. v. Southampton Union Free Sch. Dist.*,
  2022 WL 1478736, at *3 (E.D.N.Y. Feb. 28, 2022), *report and
  recommendation adopted*, 2022 WL 1166422 (E.D.N.Y. Apr. 20, 2022)................................23

*Amimon, Inc. v. Shenzhen Hollyland Tech Co.*,
  2023 WL 2478159 (S.D.N.Y. Mar. 13, 2023) ................................................................15, 23

*Antolini v. Nieves*,
  2020 WL 5117915 (S.D.N.Y. Aug. 31, 2020) ........................................................................11

*Art Media, LLC v. Brant*,
  2021 WL 746261, at *7 (S.D.N.Y. Feb. 12, 2021), *report and*................................................26

*Bein v. Heath*,
  47 U.S. 228 (1848)..................................................................................................................16

*Brooklyn Union Gas Co. v. Exxon Mobil Corp.*,
  478 F. Supp. 3d 417 (E.D.N.Y. 2020) ...................................................................................15

*Calabrese v. CSC Holdings, Inc.*,
  2006 WL 544394 (E.D.N.Y. Mar. 6, 2006)......................................................................15, 25

*Cartier Int'l AG v. Motion in Time, Inc.*,
  2013 WL 1386975 (S.D.N.Y. Apr. 5, 2013)...........................................................................14

*Cengage Learning, Inc. v. Google LLC*,
  2025 WL 3022375 (S.D.N.Y. Oct. 29, 2025) ................................................................ *passim*

*Cnty. Vanlines Inc. v. Experian Info. Sols., Inc.*,
  205 F.R.D. 148 (S.D.N.Y. 2002) ...........................................................................................15

*E.E.O.C. v. Kelley Drye & Warren, LLP*,
  2011 WL 3163443 (S.D.N.Y. July 25, 2011) ...................................................................20, 21

*FLIR Sys., Inc. v. Sierra Media, Inc.*,
  965 F. Supp. 2d 1184 (D. Or. 2013) ......................................................................................16

*GEOMC Co. v. Calmare Therapeutics Inc.*,
  918 F.3d 92 (2d Cir. 2019)............................................................................................ *passim*

*Jablonski v. Special Couns., Inc.*,
  2020 WL 1444933 (S.D.N.Y. Mar. 25, 2020) .......................................................................13

*Jones v. Califano*,
   576 F.2d 12 (2d Cir. 1978).................................................................................................22

*Jones v. Equifax Info. Servs. LLC*,
   2025 WL 918466 (S.D.N.Y. Mar. 26, 2025) ............................................................13, 14, 23

*Kelly v. 21 Grp. Inc.*,
   2023 WL 5831131 (E.D.N.Y. Sept. 8, 2023) .....................................................................14

*Kirk v. Comm'r of Soc. Sec. Admin.*,
   987 F.3d 314 (4th Cir. 2021) ...........................................................................................22

*Lipsky v. Commonwealth United Corp.*,
   551 F.2d 887 (2d Cir. 1976)..............................................................................................10

*MLC. State Farm Mut. Auto. Ins. Co. v. Linden Orthopaedic P.C.*,
   2024 WL 4416588 (S.D.N.Y. Oct. 4, 2024).......................................................................25

*Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*,
   2021 WL 4173929 (S.D.N.Y. Sept. 14, 2021)............................................................11, 23, 24

*NCR Corp. v. B.A.T. Indus. P.L.C.*,
   2024 WL 4188358 (S.D.N.Y. Sept. 14, 2024).....................................................................14

*PenneCom B.V. v. Merrill Lynch & Co.*,
   372 F.3d 488 (2d Cir. 2004)..............................................................................................16

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
   324 U.S. 806 (1945).....................................................................................................15, 16

*Rich v. Miller*,
   634 F. Supp. 3d 66 (S.D.N.Y. 2022) (Torres, J.)........................................................... *passim*

*Salcer v. Envicon Equities Corp.*,
   744 F.2d 935 (2d Cir.1984)..........................................................................................20, 21

*Sec. & Exch. Comm'n v. Leibowitz*,
   2025 WL 2056026 (S.D.N.Y. July 23, 2025) ...........................................................12, 15, 21

*Sec. & Exch. Comm'n v. Ripple Labs, Inc.*,
   2022 WL 748150 (S.D.N.Y. Mar. 11, 2022) ............................................................... *passim*

*SoundExchange, Inc. v. Muzak, LLC*,
   2019 WL 3997468 (D.D.C. Aug. 23, 2019) ..................................................................17, 18

*SoundExchange, Inc. v. Muzak, LLC*,
   2020 WL 13611363 (D.D.C. July 17, 2020).................................................................19, 20

iii

*SoundExchange, Inc. v. Muzak, LLC*,
    322 F. Supp. 3d 72 (D.D.C. 2018) ................................................................................17, 19

*U.S. v. Diapulse Corp. of Am.*,
    748 F.2d 56 (2d Cir. 1984) ......................................................................................................22

*W. Union Tel. Co. v. MCI Commc'ns Corp.*,
    1986 WL 2769 (S.D.N.Y. Feb. 26, 1986) ...............................................................................16

*Weiss v. Mayflower Doughnut Corp.*,
    135 N.E.2d 208 (1956) ............................................................................................................16

## STATUTES

17 U.S.C.
    § 115(d)(3)(C)(i)(VIII) .............................................................................................................21
    § 115(d)(3)(D)(ix)(I)(aa) ...................................................................................................20, 21
    § 115(d)(3)(E)(ii) ......................................................................................................................3
    § 115(d)(4)(C)(i)(VIII) ...............................................................................................................3

## RULES

Fed. R. Civ. P. 12(f) ...........................................................................................................................21

## REGULATIONS

37 C.F.R. Part 385 .................................................................................................................................3

37 C.F.R. § 385.2 .............................................................................................................................4, 5

iv

## I.    PRELIMINARY STATEMENT

Motions to strike are strongly disfavored, and all the more so when the movant seeks, as MLC does here, to resolve questions of law before an evidentiary record has been developed. MLC admits that MLC has treated Spotify differently from its competitors, but suggests that doing so cannot constitute unclean hands because its "enforcement discretion" is purportedly limitless. MLC identifies no legal support for that extraordinary proposition—because none exists. MLC ignores that its "discretion" is limited by, among other things, the Copyright Act's requirement that MLC's "policies and practices" be "transparent and accountable." The scope of MLC's authority under the Copyright Act is a question of law, and a motion to strike—where Spotify has made the requisite showing under the permissive standard—is not the appropriate vehicle to resolve it. MLC's motion is a premature attempt to foreclose legal arguments based on the evidence that will be adduced through discovery, and the Court should deny it.

*First*, MLC fails to show there is an absence of facts that would support Spotify's defense. On the contrary, MLC admits that it has treated Spotify differently, establishing the factual predicate. MLC instead distorts the applicable pleading standard, ignoring that a relaxed pleading standard applies to Spotify's unclean hands defense because, among other things, it turns on MLC's conduct and evidence that is in MLC's possession. Thus, as courts have routinely held, it is inappropriate to strike such defenses even when asserted in a conclusory manner.

*Second*, MLC fails to demonstrate that there is no question of law that would permit Spotify's defense to prevail. MLC's contention that Spotify must allege "fraud on the Copyright Office" or like behavior is a red herring. This is not a copyright infringement case. Another court—that MLC itself cites in its motion—has recognized, in a highly similar fact pattern involving a non-profit appointed by the government to collect royalties for statutory licenses (like

1

MLC), that differential treatment of licensees may be cognizable as unclean hands. MLC's misuse of its authority to disadvantage Spotify to the advantage of its competitors is at least arguably inequitable conduct that amounts to unclean hands. MLC's attempt to shield its bad faith by laying claim to limitless statutory discretion is contrary to Section 115 of the Copyright Act. At a minimum, that is an argument Spotify is entitled to make on summary judgment, and one that cannot be resolved on a motion to strike.

*Finally*, MLC fails to establish that it will suffer prejudice from assertion of the defense. MLC's argument that discovery requests relating to unclean hands "impose massive document review and production costs" are unsupported and misleading. MLC has not been asked to produce any discovery relating *solely* to unclean hands. Indeed, MLC's treatment of other blanket licensees also goes to the key issue left in this case: how MLC interprets and applies the Section 115 regulations governing the treatment of bundle components, as well as its valuation of other audiobooks products. This is not about MLC's discovery burden at all. Rather, this motion is an improper effort by MLC to prevent Spotify from making a legal argument based on the factual record that will be developed and is relevant to other issues in the case. There is simply no justification for constraining the parties' legal argument and the Court's review at this early juncture.

MLC failed to carry its heavy burden to strike Spotify's defense and the Court should deny its motion.

## II.   BACKGROUND

### A.   MLC's Authority Under Section 115

Section 115 of the Copyright Act provides digital music providers with a "statutorily mandated (*i.e.*, 'compulsory') blanket license to reproduce and distribute musical works for certain

purposes, including streaming." ECF 61 at 2. "The statute and its implementing regulations require licensees to pay royalties for the use of those musical works." *Id.* "MLC is the entity designated by the U.S. Register of Copyrights pursuant to § 115 to administer the compulsory blanket license, collect the royalties owed by licensees, and distribute those royalties to the songwriters and music publishers to which they are due." *Id.* The "directors of the designated mechanical licensing collective" are "inferior officers [of the United States] under the Appointments Clause of the Constitution." Presidential Statement on Signing the Orrin G. Hatch-Bob Goodlatte Music Modernization Act, Oct. 11, 2018. Section 115 authorizes MLC to, among other things, "[e]ngage in legal and other efforts to enforce rights and obligations." 17 U.S.C. § 115(d)(4)(C)(i)(VIII). The MLC is also authorized to "proceed to terminate the blanket license of a digital music provider" in the event "of a default" under certain circumstances. *Id.*, § 115(d)(3)(E)(ii).

## B.    The Court Has Held That Premium Is A Bundle

MLC brought this action in May 2024 asserting that Spotify had "incorrectly report[ed] to MLC that its 'Premium' subscription service, which includes both music and audiobook streaming, is a 'Bundled Subscription Offering' under the implementing regulations," in violation of Section 115 of the Copyright Act and 37 C.F.R. Part 385. ECF 61 at 1, 5; ECF 1. MLC alleged that Premium did not qualify as a Bundle because 15 monthly hours of audiobooks streaming did not have more than "token value." *E.g.*, ECF 1 ¶ 8-9. The Court rejected that contention and dismissed MLC's Complaint with prejudice, finding that "the only plausible application of the law" supported Spotify's position that audiobooks streaming "has more than token value" and "Premium is, therefore, properly categorized as a Bundle." ECF 61 at 7.

3

### C.    Other Services Have Reported Bundles to the MLC

Bundled consumer offerings are, of course, nothing new.  As it relates to bundles that include music streaming, the pertinent regulations define a "Bundle" as "a combination of a Subscription Offering providing Eligible Interactive Streams … and one or more other products or services having more than token value, purchased by [users] in a single transaction (*e.g.*, where [users] make a single payment without separate pricing for the Subscription Offering component)." *See* 37 C.F.R. § 385.2; ECF 61 at 2-3.  As this Court held, Spotify's Premium subscription—which includes both music streaming and audiobooks listening—is properly categorized as a Bundle. ECF 61 at 7.  But there are also other bundles that include music streaming in the market.  For example, Apple's "Apple One" is a bundle of music with a variety of products including cloud storage and television, gaming, news, and fitness apps.[1]  And Amazon's "Amazon Music Unlimited" is a bundle that also includes music streaming and audiobooks listening.[2]

### D.    MLC Has Treated Spotify Differently From Its Competitors As To The Assessment Of Royalties For Bundles

After rejecting MLC's claim that Premium does not constitute a Bundle, the Court permitted MLC to amend the Complaint to assert entirely new legal theories.  ECF 87.  In the First Amended Complaint, MLC now claims that Spotify underpaid royalties for mechanical rights in calculating the value of the components of the Premium Bundle.  *See* ECF 88.  MLC now alleges that it was improper for Spotify to use the price of its standalone audiobooks product (Audiobooks Access) in valuing Premium's audiobooks component, notwithstanding that the implementing regulations specifically direct that approach.  *See* 37 C.F.R. § 385.2.  MLC also claims that $9.99— the price of Audiobooks Access—does not reflect the market value of audiobooks listening in

---

[1] *See* https://www.apple.com/apple-one/.
[2] *See* https://www.amazon.com/music/i/audiobooks.

Premium, *see* ECF 88, despite the similar pricing of market comparables, which is the second step of the analysis called for by the regulation, in the event that there is no standalone retail price for Spotify's audiobook service, *see* 37 C.F.R. § 385.2.

MLC has not challenged any other licensees regarding their reporting of bundled offerings consisting of music and audiobooks (or any other bundles). Nor is Spotify aware that MLC has sought to assess additional royalties—or even objected to other licensees' alleged underpayment of royalties—on the grounds that it was improper for them to use the price of their standalone product to value the component of a bundle consisting of that product. MLC does not contend that it has done so, notwithstanding that Spotify is not the only major service to offer a bundle consisting of music and audiobooks as well as a separate standalone audiobooks product.

In its Answer—which Spotify filed in October 2025, just weeks after MLC filed its First Amended Complaint—Spotify asserts, among others, an affirmative defense of unclean hands. *See* ECF 93 at 34. That defense is based on MLC's differential treatment of Spotify compared to other similarly-situated licensees, including by taking positions with respect to the assessment of the royalties for its bundled music/audiobooks product that it has apparently not taken with respect to other licensees. Spotify has substantial reason to believe that MLC is insisting that Spotify pay higher royalties based on its position—applied only to Spotify and not other licensees—that Spotify may not use the standalone price of its audiobooks service for its calculation of service provider revenue with respect to Premium. Indeed, MLC admits in its motion that it has, in fact, treated Spotify differently from other licensees, referring to Magistrate Judge Parker's comment that government authorities may "think maybe multiple companies are violating the rules, but they've only got so much bandwidth, so they only sue certain entities where they think they're going to have the most impact, potentially," and then admitting, "[t]hat is precisely what the MLC

did here."  ECF 123 ("Mem.") at 8.

### E.        Procedural Background

The Court (Magistrate Judge Parker) entered a scheduling order on November 3, 2025, which required the completion of fact discovery by March 13, 2026.  ECF 96 at 1.  While MLC's initial discovery responses included agreements to produce certain documents relevant to Spotify's unclean hands defense, MLC refused to produce others relevant to unclean hands.  *See* Mar. 20, 2026, Declaration of Allison L. Stillman ("Stillman Decl.").  ¶¶4-6 & *id.*, Ex. A at 6, 8, 10.

On January 15, 2026, the parties filed a pre-conference letter identifying various discovery disputes, including as to discovery Spotify sought relating to its affirmative defenses of unclean hands and copyright misuse.  *See* ECF 110 at 3.  Magistrate Judge Parker held a status conference on January 22, 2026.  ECF 124-1.  During the conference, Spotify explained that it was seeking discovery regarding how MLC treats other licenses, stating, "for instance, Amazon, their Music Unlimited service has music and audiobooks.  We know that they report it as a bundle.  Has MLC sort of raised any objections to Amazon's reporting of … their price of the audiobook component of that bundle?"  *Id.* at 19:10-15.  To this, MLC's counsel stated, among other things, "[w]e don't have to sue everybody."  *Id.* at 22:5-6.  The Court then inquired of Spotify's counsel, "What I've heard is that you think MLC had a claim that they didn't bring against another entity," to which Spotify's counsel clarified, "Or that they haven't even objected to it."  *Id.* at 23:19-21, 25-24:1.

Although the default time for MLC to move to strike Spotify's affirmative defense expired the previous November, Judge Parker set a briefing schedule for MLC to move to strike Spotify's affirmative defense, with MLC's motion due February 20, 2026.  ECF 115.  Judge Parker also directed the parties to "file an agenda letter in advance of the next case management conference and indicate whether they wish to have argument on the relevance of the information sought by

6

Defendant on the unclean hands affirmative defense." *Id.*

In the interim, the parties continued to meet and confer. Stillman Decl. ¶ 10. The parties reached agreement on the search terms that each side would use to identify documents that needed to be reviewed for responsiveness to requests for production. *Id.* ¶¶ 10-11 & *id.*, Ex. B. Among other things, MLC agreed to run the names of a variety of service providers, including Amazon, which offers a bundled music/audiobooks service. *Id.* ¶ 11 & *id.*, Ex. B at 1-2.

As to requests for production, Spotify proposed a global resolution of the parties' disputes whereby both sides would compromise and agree to produce documents responsive to certain requests for production sought by the other. *Id.* ¶¶ 12-16 & *id.*, Ex. C. For its part, MLC agreed to produce documents in response to requests for production that called for evidence relevant to unclean hands, as well as other issues in the case, such as MLC's interpretation and application of the applicable regulations more generally, including, for example: "communications (including communications with blanket Licensees) concerning whether a blanket Licensee's offering of a product or service independently available to consumers for no charge together with another product or service must be reported as a Bundled Subscription Offering"; "communications related to [MLC's] process for determining when a subscription service should be reported as a Bundle, including any instances in which [MLC] challenged a Licensee's reporting of a subscription service"; and "communications concerning a Licensee's offering of music streaming free of charge in combination with any other product or service, including documents and communications concerning whether the Licensee reports its service as a Subscription Offering and/or as part of a Bundle." *Id.* ¶ 15. That was in addition to other requests that MLC had already agreed to produce concerning unclean hands. *Id.* ¶¶ 6, 15 & *id.*, Ex. C at 8; *see also id.*, Exs. D & E.

At the time, Spotify explained that while certain requests were relevant to unclean hands,

they were also relevant to other issues in the case—including MLC's interpretation and application of the relevant regulations as well as its valuation of other audiobooks products—and should be produced regardless of MLC's view of the relevance of evidence concerning unclean hands. *See, e.g.*, *id.*, ¶ 13 & *id.*, Ex. C at 2. MLC did not express disagreement with this explanation, and agreed to Spotify's proposal. *See id.* ¶¶ 13-14 & *id.*, Exs. D & E.

As a result of this negotiated agreement, the parties informed the Court on February 11, 2026, that they "agree[d] that argument on the relevance of the information sought by Defendant on its unclean hands affirmative defense is not necessary at this time." *Id.*, ¶ 17; ECF 120.

February 11, 2026, was also the last day the parties could serve additional requests for production, interrogatories, and requests for admission within the operative schedule, which required completion of fact discovery by March 13, 2026. *See* ECF 96 at 1. Although MLC now feigns surprise that Spotify would serve follow-up discovery requests—stating that Spotify provided no "advance warning to the MLC" (Mem. at 3)—it was clear that Spotify would do so, not only because there was a deadline to do so, but also because the parties discussed additional discovery during the conferrals. For example, MLC's counsel had insisted as part of a global resolution that they be permitted to informally request additional documents for their experts. Stillman Decl. ¶ 18 & *id.*, Ex. D at 2. MLC accepted Spotify's counter-proposal, which was that "parties will work together in good faith to respond to any discovery requests served pursuant to the Federal Rules of Civil Procedure that are allowed under any scheduling order entered by the Court, without waiver of any of their objections to such discovery requests." *Id*., Ex. E at 1, 3-4.

MLC claims that, on that date, Spotify served "substantial additional" demands, but concedes that the document requests and interrogatories number only 12 and 3, respectively. Mem. at 3. MLC contends that "[m]any of these new discovery demands relate *solely* to Spotify's

8

unclean hands defense," yet MLC identifies only *one* document request. *See id.* (emphasis added). That example is a request for documents relating to Amazon's audiobooks/music bundle, but MLC omits reference to Amazon and replaces it with "[other services]," plural, misrepresenting the request as concerning multiple service providers. Mem. at 3 (citing Cohen Decl. Ex. B (at RFP 30)); Cohen Decl. ¶ 8. While MLC contends in its motion that Spotify's requests—and this is the only specific document request identified—will impose "massive" document review burdens, Mem. at 9, as noted above, MLC *had already agreed* to run "Amazon" as a search term, meaning that this request imposes no additional burdens on the documents MLC would review and produce pursuant to the parties' agreement. Stillman Decl. ¶ 11 & *id.* Ex. B at 2.

Before filing its motion, MLC's counsel agreed that it would identify the requests that relate only to unclean hands in an effort to meet and confer regarding the discovery and, potentially, withdraw MLC's motion to strike. *Id*. ¶ 21 & *id.*, Ex. F. When MLC failed to do so, Spotify's counsel reached out to inquire, explaining to MLC (again) that the requests did not relate "solely" to unclean hands, but to other issues in the case as well, such as MLC's interpretation and application of the applicable regulations and its valuation of other audiobooks services. *Id*. ¶¶ 22-23 & *id.*, Ex. F at 6-7. MLC initially agreed to identify the requests that related solely to unclean hands. *Id*. ¶ 24 & *id.*, Ex. F at 5-6. The next day, however, MLC's counsel backtracked and insisted that it never agreed to do so. *See id*. ¶ 24 & *id.*, Ex. F at 4. Then, MLC conceded that the document request identified in its motion did not relate "solely" to unclean hands, contrary to the assertion in its motion. *See id*. ¶¶ 24-26 & *id.*, Ex. F at 3, Ex. G at 6.

## III.    LEGAL STANDARD

"Motions to strike an affirmative defense are disfavored and should generally not be granted." *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, 2022 WL 748150, at *3 (S.D.N.Y. Mar. 11,

9

2022) (Torres, J.); *see also Rich v. Miller*, 634 F. Supp. 3d 66, 71 (S.D.N.Y. 2022) (Torres, J.) (adopting R&R) ("Courts disfavor motions to strike … and 'should not tamper with the pleadings unless there is a strong reason.'") (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).  Thus, courts "'resolve all doubts in favor of denying the motion to strike.'" *Ripple*, 2022 WL 748150, at \*3.

"The moving party bears the burden on a motion to strike."  *Rich*, 634 F. Supp. 3d at 71. "To succeed on a motion to strike an affirmative defense, the [movant] must 'show that: (1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense.'"  *Ripple*, 2022 WL 748150, at \*3; *see also GEOMC Co. v. Calmare Therapeutics Inc.,* 918 F.3d 92, 96 (2d Cir. 2019). "[A] motion to strike should not be used as an opportunity for the determination of disputed, substantial questions of law."  *Rich*, 634 F. Supp. 3d at 71.

MLC's motion fails on multiple, independent grounds.  *First*, MLC fails to demonstrate that there is no question of fact that might allow Spotify's defense to succeed, instead admitting to facts that support Spotify's defense and wrongly contending that Spotify's defense is inadequately pled, ignoring that a relaxed pleading standard applies.  *Second*, MLC fails to demonstrate that Spotify's defense cannot succeed as a matter of law, even citing a case recognizing that similar conduct may be cognizable as unclean hands.  MLC instead suggests that its discretion is unlimited, but that is a question of law based on the factual circumstances reflected in the record currently being developed.  *Third¸* MLC fails to demonstrate that continued assertion of the defense will cause MLC prejudice.  MLC fails to quantify its claims that unclean hands discovery will cause *any additional*, let alone "massive," document review burdens, and ignores that MLC would be producing *this same* discovery even without the defense as it is relevant to the other

10

issues in the case. MLC's efforts to hide from a legal argument based on evidence that will already be in the record should be roundly rejected.

## IV.    ARGUMENT

### A.    MLC Fails To Demonstrate That There Is No Question Of Fact That Might Allow Spotify's Defense To Succeed

MLC cannot carry its burden of demonstrating that there are *no facts* upon which Spotify could prevail in its defense. Motions to strike an affirmative defense "will not be granted 'unless it appears to a certainty that plaintiff[] would succeed despite any state of the facts which could be proved in support of the defense.'" *Antolini v. Nieves*, 2020 WL 5117915, at *1 (S.D.N.Y. Aug. 31, 2020). MLC makes no effort to show, and under the proper standard cannot show, that there is *no set of facts* on which Spotify could prevail. Instead, MLC admits (as it must) that it treats Spotify differently from other licensees. *See* Mem. at 8; *see infra* at 18 (further describing admission). Spotify is entitled to probe the bases for that discrimination, including why and how MLC's treatment of Spotify differs from the other licensees, and assert a legal argument that this discrimination is improper—again, based on the same document discovery that MLC has already agreed to produce (as it must) concerning how it evaluates the Bundle component pricing that is reported by Spotify's competitor licensees. Even without the benefit of fulsome discovery, there plainly *are* facts on which Spotify's defense could prevail—including MLC's admission in its motion to strike that it has singled Spotify out. That admission alone shows that it is plausible that MLC is applying one set of rules to Spotify and another set of rules to its competitors—to Spotify's competitive detriment, with official imprimatur—and thus using its powers in bad faith and inequitably. Accordingly, MLC's motion should be denied. *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 2021 WL 4173929, at *6 (S.D.N.Y. Sept. 14, 2021) (denying motion to strike unclean hands defense where "it does not 'appear[] to a certainty' that Plaintiffs will defeat

11

[the defense] under 'any state [] of facts which could be proved'").

Rather than make the required showing, MLC instead wrongly argues that Spotify has not "properly pled" its defense. Mem. at 5-6. This argument fails because Spotify's unclean hands defense is subject to a relaxed pleading standard and is properly asserted under that relaxed standard. *See, e.g., Cengage Learning, Inc. v. Google LLC*, 2025 WL 3022375, at *2 (S.D.N.Y. Oct. 29, 2025) (applying relaxed pleading standard to unclean hands defense). Indeed, "courts generally apply a lower plausibility threshold when evaluating motions to strike affirmative defenses as opposed to motions to dismiss because the pleader has less time to gather facts and craft a response." *Ripple*, 2022 WL 748150, at *4. And the Second Circuit has held that when "the facts needed to plead an [affirmative defense] … may not be readily known to the defendant," a "relaxed application of the plausibility standard" is warranted. *GEOMC*, 918 F.3d at 98. "Courts applying this relaxed standard permit defendants to plead affirmative defenses 'in a 'conclusory' manner' given that they rely on 'the sort of facts that would typically be revealed during discovery.'" *Cengage*, 2025 WL 3022375, at *10.

Thus, courts—including this Court—have declined to strike affirmative defenses pled in a conclusory manner when the facts needed to plead the defense are not readily available to the defendant. *See*, *e.g.*, *Rich*, 634 F. Supp. 3d at 75 (adopting R&R denying motion to strike where, though defendants "pointed to [no] facts in support of" a defense stating only that plaintiff "'may' have failed to mitigate his damages," "this is just the sort of defense where the facts regarding plaintiff's conduct would not necessarily be within the defendants' knowledge and may become known only through discovery"); *Sec. & Exch. Comm'n v. Leibowitz*, 2025 WL 2056026, at *7 (S.D.N.Y. July 23, 2025) (denying motion to strike, finding allegedly "conclusory and vague" defense was "sufficiently pleaded" where defendant "has not yet had the benefit of discovery to

12

further develop a defense based on the culpability or actions of other[s]"); *Jablonski v. Special Couns., Inc*., 2020 WL 1444933, at *4 (S.D.N.Y. Mar. 25, 2020) (denying motion to strike, holding that "since the factual allegations necessary to support such defenses are likely not readily available to Defendant … the fact that these defenses appear to be conclusory is not fatal").  This is true of the unclean hands defense as well, since that defense turns on the plaintiff's conduct.  *See Jones v. Equifax Info. Servs. LLC*, 2025 WL 918466, at *7 (S.D.N.Y. Mar. 26, 2025) (denying motion to strike unclean hands defense where the defense "turn[s] on [plaintiff's] conduct, so we cannot say that factual support is 'readily available'"); *Cengage*, 2025 WL 3022375, at *10 (holding that "the relaxed *Twombly* standard applies to unclean hands (which involves a plaintiff's separate misconduct and, therefore, information not readily available to a defendant)").

MLC incorrectly suggests that affirmative defenses must always be accompanied by factual allegations.  *See* Mem. at 5-6.  For example, MLC suggests that *GEOMC Co. v. Calmare Therapeutics Inc.,* 918 F.3d 92, 96 (2d Cir. 2019), stands for the proposition that it is "well-settled" that a defendant must always support its defenses with factual allegations.  *See* Mem. at 5.  Not so. On the contrary, in *GEOMC* the Second Circuit held that, in certain contexts, the pleading standard for affirmative defenses must be *relaxed* (*see supra* at 12-14).  But in the specific case before it, the Second Circuit did not find that it was appropriate to relax the pleading standard to the defense asserted there, and instead reasoned that the defendant in *that* case needed to support its defenses "with some factual allegations" where the defendant asserted the defenses "at a late stage of the litigation," i.e., where significant discovery had already occurred.  *GEOMC*, 918 F.3d at 96.  That holding does not apply here because Spotify asserted its defense early in the litigation, before any discovery had begun, and the defense turns on evidence in MLC's possession—thus triggering the relaxed pleading standard *GEOMC* held was appropriate in this context.

13

MLC similarly mischaracterizes *NCR* Corp. *v. B.A.T. Indus. P.L.C.*, 2024 WL 4188358, at *18 (S.D.N.Y. Sept. 14, 2024), as holding that the relaxed standard does not permit assertion of defenses "entirely devoid" of supporting factual allegations. Mem. at 6. But *NCR Corp.* is inapposite because that case was not applying the relaxed pleading standard. *See id.* at *18. Nor did it hold that affirmative defenses, in general, can never be "devoid" of factual allegations. Rather, it held that the (different) affirmative defense before it—*in pari delicto*—was "devoid" of allegations that supported the defense because the court had *already dismissed* a mirror-image counterclaim, reasoning that the counterclaim (and, by extension, the related affirmative defense) was "premised on a misunderstanding of the doctrine." *See id.* at *14, 18. That case thus has no application here.[3]

The appropriate pleading standard here is a relaxed one because Spotify timely asserted its unclean hands defense early in the litigation, without the benefit of discovery from the MLC. *Ripple*, 2022 WL 748150, at *4. The defense turns on MLC's conduct with respect to other licensees—information to which Spotify generally is not privy—and therefore requires evidence in MLC's possession. *GEOMC*, 918 F.3d at 98; *Jones*, 2025 WL 918466, at *7; *Cengage*, 2025 WL 3022375, at *10. Under such circumstances, it is premature to strike Spotify's defense. *Kelly v. 21 Grp. Inc.*, 2023 WL 5831131, at *8 (E.D.N.Y. Sept. 8, 2023) (denying motion to strike unclean hands defense, reasoning that "absent a finding that there are no facts that [defendants] can prove that would allow for them to succeed … the Court cannot grant [the motion to strike]" because "[a]t this early stage of the proceeding, it would be premature to make such a

---

[3] MLC's citation to *Cartier Int'l AG v. Motion in Time, Inc.*, 2013 WL 1386975, at *3 (S.D.N.Y. Apr. 5, 2013), fares no better. Although MLC cites this case as holding that an unclean hands defense cannot be pled in a conclusory manner, *see* Mem. at 6, this case was decided *before* the Second Circuit held in *GEOMC* that the pleading standard may be relaxed in certain contexts and is therefore inapposite.

determination"); *Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 478 F. Supp. 3d 417, 433 (E.D.N.Y. 2020) (similar).

### B. MLC Fails To Demonstrate That There Is No Question of Law That Might Allow Spotify's Defense To Succeed

MLC has likewise failed to demonstrate that there is no question of law that might allow Spotify's defense to succeed. The "bar for [finding a defense legally insufficient] is a demanding one: a 'court may strike only those defenses so legally insufficient that it is beyond cavil that defendants could not prevail on them.'" *Leibowitz*, 2025 WL 2056026, at \*8. The movant therefore "must show that there is 'no question of law which might allow the defense to succeed." *Id.* (quoting *GEOMC*, 918 F.3d at 97). Moreover, "a motion to strike 'is not intended to furnish an opportunity for the determination of disputed and substantial questions of law.'" *Amimon, Inc. v. Shenzhen Hollyland Tech Co.*, 2023 WL 2478159, at \*16 (S.D.N.Y. Mar. 13, 2023) (denying motion to strike in part). "'[I]t is particularly important to refrain from considering disputed questions of law when ... there has been no significant discovery.'" *Cnty. Vanlines Inc. v. Experian Info. Sols., Inc.*, 205 F.R.D. 148, 153 (S.D.N.Y. 2002).

#### 1. MLC's Bad Faith Exercise Of Its Authority Constitutes Unclean Hands

MLC's motion falls far short of establishing that Spotify's unclean hands defense "fails as a matter of law." Mem. at 6. The doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which [that party] seeks relief." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). The doctrine is "based on the principle that since equity tries to enforce good faith in defendants, it no less stringently demands the same good faith from the plaintiff." *Calabrese v. CSC Holdings, Inc.*, 2006 WL 544394, at \*5 (E.D.N.Y. Mar. 6, 2006) (quotation omitted). "In applying the defense of unclean hands … the courts 'are not bound by formula or restrained by any limitation that tends to

15

trammel the free and just exercise of discretion.'"  *W. Union Tel. Co. v. MCI Commc'ns Corp.*, 1986 WL 2769, at \*2 (S.D.N.Y. Feb. 26, 1986).

Thus, "[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the" doctrine. *Precision*, 324 U.S. at 815.  The doctrine requires that the conduct at issue be "'directly related to the subject matter in [the] litigation,'" but otherwise applies to a broad range of conduct, including, for example, the use of "any unfair means [to] gain[] an advantage."  *PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) (vacating judgment and remanding to permit discovery on unclean hands defense based on plaintiff's alleged misconduct) (quoting *Weiss v. Mayflower Doughnut Corp.*, 135 N.E.2d 208, 210, (1956), and *Bein v. Heath*, 47 U.S. 228, 247 (1848)).  Accordingly, courts have looked to the unclean hands doctrine to address a diverse scope of unfair conduct on the part of plaintiffs related to their own legal enforcement efforts.  *See*, *e.g.*, *MCI*, 1986 WL 2769 at \*2 (observing that a colorable claim of unclean hands could conceivably be based on plaintiff's bribery payments to obtain access to foreign market when plaintiff's claim sought to vindicate "right to fair competition"); *Cengage*, 2025 WL 3022375, at \*10 (in copyright case, declining to strike unclean hands defense "premised on [the] theory that the textbooks at issue are works-for-hire for which Plaintiffs are not the copyright holders"); *FLIR Sys., Inc. v. Sierra Media, Inc.*, 965 F. Supp. 2d 1184, 1197 (D. Or. 2013) (holding that plaintiff's false advertising constituted unclean hands).

MLC mischaracterizes the unclean hands doctrine, misleadingly asserting that "in copyright actions" the defense "requires the plaintiff to have perpetrated a fraud on the Copyright Office or to have engaged in some other immoral or unconscionable behavior," and claiming there is "no good faith basis" to allege that "the MLC has perpetrated a fraud on the Copyright Office."

16

Mem. at 1, 7. But MLC's obfuscation cannot change the facts. While this case involves royalties for the use of copyrighted works, it does not necessarily follow that Spotify's defense is governed by precedent from copyright *infringement* cases. The crux of this case concerns the calculation of royalties, not infringement—and Spotify's unclean hands defense pertains to MLC's abuse of authority and inequitable administration of a statutory license. It is thus a strawman for MLC to claim that it has not committed "fraud on the Copyright Office." *Id*. at 7.

Indeed, one court—the same court MLC cites in its motion—has recognized that unclean hands may apply under circumstances very similar to those asserted by Spotify here—*i.e*., where a nonprofit entity appointed by the government to collect royalties for statutory copyright licenses exercises its authority in bad faith by applying different and inconsistent royalty assessments to similarly situated licensees, to the defendant's competitive detriment. *See SoundExchange, Inc. v. Muzak, LLC*, 322 F. Supp. 3d 72, 78 (D.D.C. 2018) (denying summary judgment motion seeking dismissal of unclean hands defense); *SoundExchange, Inc. v. Muzak, LLC*, 2019 WL 3997468 (D.D.C. Aug. 23, 2019) (compelling production of documents relevant to unclean hands defense). In that case, the defendant, Muzak, a subscription-based digital music service for television providers, asserted that the plaintiff, SoundExchange, a nonprofit organization charged with collecting royalties for licenses issued under Section 114 of the Copyright Act, treated Muzak differently than its competitor, Music Choice, with respect to the assessment of royalties. *See SoundExchange*, 2019 WL 3997468 at *3-4; *SoundExchange*, 322 F. Supp. 3d at 73, 75, 77-78. After denying SoundExchange's summary judgment motion seeking dismissal of the defense, the court compelled it to produce documents relevant to the defense, including documents that "could shed light on SoundExchange's historical treatment of Music Choice compared to Muzak," reasoning, "[i]f at any point, either before or after 2014, SoundExchange discovered information

17

about Music Choice that would have invalidated Music Choice's ability to pay PSS rates, yet SoundExchange did nothing about it, documents … regarding that treatment would be both relevant and proportional." *See SoundExchange*, 2019 WL 3997468 at *3.

Similarly, Spotify asserts that MLC has applied the regulations concerning the calculation of service provider revenue for bundled service offerings in bad faith relative to its treatment of other licensees. Spotify has substantial reason to believe that MLC is insisting that Spotify pay higher royalties based on MLC's position—applied only to Spotify and not other licensees—that Spotify may not use the standalone price of its audiobooks service for its calculation of service provider revenue with respect to Premium. And MLC even admits in its motion that it has, in fact, treated Spotify differently from other licensees. MLC refers to Magistrate Judge Parker's comment that government authorities may "think maybe multiple companies are violating the rules, but they've only got so much bandwidth, so they only sue certain entities where they think they're going to have the most impact, potentially," and then admits, "[t]hat is precisely what the MLC did here." Mem. at 8.[4] That admission—which alone establishes that there certainly is a set of facts on which Spotify could prevail (*see supra* at 11)—shows that MLC is enforcing Section 115 in a manner that treats Spotify differently from its competitors and is at least arguably inequitable.[5]

---

[4] MLC impermissibly seeks to argue the facts on this pleading motion by attempting to justify its differential treatment of Spotify in suggesting that "Spotify was the first licensee to engage in the form of Bundle reporting misconduct at issue." Mem. at 8. The reasons MLC made the decision to treat Spotify differently are appropriate for discovery, and MLC's self-serving characterization of them on this motion are entitled to no weight.

[5] MLC wrongly claims that Spotify described its defense in a prior status conference as "predicated on" suing Spotify but not others. *See* Mem. at 1, 7-8. MLC then argues against this strawman by invoking Magistrate Judge Parker's observation that the government may "only sue certain entities where they think they're going to have the most impact." *Id.* at 8. But Spotify made clear that its defense is not limited to the bad faith pursuit of this litigation relative to other licensees, and instead encompasses MLC's treatment of other licensees concerning the reporting of bundled subscription

There is no question that such conduct relates directly to the subject matter of this litigation. And MLC's exercise of its authority in bad faith—in a discriminatory manner that would competitively disadvantage Spotify by having it pay royalties at rates potentially higher than those paid by its competitors—plainly qualifies as inequitable treatment, allowing the defense, *at least at this early stage*, to be invoked. *See SoundExchange*, 322 F. Supp. 3d at 78 (holding that it was "premature and unjust" to grant summary judgment motion dismissing the defense "when the discovery process might yield additional facts that would guide the Court's decision as to the merits" where "facts that could demonstrate SoundExchange's alleged bad faith are presently unavailable to Muzak and in possession of the plaintiff").

Although the Court in *SoundExchange* later—after the close of discovery—dismissed Muzak's unclean hands defense, it did so for reasons not relevant here. [6]  While MLC claims the dismissal rested on a determination that "nothing in the Copyright Act imposed a duty on SoundExchange to treat licensees the same," it misleads in suggesting that holding applies here. Mem. at 7. [7]  The *SoundExchange* case concerned Section 114 of the Copyright Act, which is not the law at issue here, and thus its holding as it relates to Section 114 specifically is of no moment. 2020 WL 13611363, at *4.  By contrast, Section 115, the law that *is* at issue here, imposes a duty

---

offerings more generally.  *See, e.g.*, ECF 124-1 at 19:10-15 ("Has MLC sort of raised any objections to Amazon's reporting … of their price of the audiobook component of that bundle?"); *id.* at 23:19-21, 25 (similar).  But even as to this lawsuit, MLC is wrong that its discriminatory enforcement of Section 115 through litigation is beyond reproach. *See infra* at 21-22.

[6] Despite MLC's claim that the *SoundExchange* court dismissed the defense "as a matter of law," it did so only after denying a prior summary judgment motion on the grounds that the defense was appropriate for discovery. Mem. at 7; *SoundExchange, Inc. v. Muzak, LLC*, 2020 WL 13611363 at *4 (D.D.C. July 17, 2020); *compare SoundExchange*, 322 F. Supp. 3d at 78.

[7]   In any event, MLC identifies no legal requirement that a statute must expressly prohibit discriminatory treatment before the discriminatory exercise of discretion can serve as the basis for unclean hands.  Nor did the *SoundExchange* court.  *See* 2020 WL 13611363, at *4.  Spotify disputes that this is required because statutory discretion is not inherently limitless regardless. *See infra* at 21-22.

that "[t]he mechanical licensing collective shall … ensure that the policies and practices of the collective are transparent and accountable." 17 U.S.C. § 115(d)(3)(D)(ix)(I)(aa). MLC's application of its policies cannot be "transparent" and "accountable" if MLC is applying one set of rules to Spotify and another set of rules to Spotify's competitors. At a minimum, assuming Spotify's competitors owe more royalties than they have been paying under the rules applicable to Spotify, that would mean MLC is not applying its policies in a way that is accountable to the mechanical rightsholders for whom MLC is tasked with collecting royalties from both Spotify and its competitors who owe royalties.

### 2. The Scope Of MLC's Authority Under Section 115 Is A Question Of Law That Is Inappropriate For Resolution On A Motion To Strike

MLC's argument—that Spotify's defense fails as a matter of law because MLC's conduct is "consistent with its enforcement discretion under Section 115," Mem. at 8, which purportedly permits it to treat similarly situated licensees differently in these circumstances—implicates a question of law that is inappropriate for resolution on a motion to strike. Indeed, "it is well established that close or new questions of law should not be resolved on a motion to strike." *Rich*, 634 F. Supp. 3d at 73 (quotation omitted); *E.E.O.C. v. Kelley Drye & Warren, LLP*, 2011 WL 3163443, at *2 (S.D.N.Y. July 25, 2011) ("[m]otions to strike affirmative defenses for legal insufficiency are … generally disfavored."). "The Second Circuit has cited approvingly cases holding that a motion to strike should not be used as an opportunity for the determination of disputed, substantial questions of law and has endorsed the view of a leading treatise that 'even when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits.'" *Id.* (citing *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 471 U.S.

20

1098 (1986)).  "To do otherwise would be to run the risk of offering an advisory opinion on an abstract and hypothetical set of facts."  *Salcer*, 744 F.2d at 939.

Here, MLC seeks to dispose of Spotify's defense before summary judgment or trial by asserting that it has limitless power under a statutory provision authorizing it to "engage in legal … efforts to enforce rights and obligations" (17 U.S.C. § 115(d)(3)(C)(i)(VIII)).  This is a disputed legal question, as is the question of whether the MLC's conduct violates its requirement for "transparent and accountable" policies and practices (17 U.S.C. § 115(d)(3)(D)(ix)(I)(aa)).  Each disputed legal issue alone is reason enough to deny this motion.  *See*, *e.g.*, *Salcer*, 744 F.2d at 939 (holding it was error to strike defenses where the "legal issue … is substantial and disputed"); *Rich*, 634 F. Supp. 3d at 73 (denying motion to strike where "'the law [was] somewhat unsettled as to whether the culpable conduct defenses of contributory negligence and comparative negligence apply to Section 1983 claims'"); *E.E.O.C.*, 2011 WL 3163443, at *2 (where "Circuit Courts of Appeal [had] reached different conclusions as to the availability of compensatory and punitive damages under the ADEA," denying motion to strike, reasoning, "[i]n light of the unsettled state of the law on these contentions and the disfavored status of Rule 12(f) motions as vehicles for deciding disputed issues of law, it is inappropriate for the Court to address these issues of law at this stage of the proceedings").

Striking Spotify's defense on such disputed legal grounds is particularly inappropriate here because discovery remains outstanding and it remains to be seen how Spotify's defense will develop as a result of the evidentiary record that emerges in this case.  Resolution of Spotify's defense on such an incomplete record would thus be the equivalent of an impermissible advisory opinion.  *Salcer*, 744 F.2d at 939; *see also*, *e.g.*, *Leibowitz*, 2025 WL 2056026, at *8 ("Whether Leibowitz will pursue this defense in a manner that is ultimately precluded by the securities law is

21

a question for another day, but the Court will not strike such a defense at this early stage before it has been fully developed"); *Ripple*, 2022 WL 748150, at *5 (denying motion to strike where "these facts, if true, would raise legal questions as to whether [defendant] had fair notice … and the Court may need to consider these questions more deeply").

On a fuller record, the Court will need to determine whether MLC's argument—should MLC press it—that it has unlimited discretion as applied to the conduct here, despite the MLC's legal duty to ensure that its policies and practices are transparent and accountable, is correct. That determination is inappropriate in the absence of the evidentiary record because it involves a disputed question of law and its resolution may be impacted by the facts adduced during discovery. As the Second Circuit has explained, discretion "is not a license … to treat like cases differently." *See U.S. v. Diapulse Corp. of Am.*, 748 F.2d 56, 62 (2d Cir. 1984). For example, the Second Circuit has observed in the context of taxation, "courts have imposed a 'duty of consistency toward similarly situated taxpayers' … and have held that agencies may not 'treat similar situations in dissimilar ways.'" *Jones v. Califano*, 576 F.2d 12, 20 (2d Cir. 1978); *see also*, e.g*., Kirk v. Comm'r of Soc. Sec. Admin.,* 987 F.3d 314, 320-21 (4th Cir. 2021) (an "agency 'can be said to be at its most arbitrary' when it 'treat[s] similar situations dissimilarly.'"). That principle applies with even more force in the context of MLC's collection of royalties from digital service providers like Spotify, given the small number of licensees who account to the MLC for digital streaming royalties relative to the taxpaying population writ large, and the effects MLC's decision have on competition among the few participants in this market. At minimum, Spotify should be entitled to make this argument based on a developed factual record.

### C.    MLC Fails To Demonstrate Prejudice

MLC's motion to strike must be denied because MLC has failed to establish that it will suffer prejudice if Spotify's defense is not stricken. "[E]ven if [a] defense is factually insufficient,

22

the court must still determine whether its inclusion would prejudice the plaintiffs," and "[a]bsent a showing of prejudice, an affirmative defense need not be stricken." *A.W.S. v. Southampton Union Free Sch. Dist.*, 2022 WL 1478736, at *3 (E.D.N.Y. Feb. 28, 2022), *report and recommendation adopted*, 2022 WL 1166422 (E.D.N.Y. Apr. 20, 2022). The existence of prejudice "will normally depend on when the defense is presented," with prejudice generally being more likely "where a defense is presented beyond the normal time limits of the Rules, especially at a late stage in the litigation." *See GEOMC*, 918 F.3d at 98.

"Mere assertions of prejudice by the moving party are insufficient." *Amimon, Inc. v. Shenzhen Hollyland Tech Co.*, 2023 WL 2478159, at *17 (S.D.N.Y. Mar. 13, 2023). Rather, where the movant asserts prejudice on the grounds that discovery associated with an affirmative defense will be burdensome, the movant must "quantify [the] burden." *See Monterey*, 2021 WL 4173929, at *6 (denying motion to strike unclean hands defense where movant failed to "quantify [the] burden" associated with discovery); *see also Jones*, 2025 WL 918466, at *7 (rejecting prejudice argument and denying motion where movant "fail[ed] to 'quantify [the] burden'" associated with litigating "'legally and factually insufficient'" defenses).

Here, MLC fails to quantify the burden of any discovery concerning unclean hands, likely because there is no additional discovery burden. Instead, MLC makes the conclusory assertion that Spotify has served "wide-ranging discovery demands [that] impose massive document review and production costs on the MLC and third parties," without evidencing that claim. Mem. at 9. That unsubstantiated argument cannot alone demonstrate prejudice. *See*, *e.g.*, *Monterey*, 2021 WL 4173929, at *6 (rejecting prejudice argument where movant made conclusory assertion that unclean hands defense would "result [in] an 'extreme increase in [the] scope and expense of discovery'"). MLC fails to substantiate its suggestion that any discovery requests concerning

23

unclean hands would create "massive document review" burdens as to it or third parties, and the record belies that contention.

With respect to discovery requests Spotify has made of the MLC, MLC fails to show that these requests add *any* unique discovery to the case that would not *already* be at issue but for the assertion of Spotify's defense. Tellingly, although MLC omits Amazon's name from its quotation of the request, the *only* document request that MLC identifies as purportedly "solely" relating to unclean hands is a request that relates to Spotify's competitor, Amazon, whose name MLC had *already agreed* to run as a search term to identify documents for review. *See supra* at 7, 9. Thus, this request merely ensured that MLC would be obligated to actually produce the documents that hit on this term, and the fact that MLC agreed to run that search term shows that this subsequently-served document request will not call for MLC to review any additional documents that it was not already obligated to review, contradicting its conclusory assertion that Spotify's new requests will create "massive document review burdens." Indeed, MLC also strategically fails to mention that it had already agreed to *produce* documents in response to several document requests relevant to unclean hands (as well as to other issues in the case); its claim of burden rests entirely on a smattering of follow-on belt-and-suspender requests served on the eve of the then-operative discovery deadline that Spotify served after MLC made those commitments. *See supra* at 7-9. The notion that these few requests will impose meaningful additional document review burdens, let alone extreme ones, is implausible.

MLC's argument that unclean hands will introduce a separate line of discovery into the case rests on a mischaracterization of Spotify's discovery requests. In its motion, MLC represents that "[m]any of [Spotify's] new discovery demands relate solely to Spotify's unclean hands defense." Mem. at 3, 5; *see also* Cohen Decl. ¶¶ 7, 9. But, in fact, any discovery requests that

24

relate to unclean hands also relate to other issues in the case that MLC does not, and cannot, contend are irrelevant, including MLC's application and interpretation of the regulations at issue and its valuation of other audiobooks services. *See supra* at 7-9.  Because the same discovery will be in the case *with or without* an unclean hands defense, MLC fails to demonstrate that Spotify's assertion of the defense is prejudicial.  *See Rich*, 634 F. Supp. 3d at 74 (denying motion to strike where "the plaintiff's claims regarding the circumstances of his arrest obviously must be a subject of discovery anyway, so the inclusion of the defense will cause plaintiff no prejudice"); *Cengage*, 2025 WL 3022375, at *5 (finding defense would not "add any particular 'expense and complexity'" where documents relevant to defense "have already been a part of [ongoing] discovery"); *Calabrese*, 2006 WL 544394, at *6 (denying motion to strike, "because striking the defense would not preclude the defendants from challenging any of plaintiffs' [claims] based on precisely the same theory of unclean hands, the plaintiffs cannot possibly be prejudiced").

With respect to third-party discovery, as an initial matter, MLC has no standing to assert burden or relevance arguments as to Spotify's subpoenas, and such arguments cannot plausibly show prejudice to *MLC*.  *State Farm Mut. Auto. Ins. Co. v. Linden Orthopaedic P.C.*, 2024 WL 4416588, at *1 (S.D.N.Y. Oct. 4, 2024).  In any event, MLC fails to justify that claim, too.  MLC points to a singular request in Spotify's subpoenas calling for various audiobook services to produce their communications, if any, with the MLC.  Mem. at 4 (citing Cohen Decl. Ex. G).  But MLC misleads in suggesting that there will be a "massive" trove of responsive documents, for the vast majority of the  subpoena recipients do not even offer music subject to reporting to the MLC. Spotify is entitled to those communications because they bear on MLC's communications with audiobooks services relating to the valuation of those services.  These requests by no means show the discovery is burdensome as to third parties.  Accordingly, the Court should deny MLC's

motion.

At a minimum, Spotify's defense cannot be stricken with prejudice.  *See Art Media, LLC v. Brant*, 2021 WL 746261, at \*7 (S.D.N.Y. Feb. 12, 2021), *report and recommendation adopted*, 2021 WL 2193020 (S.D.N.Y. Mar. 5, 2021) (striking waiver defense "without prejudice as the deficiencies in pleading are ones that potentially could be cured with elaboration and specification").  Rather, if necessary, Spotify should be permitted to amend its Answer to assert additional allegations, particularly given that MLC was permitted to file a motion to strike beyond the deadline for doing so.  But amendment is unnecessary, especially because MLC fails to establish that it will suffer any prejudice from litigating the defense as currently stated.  The Court should thus deny MLC's motion.

In short, this motion amounts to an effort by MLC to prevent Spotify from making a legal argument about MLC's conduct based on what the facts will show in light of the evidentiary record that will already be developed based on discovery already due to be produced by MLC or third parties in the case.  That MLC wants to shield the Court from such argument speaks volumes.

## V. CONCLUSION

For all the reasons articulated above, this Court should deny the MLC's motion to strike.

Dated: March 20, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

*/s/ Allison L. Stillman*
Allison L. Stillman
Cory D. Struble
Grace McLaughlin
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
alli.stillman@lw.com
cory.struble@lw.com
grace.mclaughlin@lw.com

Sy Damle
Michael E. Bern (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (212) 637-2200
sy.damle@lw.com
michael.bern@lw.com

*Attorneys for Spotify USA Inc.*

27

**CERTIFICATION OF COMPLIANCE**

I certify pursuant to Local Civil Rule 7.1(c) and Rule III.D. of Judge Analisa Torres's Individual Practices that the foregoing Opposition to Plaintiff's Motion to Strike Spotify's Affirmative Defense of Unclean Hands was prepared on a computer using Microsoft Word. The total number of words in this brief, excluding the caption, table of contents, table of authorities, signature block, and this certification is 8,723. In preparing this certification, I relied on the word count program in Microsoft Word.

Dated: March 20, 2026

/s/ Allison L. Stillman
Allison L. Stillman

28