# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Brussels
Hong Kong
Houston
London
Los Angeles
San Francisco
Tokyo
Toronto
Washington, DC
Wilmington

1285 Avenue of the Americas
New York, NY 10019-6064
+1 212 373 3000

**Jay Cohen**
**Direct Dial:** +1 212 373 3163
**Email:** jaycohen@paulweiss.com

May 4, 2026

**VIA ECF**

The Honorable Katharine H. Parker
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, New York, NY 10007

   Re:  *Mechanical Licensing Collective* v. *Spotify USA Inc.*, No. 1:24-cv-03809

Dear Judge Parker:

  The parties in the above-captioned action write jointly to update the Court on the progress of discovery per Your Honor's April 14, 2026 Scheduling Order (Dkt. 146). The parties recognize that Your Honor's Individual Practices in Civil Cases direct that letters to the Court should not exceed 3 single-space pages. The parties respectfully request an exception to that limitation given the number of issues addressed herein.

## The MLC's Update

  Although the MLC has worked to avoid disputes and reach compromises with Spotify, there are numerous delays and deficiencies by Spotify—first and foremost, its decision to produce more than 14,000 documents later today, the final day for substantial completion—requiring the Court's attention. Furthermore, the MLC respectfully requests that the Court reschedule the conference set for Wednesday, May 20 to the week of May 11, so it may decide the discovery issues detailed herein at an earlier date.

  ***Spotify's Delay in Producing Documents and the MLC's Request to Extend the Fact Discovery Deadline***. As of 10:30 p.m. today, Spotify has produced only 671 documents since fact discovery began in November 2025. Spotify informed the MLC at 2:36 p.m. today that it intends to produce an additional 14,000+ documents later today—an amount that would constitute 95% of the documents it will have produced in this case, and then informed the MLC that there will be one smaller additional production later this week.

Given Spotify's delay, and the time it will take for the MLC to process and review those documents, an extension of the fact discovery deadline is necessary for the MLC to prepare for and take the depositions of Spotify's witnesses. The parties have agreed to an extension of the fact discovery deadline from June 12 to June 30, 2026.

**Spotify's Position:** The Parties negotiated and agreed to a substantial completion deadline of May 4, well before the end of fact discovery. (MLC, for its part, initially proposed a date of May 1.) Spotify told MLC weeks ago that it would substantially complete document production by this date. And indeed, as discussed in the section below addressing Spotify's updates, Spotify intends to complete the bulk of its document production by today. The notion that this constitutes "delay" is far-fetched.

The reason the parties agreed to this interim deadline was to ensure that documents were produced in sufficient time to take depositions within the time allotted by the Court's existing schedule. At no point did MLC inform Spotify that its adherence to the scheduling order was contingent on Spotify meeting some unspecified, earlier deadline for production of documents. In any event, it is not Spotify that is delaying the progress of discovery, but MLC. As discussed in Spotify's update below, for weeks, MLC refused to schedule depositions of *any* MLC witnesses, failed to respond to Spotify's offer of deposition dates for the vast majority of Spotify witnesses, and produced a paltry 1500 documents. In any event, Spotify has agreed to a modest extension of the fact discovery deadline, to June 30.

***Spotify's Improper and Incomplete Interrogatories Responses and Objections.*** In response to the MLC's interrogatories requesting that Spotify identify individuals involved in discussions related to its decisions to: launch Audiobooks Access, set the $9.99 price, limit subscribers to 15 hours of audiobook listening, and market, promote, advertise, and report on the offering, (Interrogatory Nos. 9–25), Spotify identified only a single "individual [who] made decisions" regarding each of those subjects, even though decisions of that scope necessarily involved numerous personnel across Spotify's business, pricing, marketing, finance, and reporting functions. Those responses also contain numerous other deficiencies, all of which the MLC will raise with Spotify in an upcoming meet-and-confer call.

**Spotify's Position:** MLC's complaint is insubstantial. Until it provided its draft of this letter on May 1, MLC never complained of Spotify's identification of one individual in response to certain interrogatories. As to those interrogatories, Spotify's responses identified the individual who made "the final decision" with respect to various subjects, which was an appropriate response in the absence of any effort by MLC to place a meaningful limitation on its interrogatories, which called, for example, for identification of "all individuals *involved in* discussions, analyses, and/or decisions" regarding certain subjects, and were thus incredibly overbroad. Spotify had timely and appropriately objected to the Requests on that basis.

***Spotify's RFA Responses and Objections.*** Spotify's responses to the MLC's First Set of Requests for Admission also are improper. In response to MLC RFA Nos. 8–22 (including requests to admit the percentage of Premium subscribers who have never listened to a full audiobook), 24–29 (including requests to admit that Spotify Basic was launched in June 2024 and available only to pre-existing Premium subscribers), 36–43 (including requests to admit the minimal number of Audiobooks Access subscribers), 57 (request to admit that popular series like Harry Potter are not in Spotify's audiobooks catalog), and 61 (request to admit that a $1.00 decrease in the price of the audiobooks component would result in owed royalties), Spotify neither admitted nor denied the matters requested, but instead "decline[d] to answer" based on its objections. Where a matter is not admitted, the responding party must either deny it or "state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2023 WL 1879521, at *4 (S.D.N.Y. Feb. 10, 2023) (Cave, J.) (parties are duty-bound to "respond—not just object—to the" RFAs); *U.S. Bank Nat'l Ass'n* v. *Triaxx Asset Mgmt. LLC*, 2020 WL 9549505, at *2 (S.D.N.Y. Nov. 30, 2020) (Moses, J.) ("[A] party may not refuse to admit or deny a request even if such a response may seriously impair its case."); *Lively* v. *Wayfarer Studios LLC*, 2025 WL 3442593, at *2 (S.D.N.Y. Dec. 1, 2025) (Liman, J.) (holding responses to be insufficient where the answering party did not admit, deny, or state in detail why it could not do so). The MLC raised this issue at the parties' meet and confer on April 3, 2026, and Spotify refused to provide substantive responses, leaving the parties at an impasse.

**Spotify's Position:** Once again, MLC is raising a dispute that Spotify thought the parties were past, given that the parties previously conferred regarding these RFAs and then subsequently reported to the Court that they "do not have any outstanding discovery disputes that require the Court's attention." ECF No. 135. MLC's attempt to resurrect this dispute is meritless in any event. Spotify asserted objections to the RFAs at issue because MLC was improperly using them as if they were discovery devices in the same way that interrogatories or document requests are. For example, MLC served a series of requests asking Spotify to admit that different percentages of its subscribers listened to audiobooks. MLC only underscores that these RFAs impermissibly seek to discover information by complaining that "Spotify has simultaneously refused to produce the underlying subscriber data and usage metrics that would permit the MLC to test Spotify's RFA responses" (which Spotify has since produced in any event on April 17, 2026 and will produce today). The RFAs at issue are thus improper. *See, e.g.*, *Delgado v. Donald J. Trump for President, Inc.*, 2024 WL 3219809, at *5 (S.D.N.Y. June 28, 2024) (Parker, J.) (RFAs are "not discovery devices" and "courts generally deny motions to compel responses to RFAs that are lodged to obtain discovery"). In addition, while MLC appears to take issue with Spotify's refusing to answer the RFAs based on its objections, this is a course of action that Rule 36 explicitly permits. *See* Fed. R. Civ. P. 36(a)(3) (requiring service of "a written answer *or objection addressed to the matter*") (emphasis added); *Robinson v. De Niro*, 2022 WL 101909, at *3 (S.D.N.Y. Jan. 11, 2022) (Parker, J.) ("An answering party is also entitled to assert objections to requests for

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                                              4

admission"). MLC's cases do not support its suggestion that a party that has valid objections to an RFA must nonetheless answer the RFA.

*Depositions of Alex Norström and Ben Kung.* Spotify has objected to the deposition of two of their agreed document custodians, Mr. Norström and Mr. Kung. In its interrogatory responses, Spotify has identified Mr. Norström as a "decision-maker[]" and "involved in discussions" with respect to whether and when to integrate and launch audiobooks content as part of Premium, and whether, and if so when, Premium should be reported to the MLC as a Bundle. Spotify also identified Mr. Kung as someone who was "involved in [those same] discussions." Their involvement in those and other issues relevant to this case is not surprising given that Mr. Norström was the Chief Business Officer and Mr. Kung was the Interim CFO when Spotify first reported Premium as a Bundle with a $9.99 price attributed to the audiobook component. The MLC anticipates that their involvement in relevant issues also will be evident in the 14,000+ additional documents that Spotify is planning to produce later today.

**Spotify's Position:** Spotify asserted objections to MLC's notices for the depositions of Alex Norström (Spotify's co-CEO) and Ben Kung (Spotify's Vice President of Finance) on March 26. MLC has never sought to meet and confer about these depositions and raises the issue now without having done so. MLC's inclusion of the issue in this letter is premature for the further reason that MLC has not completed its review of Spotify's document production or taken the depositions of *any* other witnesses, such as David Kaefer, who led Spotify's audiobooks business, or any other employees who were directly involved in the matters at issue. Indeed, at one time MLC appeared to agree, explaining in correspondence that the dispute about these depositions was "premature at this time given that [Spotify has] not yet produced any documents from Messrs. Norström and Kung." Apr. 13, 2026, Email from D. Johnson.

Nothing has changed between then and now. There is still no valid basis for seeking depositions of Mr. Norström and Mr. Kung. As Spotify has repeatedly told MLC, both are senior officials with no relevant, non-duplicative information. Indeed, MLC's reliance on Spotify's interrogatory responses from an earlier phase of the action is improper and misleading. The earlier claim concerned whether Spotify Premium constitutes a bundle. Since that claim was dismissed, that issue is no longer part of the case. The much narrower issue posed by the claims that remain live in the case now—centering around the pricing for a single product in a single country, with a marginal impact on royalty payments— unsurprisingly does not involve decisionmaking at the highest levels of the company. In any event, as Spotify has explained to MLC, it is willing to meet and confer about the necessity of depositions of Mr. Kung and Mr. Norström after MLC has reviewed documents and taken other depositions, and at that point any continued dispute between the parties would be ripe for court resolution.

***Request to Move May 20, 2026 Conference.***  The MLC respectfully requests that the Court move the conference scheduled for Wednesday, May 20 to the week of May 11, so that the parties can raise the discovery issues detailed herein.

**Spotify's Position:**  Spotify does not join in MLC's request to move the scheduled May 20, 2026 conference earlier, as it believes many of these issues are both premature for the Court and may be amenable to resolution through further conferral.  However, Spotify respectfully requests the Court to adjourn the May 20, 2026 conference to May 26, 2026 (or a date that is available with the Court that week), as that is the date the parties have tentatively agreed to the deposition of Spotify's primary 30(b)(6) witness, and the extra time would allow the parties additional time to confer.

**Spotify's Update on the Progress of Discovery**

Spotify today will substantially complete its production of documents—as scheduled, pursuant to the Parties' discussions about the date for substantial completion of document productions.  By the end of the day today, Spotify will have produced more than 14,800 documents in this action—more than *nine times* as much as MLC.[1]  Moreover, MLC's production, totaling a mere 1,557 documents as of Friday, appears based on volume to be facially deficient.  Hearing now that this production is "substantially complete" from MLC's perspective,  Spotify will almost certainly need to meet-and-confer with MLC regarding deficiencies (before raising any issues with the Court).

In addition, on April 17, 2026, in anticipation of the close of fact discovery, Spotify provided deposition dates for all of its noticed witnesses, and requested that MLC provide deposition dates for its eight witnesses.  As we discuss below, MLC responded just today, and has refused to make any of its witnesses available until June.

MLC's attempt to characterize discovery as stalled by numerous disputes and claims of deficiencies stands in stark contrast to the parties' prior reports to the Court.  On February 11 and March 11, and again as recently as April 13, the parties consistently reported to the Court that they had resolved discovery disputes and that the pre-scheduled status conferences with the Court were not needed.  *See* ECF Nos. 120, 126, 135.  MLC now attempts to paint a radically different picture of discovery based on manufactured issues which seem more designed to set up a needless motion to extend the case schedule yet again than resolve legitimate discovery deficiencies.

---

[1] MLC did not previously raise any issue with Spotify regarding the timing of two custodians' proposed deposition dates being a week after production of some of their custodial documents. In fact, as noted below, MLC has not responded to Spotify's proposed deposition dates at all, except with respect to one witness.  If a week is not sufficient time for MLC to review documents for these particular custodians, Spotify is happy to confer with MLC regarding alternative dates, but MLC must meaningfully engage with respect to deposition scheduling, which it has not done thus far.  *See infra* at 8-9.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                                                    6

*MLC's Failure to Timely Provide Its Witnesses' Availability for Depositions or Schedule Depositions of Spotify Witnesses.*  As noted, two weeks ago, on April 17, 2026, Spotify requested that the MLC provide deposition dates for eight MLC witnesses and offered dates for all of Spotify's witnesses.  Twice now, on April 21, 2026 and April 23, 2026, MLC said it would get back to Spotify "shortly" regarding its own witnesses' availability.  Only after Spotify informed MLC of its forthcoming substantial completion production did MLC provide dates for its witnesses—the earliest of which is May 31 (a Sunday) and some of which fall outside the fact discovery period.  These dates appear to have been offered in contemplation of an extension that MLC had not disclosed to Spotify until the eve of this filing.  In Spotify's view, there is no reason to wait until the end of this month to schedule MLC witness depositions, and MLC should make its deponents available earlier this month.

**The MLC's Position:** The MLC has provided dates for all of the witnesses that Spotify put forward.  It offered dates after Spotify proposed dates for its witnesses on a take-it-or leave basis, prior to today.  Although there is no prejudice to Spotify from taking depositions on the dates provided by the MLC in June—well before the newly agreed June 30 cutoff date for completion of fact discovery, the MLC will endeavor to see if any of its witnesses can be made available on earlier dates.  The Sunday date for one witness was a clerical error, which the MLC will rectify by offering an alternative weekday date.

*MLC's Privilege Redactions.*  MLC purports to assert privilege over multiple emails sent by its general counsel to the members of MLC's Unclaimed Royalties Oversight Committee.  As Spotify understands, the Unclaimed Royalties Oversight Committee is a committee composed entirely of third parties who are not MLC employees or board members.  Spotify has raised this issue to MLC and asked MLC to provide  support for its assertion of privilege over these communications that were sent to these third parties.  Notably, MLC has provided no support for its position that these communications should be withheld from production.

**The MLC's Position:**  As the MLC has explained to Spotify, MLCAC-00003462 includes a privileged email prepared by Rick Marshall, the MLC's General Counsel, that was sent to the members of the MLC's Unclaimed Royalties Oversight Committee ("UROC"), an advisory committee elected by the MLC's members and confirmed by its Board of Directors.  UROC members are agents of the MLC and therefore qualify as representatives of the client for purposes of receiving legal advice from MLC counsel, and the communication was made in confidence for the purpose of providing legal advice to the MLC.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP                                    7

Respectfully submitted,

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

*/s/ Jay Cohen*
Jay Cohen
Darren W. Johnson
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
jaycohen@paulweiss.com
djohnson@paulweiss.com

*Attorneys for Plaintiff Mechanical Licensing Collective*

**LATHAM & WATKINS LLP**

*/s/ Allison L. Stillman*
Allison L. Stillman
Cory D. Struble
Grace McLaughlin
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212-906-1200
alli.stillman@lw.com
cory.struble@lw.com
grace.mclaughlin@lw.com

Sarang Vijay Damle
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
Telephone: 202-637-2200
sy.damle@lw.com

*Attorneys for Defendant Spotify USA, Inc.*