June 17, 2026

**VIA ECF**

The Honorable Katharine H. Parker
United States District Court, Southern District of New York
500 Pearl Street, New York, NY 10007

      Re:    *Mechanical Licensing Collective* v. *Spotify USA Inc.*, No. 1:24-cv-03809

Dear Judge Parker:

      The parties in the above-captioned action write jointly to identify discovery disputes the parties would like to discuss at the June 24, 2026 status conference.

1. **Documents Concerning Spotify's $9.99 Audiobooks Valuation**

**MLC's Position**: Spotify has refused to produce key categories of documents bearing on its decision to value the audiobooks component of Premium—and the Audiobooks Access subscription—at $9.99. Those documents, identified by Spotify witnesses at their depositions, include: (1) studies/analyses concerning what (if any) additional amount consumers were willing to pay for access to audiobooks on Premium, *see* Kaefer 30(b)(6) Dep. at 28:4–6, 31:13–14; (2) sensitivity analyses reflecting the projected royalty impact of different price points for Premium's audiobooks component, *see* Wu Dep. at 67:12–13; (3) financial projections of different price points for Audiobooks Access, the separate offering that Spotify used as the basis for its $9.99 audiobooks valuation, *see id.* at 162:8–14; and (4) agreements with record labels and music publishers that value Premium's audiobooks component at substantially less than $9.99, *see* Kaefer Dep. at 176:19–177:8.

**Spotify's Position**: MLC's claim that Spotify has "refused to produce" these documents is baseless. Spotify has, in fact, produced documents regarding its decision to price the audiobooks component of Premium, and Audiobooks Access subscription, at $9.99— including the types of documents listed by MLC here, and has identified those documents by Bates number. MLC now seeks to bootstrap Spotify witness testimony into a demand for the search and production of more documents based on a misunderstanding (if not distortion) of that testimony. There are no non-duplicative documents that exist. In particular, there are *no* agreements with record labels—which own different copyrights that are licensed in private negotiations, entirely separately from the mechanical licensing regime at issue here—that "value Premium's audiobook component" at *any amount at all*, let alone "substantially less than $9.99"; MLC simply is misreading Mr. Kaefer's testimony, and ignoring what Spotify has repeatedly explained in meet and confers. And there are simply *no direct agreements* with music publishers for mechanical rights in the U.S. *at all*; Mr. Kaefer testified to no such thing. MLC has the relevant documents on the pricing decision made in relation to *this* license already, and Spotify should not be required to continue to seek out additional materials, which, to the extent any exist, are likely duplicative.

2. **Custodial Documents from Karl-Johan (KJ) Flyborg**

**MLC's Position**:  In supplemental interrogatory responses served on June 4, Spotify for the first time identified KJ Flyborg (Spotify's SVP, Business Strategy) as having been "substantively involved" in "decisions concerning whether, and if so when, to launch Audiobooks Access" and "decisions regarding pricing Audiobooks Access at $9.99 per month."  Multiple deponents have confirmed that he is as a key player concerning the pricing/valuation of the audiobooks component of Premium.  *See, e.g.*, Kaefer Dep. at 41:20–21 (Flyborg was a "key player"), 28:4–6 (consumer willingness to pay research conducted by KJ's team); Wu Dep. at 56:3–9 (Flyborg "determines what subscription prices are").  Spotify has refused to produce relevant documents from his files.

**Spotify's Position**:  MLC has failed to demonstrate good cause (1/22/26 Hr'g Tr. 14:17-18) to add another document custodian just before the close of fact discovery. MLC insisted that Spotify supplement its interrogatory responses with the names of tangential players (ECF No. 140 at 4), even though Spotify explained that the relevant decisionmaker was Mr. Kaefer, as confirmed by all deponents to date, and with whom MLC had two days of deposition time. Spotify made clear that the additional individuals identified, including Mr. Flyborg, have only duplicative information. With that understanding, Spotify identified Mr. Flyborg alongside other individuals. These include, importantly, Felicitas "Feli" Jorge, who is on Mr. Flyborg's team and had direct involvement in the relevant pricing decisions, as other deponents have already testified. Indeed, when Mr. Flyborg came up during depositions, it was in the context of decisions or information with which Mr. Kaefer and Mr. Wu were themselves familiar and/or where they referenced other scheduled deponents' knowledge. *E.g.*, Wu Dep. 56:3–9 (identifying "Feli's boss," Mr. Flyborg, only after MLC counsel asked "Who else, if anyone, *besides Feli's team*, determines what subscription prices are?") (emphasis added); Kaefer Day 1 Dep. 41:11–42:7 (Mr. Kaefer identifying people *he* worked with and *identifying himself as the ultimate decisionmaker*). There is no evidence that adding Mr. Flyborg as a custodian would yield non-duplicative, highly relevant information.

3. **Depositions of Ben Kung and KJ Flyborg**

**MLC's Position**:  Discovery also has confirmed the central role of Ben Kung (Spotify's interim CFO at the time at issue) in the valuation of the audiobooks component of Premium.  Spotify produced documents from his files but has refused to make him available for a deposition unless the MLC agrees not to notice any further depositions. Given the central role of KJ Flyborg (*see* 2 above), the MLC should have the option of deposing him.

**Spotify's Position**:  Spotify objects to a deposition of Mr. Kung, Spotify's Vice President of Finance, who also served as interim CFO in 2024, under the apex doctrine. Mr. Kung was designated as a document custodian at MLC's insistence and as a compromise despite Spotify's objection that, given his role as a high-ranking executive who was not involved in the day-to-day activities of the audiobooks business, he did not have non-duplicative, relevant information and especially where MLC has documents (and now deposition testimony) from Mr. Wu, who is Spotify's Senior Director of Finance and reports to Mr. Kung and was directly involved in the relevant events. Spotify's document production and

Mr. Wu's deposition testimony have confirmed Mr. Kung's limited involvement in the issues. Indeed, when MLC inquired as to Mr. Kung's involvement with the limited issues relevant to this case, deponents identified Mr. Wu, Mr. Kaefer (former Head of Music & Audiobooks Business), or Ms. Deysel (Senior Director, Technical Accounting) as having relevant information in response to MLC's questions, all of whom MLC has deposed. *See, e.g.*, Kaefer Day 2 Dep. 112:2-113:11 (Mr. Kaefer: "I don't remember Ben necessarily being in the -- the ultimate decision meeting, but I was present"). In any event, to resolve this dispute, Spotify offered to make Mr. Kung available for a deposition (at great burden), if MLC agreed to not seek further depositions. MLC rejected this compromise and indicated for the first time that it may want to depose Mr. Flyborg, despite lacking evidence that he has non-duplicative, relevant information. *See supra* at 2. Indeed, MLC is scheduled to depose Ms. Jorge, who directly reports to Mr. Flyborg and has more direct involvement in the issues in the case than Mr. Flyborg (who is based in Sweden).

4. **Privilege Log Issues**

**MLC's Position**: The parties have met and conferred multiple times (most recently, on June 6) regarding various deficiencies that the MLC has identified in Spotify's privilege logs, such as vague and overbroad privilege categories and the failure to identify a relevant attorney on certain withheld communications. In a letter dated yesterday (June 16), Spotify represented that it will conduct a "downgrade review" to determine whether certain documents withheld for privilege should in fact be produced to the MLC; produce amended privilege logs including to add specificity and "clarify" certain category descriptions; and address a number of other privilege-related issues identified by the MLC. These undertakings by Spotify may well address the MLC's concerns, but given the June 24 conference is likely to be the parties' final appearance before Your Honor prior to the close of fact discovery, the MLC may raise unresolved privilege issues at the conference in the event that further meet and confers are not successful.

**Spotify's Position**: There is nothing deficient about Spotify's privilege logs. Nonetheless, Spotify has repeatedly agreed to provide information beyond that to which MLC is entitled under the terms of the parties' own stipulated ESI plan, in an effort to resolve disputes cooperatively. Taking a very different approach, the MLC nevertheless continues its meritless criticisms (e.g., claiming that the production of non-privileged attachments means it is improper to withhold privileged parent documents) that rest on an unreasonably expansive and unsupported view of what Spotify must provide (e.g., demanding that Spotify manually count the number of unique Slack messages in a given withheld thread and provide the counts to MLC). Even so, Spotify has undertaken significant, burdensome efforts to resolve disputes, including (1) conducting a time-consuming re-review of documents to provide yet further information as to attorney involvement and agreeing to provide downgraded materials *if appropriate*, (2) manually reviewing Slack threads to provide additional attorney and individual message-count information, (3) providing additional metadata for withheld parent documents as a compromise, and (4) revising a redaction on a document to show attorneys' names mentioned where MLC counsel would not take Spotify counsel's representation at face value as to their involvement.

Respectfully submitted,

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

*/s/ Jay Cohen*
Jay Cohen
Jessica Benvenisty
Darren W. Johnson
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000
jaycohen@paulweiss.com
jbenvenisty@paulweiss.com
djohnson@paulweiss.com

*Attorneys for Plaintiff Mechanical Licensing Collective*

**LATHAM & WATKINS LLP**

*/s/ Allison L. Stillman*
Allison L. Stillman
Cory D. Struble
Franco Benyamin
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212-906-1200
alli.stillman@lw.com
cory.struble@lw.com
franco.benyamin@lw.com

Sarang Vijay Damle
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
Telephone: 202-637 2200
sy.damle@lw.com

*Attorneys for Defendant Spotify USA, Inc.*