UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MECHANICAL LICENSING COLLECTIVE,<br><br>                      Plaintiff,<br><br>        v.<br><br>SPOTIFY USA INC.,<br><br>                    Defendant. | No. 1:24-cv-03809 (AT)(KHP) |

**PLAINTIFF THE MLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO COMPEL TESTIMONY AND THE PRODUCTION OF DOCUMENTS**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 3

ARGUMENT ....................................................................................................................... 10

I. THE MLC IS ENTITLED TO FLYBORG'S TESTIMONY AND DOCUMENTS ................ 12

      A.     Flyborg Has Relevant Information ......................................................... 12

      B.     Spotify Cannot Demonstrate That Flyborg's Relevant Discovery Should Be Excluded ........................................................................................... 14

II. THE MLC IS ENTITLED TO DEPOSE BEN KUNG............................................................ 17

III. SPOTIFY SHOULD BE COMPELLED TO SEARCH RELEVANT GOOGLE DRIVE LOCATIONS FOR ANALYSES, SURVEYS, AND PROJECTIONS .................... 17

CONCLUSION.................................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrahami* v. *Meister Seelig & Fein LLP*,
2023 WL 2159491 (S.D.N.Y. Feb. 22, 2023)...................................................................10

*Alzheimer's Found. of Am., Inc.* v. *Alzheimer's Disease & Related Disorders
Ass'n, Inc.*,
2015 WL 4033019 (S.D.N.Y. June 29, 2015) ..................................................................11

*Amimon Inc.* v. *Shenzhen Hollyland Tech Co.*,
2025 WL 66633 (S.D.N.Y. 2025)....................................................................................16

*Blackrock Allocation Target Shares* v. *Bank of N.Y. Mellon*,
2018 WL 2215510 (S.D.N.Y. May 15, 2018) ..................................................................14

*Chevron Corp.* v. *Donziger*,
296 F.R.D. 168 (S.D.N.Y. 2013) .....................................................................................16

*Eur.* v. *Equinox Holdings, Inc.*,
592 F. Supp. 3d 167 (S.D.N.Y. 2022)..............................................................................11

*Fort Worth Employees' Ret. Fund* v. *J.P. Morgan Chase & Co.*,
297 F.R.D. 99 (S.D.N.Y. 2013) .......................................................................................13

*Grain D'OR LLC* v. *Wizman*,
2023 WL 2162499 (S.D.N.Y. Feb. 22, 2023)..................................................................16

*Grand Cent. P'ship, Inc.* v. *Cuomo*,
166 F.3d 473 (2d Cir. 1999).............................................................................................10

*Shcherbakovskiy* v. *Da Capo Al Fine, Ltd.*,
490 F.3d 130, 138 (2d Cir. 2007).....................................................................................16

*Signify Holding B.V.* v. *TP-Link Rsch. Am. Corp.*,
2022 WL 3704001 (S.D.N.Y. Aug. 26, 2022)..................................................................16

*Sound Around, Inc.* v. *Friedman*,
2025 WL 2855353 (S.D.N.Y. Oct. 8, 2025).....................................................................22

*Steven Madden, Ltd.* v. *Jasmin Larian, LLC*,
2019 WL 3940112 (S.D.N.Y. July 8, 2019).....................................................................14

*In re Weatherford Int'l Sec. Litig.*,
2013 WL 2355451 (S.D.N.Y. May 28, 2013) ..................................................................14

iii

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Williams* v. *Fed. Gov't of Nigeria*,
    2024 WL 5247931 (S.D.N.Y. Dec. 30, 2024) ..................................................................11, 14

*Zhao* v. *Deutsche Bank AG*,
    2014 WL 12526256 (S.D.N.Y. June 24, 2014) .......................................................................13

**Other Authorities**

Fed. R. Civ. P. 26...........................................................................................................10. 22

Fed. R. Civ. P. 34................................................................................................................22

Fed. R. Civ. P. 37.........................................................................................................1, 10. 23

iii

Pursuant to Fed. R. Civ. P. 37 and the Court's July 14, 2026 Order (Dkt. 157), Plaintiff the Mechanical Licensing Collective (the MLC) respectfully submits this memorandum in support of its Motion to Compel Testimony and the Production of Documents.  The parties have met and conferred via email, letter, and video teleconference on these issues, including on July 20, 2026.

## PRELIMINARY STATEMENT

The MLC brings this motion to compel clearly relevant discovery on the central questions in this case:  whether Spotify's $9.99 valuation of the audiobooks component of its Premium Offering[1] complies with Section 115 and whether Spotify, as a result, has underpaid the mechanical royalties owed to hundreds of thousands of songwriters and music publishers.  The documents and testimony the MLC seeks go to how Spotify arrived at the $9.99 figure; what Spotify understands the audiobooks component to be worth; and whether $9.99 reflects a "good faith, reasonable measure of the market value" of the component or was instead a made-up—and incorrect—figure chosen for its impact on Spotify's music royalty base.  As fact discovery has progressed, it has become increasingly clear that Spotify has slow rolled or refused to produce key relevant surveys, financial analyses, and forecast materials that would answer those questions.[2]

As set forth below, the MLC respectfully requests that the Court compel Spotify to:  (1) produce Karl-Johan ("KJ") Flyborg's custodial documents and deposition testimony; (2) produce Ben Kung's deposition testimony; and (3) apply the parties' agreed-upon search terms to each custodians' Google Drive, speak to its custodians, identify any other relevant locations in Spotify's Google Workspace that Spotify has not previously searched, and produce all nonprivileged,

---

[1]   All capitalized terms have the meaning ascribed to them in Section 115 of the Copyright Act and its implementing regulations, including 37 C.F.R. § 385.2 (collectively, Section 115).

[2]   The MLC will continue to meet and confer to try to resolve this and other issues, if possible, and will update the Court if any such resolution is reached.

responsive documents, which the MLC believes will result in the production of the very analyses, surveys, and projections that the Court already ordered Spotify to produce.

*First*, Spotify should be ordered to produce documents from the custodial files of KJ Flyborg—the Senior Vice President for Business Strategy & Insights—along with his deposition testimony.  As Spotify's own witnesses testified, Flyborg █████████████████████████ ███████████████████████████████████████████████████ ███████  and therefore the valuation of Premium's audiobooks component—the very valuation at issue here.  The Court has already observed that Flyborg "clearly" has relevant information. Spotify's objections—that Flyborg's documents are both "redundant" of a subordinate's files and too "burdensome" to collect—cannot be reconciled with one another or with the record.  And neither Flyborg's location in Sweden nor Spotify's belated and unsupported objection under the apex doctrine would provide any basis to shield him from discovery.

*Second*, and for the reasons set forth in detail in the MLC's opposition to Spotify's motion for a protective order under the apex doctrine, Spotify should be ordered to make Ben Kung, a Vice President of Finance, who also participated in discussions concerning the valuation of Premium's audiobooks component, available for a deposition.

*Third*, Spotify should be compelled to search its Google Workspace and its custodians' Google Drives, including for financial projections previously requested by the MLC, and for survey materials that Spotify has already been ordered to produce.  Over the course of the parties' meet and confers, Spotify conceded that it searched ***only*** its custodians' emails and Slack messages for those and other relevant documents—ignoring the primary repository in which its business-planning documents reside:  Google Drive.  The consequences of that choice are not hypothetical: time and again, the MLC has been forced to run down and request plainly relevant documents that

2

Spotify's artificially and intentionally limited searches failed to capture even though those documents would have hit on the parties' agreed-upon search terms.  At a minimum, Spotify should be ordered to produce the documents identified in Exhibit 1,[3] which are documents that the MLC understands exist as they are referenced in already-produced documents and appear highly relevant, including, for example, documents concerning ███████████████████████████

████████████████████████████████████████████████████████████████

██████ among others.

These categories of discovery are plainly relevant to the MLC's claims and proportional to the needs of the case, and Spotify has offered no coherent reason—much less the specific showing the Federal Rules require—for refusing to comply with the MLC's discovery requests.

**<u>FACTUAL BACKGROUND</u>**

The Court is familiar with the facts of this case.  This litigation challenges Spotify's improper reporting and payment of royalties to the MLC for its Premium and Audiobooks Access Offerings, and the central question in this case is whether Spotify's valuation of the audiobooks component of those Offerings at $9.99 comports with the requirements of 17 U.S.C. § 115 and its implementing regulations.  *See* Am. Compl. ¶¶ 25–62 (setting forth the regulatory scheme), ¶¶ 78–118 (allegations supporting the MLC's claims under that scheme).  Accordingly, the MLC has propounded various discovery requests regarding Spotify's valuation of the audiobooks component of its Offerings, including requests for consumer and customer surveys, analyses, and financial projections.  Ex. 2; Ex. 3 (*e.g.*, MLC RFP No. 1–3, 6, 12–13, 26, 31–32, 40–42, 53–55).  The MLC also sought the custodial documents of ten individuals, including Ben Kung, then a Vice

---

[3]    References to "Exhibits" and "Ex." are to the exhibits attached to the Declaration of Jessica Benvenisty dated July 23, 2026 and filed alongside this motion.

President of Finance.  *See* Dkt. 110 at 1.  At the January 22, 2026 status conference, the Court ordered the parties to agree to ten Spotify custodians and stated that the MLC would "not be precluded" from seeking documents from any other custodians if "good cause" were shown.  Jan. 22, 2026 Conf. Tr. at 14:17–20.

To date, Spotify produced 20,648 documents—14,854 of which were produced *en masse* on May 5, 2026, the day the parties agreed to substantially complete document discovery, and 4,630 of which were produced three days later, on May 8.  *See* Benvenisty Decl. ¶ 2.  Within a month of Spotify's May 5 and 8 productions, the MLC took the depositions of four Spotify custodians, including David Kaefer (former Vice President – Global Leader – Music and Audiobooks Businesses) and Winston Wu (then Director, Financial Planning & Analysis – Head of Strategic Planning & Licensing Finance).  Over that month, it became clear to the MLC that Spotify's production was missing critical documents concerning Spotify's internal analyses, surveys, and financial projections relating to its (and its customers') valuation of 15 monthly hours of audiobooks listening, and therefore impact that Spotify's $9.99 valuation had on mechanical royalties owed to the MLC.

On June 3, 2026, the MLC wrote to Spotify raising several deficiencies with its productions, including its failure to produce critical pricing documents that Kaefer and Wu testified to in detail, and requesting that Spotify produce the custodial documents of Flyborg because the documentary and testimonial record indicated █████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████  With respect to the missing documents, the MLC identified numerous instances where Wu testified about such documents, including ████████ ████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████ *See id.* at 1–2.  For example,

Wu testified that ██████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████ *Id.* at 1–2

(quoting Wu Dep. Tr. at 116:1–10; 113:2–21).  But no documents reflecting these analyses were

ever produced.  The MLC also requested that Spotify search and produce Flyborg's documents

because Wu and Kaefer confirmed at their depositions that ██████████████████████

████████████ *Id.* at 2 (citing Wu Dep. Tr. at 56:3–9 (██████████████████████

████████████████████)).

On June 10, 2026, Spotify declined to produce the pricing documents requested in the

MLC's June 3 letter on relevance grounds and because they were outside of the "specific

parameters for documents collections and review."  *See* Ex. 5 (June 10, 2026 Ltr. from L. Wisser

to J. Cohen at 2).  Notably, Spotify did not deny that these documents existed.  *See id.*  The parties

met and conferred the next day, on June 11, and Spotify stood on its June 10 letter and declined to

produce the missing analyses, surveys, and forecasts, or Flyborg's custodial documents.  *See* Dkt.

146 at 1–2.

The MLC raised these issues before the Court at the June 24, 2026 conference.  With

respect to the analyses, surveys, and forecasts concerning Spotify's valuation of audiobooks,

Spotify represented that it "is constantly running analyses and surveys of a lot of these different

issues," and that those analyses and surveys included "willingness to pay for audiobook content"

surveys.  June 24, 2026 Conf. Tr. at 70:1–16.  After the conference, with respect to the "surveys

and analyses relating to Spotify's $9.99 Audiobooks valuation," the Court ordered Spotify to

5

"determine the number of surveys conducted during the period from 2021 through 2024, identify where the results of those surveys are maintained or housed, and produce those surveys to counsel for MLC." Dkt. 150 at 1. The Court also directed Spotify to "confer with its relevant witness(es) to determine whether any additional financial projections exist" and "to produce those as well." *Id.* at 2.

As to Flyborg, the Court observed that "he's clearly going to have relevant information" and that "the question really is relevance and proportionality at this stage of the game." June 24, 2026 Conf. Tr. at 82:5–11. Spotify argued that producing Flyborg's documents would be "highly redundant" because Spotify's counsel spoke with Felicitas Jorge (a deponent and Flyborg's subordinate) "just in advance of this hearing, to confirm that . . . Mr. Flyborg wouldn't have any information [Jorge] did not have." *Id.* at 82:23–83:17. Spotify also contended that Flyborg is "in Sweden" and Spotify would "have to collect all of his documents" and "run the search terms," presenting a burden. *Id.* at 85:1–14. The Court concluded that the MLC should take Jorge's deposition, which was to be held the following week on June 30, 2026, and "find out what she has to say . . . before we go down the road of getting more documents from Flyborg." *Id.* at 85:19–86:1. The Court made clear, however, that "if, in fact, it turns out that Flyborg's role was different than what you originally understood, . . . then there may be good cause" to "extend discovery" to allow the MLC to review Flyborg's documents and take his deposition. *Id.* at 86:4–11; *see also* Dkt. 150 at 2 ("The request to depose KJ Flyborg and that the Court direct a search of his materials is denied without prejudice as premature. MLC will depose Ms. Jorge as scheduled, and, insofar as MLC still believes a deposition of Flyborg will be necessary, it is to include such a representation in the joint status letter due July 2, 2026.").

6

During the final few weeks of fact discovery, Spotify made lagging productions that raised significant questions about the universe of documents (and locations) it had searched.  For example, on Friday, June 19, just four days before Shaela Greenfield's deposition, Spotify produced a ██████████████████████████████████████████████████████ (SPOTIFY_00147870)," which included a link to a potentially relevant modern attachment.  *See* Ex. 6 (June 22, 2026 D. Johnson email to L. Wisser).[4]  The MLC requested the missing modern attachment the next business day, and Spotify produced it on the day of Greenfield's deposition, June 23, 2026.  *See id.*  That document is a ████████████████████████ ████████████████████████████████████████████████  *See* Ex. 7 (SPOTIFY_00330328).  ████████████████████████████████████████ ████████████████████████████████████████████████████████

indeed, the MLC ran the parties' agreed–upon search terms on the document and it hit multiple times.  *See id.*  That SPOTIFY_00330328 had not been produced suggested to the MLC that Spotify did not independently search its custodians' Google Drives (or Spotify's Google Workspace) for relevant documents.  The MLC's concern about the locations Spotify searched compounded as the MLC waited for Spotify to produce a series of modern attachments to documents identified by the MLC in emails on May 20 and May 23 and that Spotify agreed to produce.  *See* Ex. 8 (June 17, 2026 J. Ligon email to L. Wisser).[5]

The MLC then took Jorge's deposition on June 30, 2026 and asked her about ████████ ████████████████████████████████████████████████████████

---

[4]  It was unclear to the MLC why this document was not produced prior to the substantial completion date or at any other date subsequent.

[5]  During document discovery, Spotify refused to produce all modern attachments to produced Slack messages, and the MLC ultimately agreed, as part of a compromise, to accept Spotify's production of only a subset of specifically identified modern attachments to Slacks. *See* Ex. 8.

██████████████████████████████████████████████████████████████████

████████   *See* Ex. 9 (Jorge 30(b)(1) Dep. Tr.) at 49:2–51:21; 52:1–53:25; 55:1–24; 56:19–25.

According to Jorge, ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████   54:20–23,  55:13–15,  56:1–18);  *see  also*  Ex.  10

(SPOTIFY_00017500) at 3, 5 ██████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████

On July 1, 2026, the day after Jorge's deposition, the parties met and conferred again.  As set forth in the status letter filed on July 2, 2026, Spotify represented that it had identified unproduced surveys and analyses relating to Spotify's $9.99 audiobooks valuation and that it would produce them before the close of fact discovery on July 9, 2026.  Dkt. 154 at 1.  ████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████   *see, e.g.*, Ex. 11 (Wu Dep. Tr.) at 119:22–121:1, 116:5–7 ████████

█████████████████████████████████████████████████████████████   Spotify belatedly asserted privilege over any relevant projections he performed and represented that "there are no additional pre-suit analyses to produce."   Dkt. 154 at 2.   The MLC also maintained, including in light of Jorge's testimony, that Spotify should produce Flyborg's custodial documents and make him available for a deposition, if necessary.[6]  *Id.* at 3.

---

[6]   At no point before the July 2, 2026 status letter (including at multiple meet-and-confers, the prior status conference, and in any writing) did Spotify raise an objection to the deposition of

On July 8, 2026, the MLC raised its concern that "Spotify may not have searched for and produced documents stored in the Google cloud independent of its searches of emails and slack messages." *See* Ex. 12 (July 8, 2026 J. Benvenisty email to Spotify Counsel).  The MLC asked for confirmation that Spotify had searched relevant Google Drive locations "independently of emails and Slack messages." *Id.*  On July 9, 2026, Spotify responded by claiming that it had no obligation to search any Google drive locations, because on January 22, 2026—months before document discovery began in earnest—Spotify identified Slack and Gmail to the MLC as the data sources it intended to search, along with modern attachments to emails, in an email. *See id.* (July 9, 2026 F. Benyamin email to J. Benvenisty).  Needless to say, at the time of that January 22 email, the MLC had minimal Spotify documents.  In fact, at that time, Spotify had only made one post-Amended Complaint production, which consisted of 18 documents.

Also on July 9, 2026, Spotify produced two documents related to different willingness to pay surveys—SPOTIFY_00330338 (Ex. 14) and SPOTIFY_00330380 ███████████ ███—pursuant to the Court's June 25, 2026 Order.  *See* Dkt. 150.  As those documents make clear, Spotify's production in response to that Order remains deficient.  For example, ███████

███████████████████████████

███████████████████████████

███████████████████████████

███████████████████████████

███████      *See* Ex. 14 at 15–16.

---

Flyborg under the apex doctrine as it had with Kung.  Spotify first hinted at such an objection only when the MLC noted that it had not done so prior to that letter. *See* Dkt. 154 at 3 n.1.

On July 20, 2026, the parties met and conferred in an attempt to resolve the disputes at issue in the Motion.  In that meeting, Spotify's counsel acknowledged that they had not done any searches of any Google Drive locations independent of its searches of its custodians' Slack and email messages.  *See* Benvenisty Decl. ¶ 3.  In the interest of resolving this dispute without court intervention, the MLC offered to identify specific documents it believed existed based on there being referenced in other produced documents.  Accordingly, that evening, the MLC sent Spotify a list of "specific Spotify documents that [the MLC] believe[s] exist, would be relevant, and have not been produced (and would have been produced, had Spotify searched Google Drive locations independently of searches of its custodians' emails and slacks.)"  *See* Ex. 15 (July 20, 2026 D. Smith email to A. Stillman).  On July 22, Spotify responded by pointing to documents that were already in its production and said it was "still investigating" ██████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████  *See* Ex. 16 (July 22, 2026 A. Nakamura email to D. Smith).

## ARGUMENT

Rule 26(b)(1) "permits discovery of 'any non–privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'"  *Abrahami* v. *Meister Seelig & Fein LLP,* 2023 WL 2159491, at *3 (S.D.N.Y. Feb. 22, 2023) (Parker, M.J.) (quoting Fed. R. Civ. P. 26(b)(l)).  Where a party has been denied access to non-privileged information or documents and completes a good faith effort to confer with its adversary, "a party may move for an order compelling discovery or disclosure." Fed. R. Civ. P. 37(a)(1).  District courts have broad discretion in deciding motions to compel.  *See, e.g., Grand Cent. P'ship, Inc.* v. *Cuomo*, 166 F.3d

10

473, 488 (2d Cir. 1999). "[R]elevance for purposes of discovery . . . is an extremely broad concept," encompassing not only evidence admissible at trial, but also all evidence "reasonably calculated to lead to the discovery of admissible evidence." *Eur.* v. *Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 176 (S.D.N.Y. 2022) (Parker, M.J.) (granting in part motion for sanctions for failure to preserve documents). "Once the party seeking discovery has demonstrated relevance, the party resisting discovery has the burden of showing specifically how, despite the broad and liberal construction afforded the federal discovery rules, the discovery sought is overly broad, burdensome or oppressive." *Williams* v. *Fed. Gov't of Nigeria*, 2024 WL 5247931, at *2 (S.D.N.Y. Dec. 30, 2024) (Liman, J.) (internal quotation marks omitted) (granting motion to compel); *see also Alzheimer's Found. of Am., Inc.* v. *Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 2015 WL 4033019, at *5 (S.D.N.Y. June 29, 2015) (Sweet, J.) ("[T]he resisting party must show how . . . each request is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden." (internal quotation marks omitted)) (granting motions to compel).

As set forth below, the MLC's requested discovery easily clears the bar for relevance at this stage in the proceedings. Flyborg and Kung each played a central role in Spotify's audiobooks business plans, including its pricing of Audiobooks Access and valuation of Premium's audiobooks component. Spotify's Google Drive, its primary (if not only) repository of non-email and Slack documents, certainly contains relevant business planning documents. Spotify has not articulated any compelling burden objection associated with such discovery, and any burden would be outweighed by the relevance of the information sought in any case. Finally, the Court has already determined that Spotify must search for and produce surveys, analyses, and projections

11

concerning the value of audiobooks, as those documents are plainly relevant and proportional to the needs of the case.

I.

THE MLC IS ENTITLED TO FLYBORG'S TESTIMONY AND DOCUMENTS

### A.    Flyborg Has Relevant Information

As the Court previously concluded, Flyborg clearly "has relevant documents" in his possession. *See* June 24, 2026 Conf. Tr. at 82:14. At no point during the parties' discussions has Spotify argued that Flyborg has no relevant documents and/or would not provide relevant testimony. Any such argument would be absurd. ████████████

████████████████████████████████████

████████████████████████████████████

███ As Spotify has confirmed in its discovery responses, ████████████████

████████████████████████████████████

███████████████████████ *See* Ex. 18 at 16 (Spotify's June 4, 2026 Supplemental Response to MLC Interrogatory No. 14, identifying Flyborg). That decision is of crucial importance to the MLC's claim that Spotify artificially inflated the valuation of Premium's audiobooks component—Spotify and its witnesses (including Kaefer) have repeatedly pointed to

████████████████████████████████████

███████████ *See id.* at 13 (Spotify's April 24, 2026 Supplemental Response to MLC Interrogatory No. 13) ██████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████ ); Ex. 19 (Kaefer 30(b)(6) Dep. Tr.) at 54:2–55:5 (████████████

████████████████████████ Kaefer further testified that Flyborg is ███

12

██████████████████████████████████████████████, indicating a much broader and deeper involvement in the issues central to this case than Spotify has previously represented.  *See* Ex. 17 (Kaefer 30(b)(1) Dep. Tr.) at 41:20–21.

The balance of the evidentiary record confirms Flyborg was a key decisionmaker with respect to Spotify's audiobooks valuation and pricing.  *See, e.g.*, Ex. 20 (SPOTIFY_00182090)

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████); Ex. 21 (SPOTIFY_00221977) at -997 (████████████

████████████████████████████████████████████████████);  Ex.  22 (SPOTIFY_00001779) (████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████);  Ex.  23  (SPOTIFY_00183489)

(████████████████████████████████████████████████████

████████████████████████████████████████████████████);

*see also* Ex. 17 (Kaefer 30(b)(1) Dep. Tr.) at 38:2–19 (████████████████████████

████████████████████████).

It is thus abundantly clear that Flyborg possess relevant knowledge that the MLC is entitled to examine, and that his "inclusion in ESI searches is reasonably calculated to lead to relevant evidence that might not be captured if they were excluded." *Fort Worth Employees' Ret. Fund* v. *J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 106 (S.D.N.Y. 2013) (Francis, M.J.) (ordering search of 18 additional custodians' files based on membership in a relevant "working group" list over objections that the new custodians were duplicative of 42 others); *see also Zhao* v. *Deutsche Bank AG*, 2014 WL 12526256, at *3 (S.D.N.Y. June 24, 2014) (Freeman, M.J.) (ordering production

13

from two custodians where "documents already produced in discovery" indicated they were "relevant decision-maker[s]"); *Steven Madden, Ltd.* v. *Jasmin Larian, LLC*, 2019 WL 3940112, at *2 (S.D.N.Y. July 8, 2019) (Fox, M.J.) (ordering productions from seven custodians identified during depositions and rejecting argument that productions from an executive would be duplicative of productions from their subordinate).

**B.      Spotify Cannot Demonstrate That Flyborg's Relevant Discovery Should Be Excluded**

Given Flyborg's relevance to this case, Spotify "'has the burden of showing specifically how, despite the broad and liberal construction afforded the federal discovery rules,' the discovery sought is 'overly broad, burdensome or oppressive.'" *Williams*, 2024 WL 5247931, at *2.  At the June 24, 2026 conference and at the parties' July 20, 2026 meet and confer, Spotify offered only "[g]eneral and conclusory objections as to . . . burden [which] are insufficient to exclude discovery of requested information." *In re Weatherford Int'l Sec. Litig.*, 2013 WL 2355451, at *4 (S.D.N.Y. May 28, 2013) (Francis, M.J.) (internal quotation marks omitted).  None of its objections have merit.

*First*, Spotify has previously made contradictory arguments for why it should not produce Flyborg's documents and make him available for a deposition:  on the one hand, Spotify says that Flyborg "wouldn't have any information" that is distinct from that possessed by Jorge, and on the other hand, Spotify claims that reviewing Flyborg's documents presents an unacceptable "burden." *See* June 24, 2026 Conf. Tr. at 82:23–83:15, 85:1–14.  Spotify cannot have it both ways—if Flyborg's documents are duplicative of Jorge's, the parties' stipulated de-duplication procedure would eliminate any burden associated with the review.  *See* Dkt. 47 at 9; *Blackrock Allocation Target Shares* v. *Bank of N.Y. Mellon*, 2018 WL 2215510, at *9 (S.D.N.Y. May 15, 2018) (Pitman, M.J.) (allowing deduplication procedures to address the fact that "there is likely to be some, if not

14

substantial, overlap in the discoverable information possessed by" a later added custodian with existing ones). But as Spotify knows, the documentary record is clear that Flyborg *does* possess relevant and unique information that does not overlap with Jorge's files—of the *1,109* documents that refer to Flyborg, Jorge is the custodian of only *eight*.[7] And many of those documents confirm that ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████. *See, e.g.*, Ex. 24 (SPOTIFY_00319933) (█████████████ ██████████████████████████████████████████████████████████████████████████████). There is no doubt that Flyborg (Jorge's superior) participated in relevant discussions that did not include Jorge. *See* Ex. 17 (Kaefer 30(b)(1) Dep. Tr.) at 38:2–19 (█████████████████████████ ████████████████████████████████).

Second, Spotify also cannot demonstrate that the task of reviewing Flyborg's documents is too onerous—during the July 20 meet and confer, Spotify represented that it had not yet collected Flyborg's documents, de-duplicated those documents against those reviewed, and identified the number of unique responsive custodial documents almost a full month after the last conference. *See also* June 24, 2026 Conf. Tr. at 85:6 ("We haven't collected his documents."). Any burden argument at this stage should thus be rejected out of hand, given that Spotify has failed to identify the number of documents it would need to review prior to the deadline the Court imposed for filing this motion. Nor can Spotify object that it is too late to collect Flyborg's documents and make him available for a deposition. Not only did the Court previously determine that the MLC would "not . . . be precluded" from requesting additional custodians if there was "good cause" given the development of discovery, *see* Jan. 22, 2026 Conf. Tr. at 14:17–21, the MLC also promptly

---

[7]    Counting documents "referring to Flyborg" as those that include his email address, screen name, or surname (*i.e.*, ███@spotify.com" OR "KJ" OR "Flyborg").

requested Flyborg's documents just five days after Kaefer identified him as a key witness during his deposition, and before Spotify even identified him in its supplemental interrogatory responses.[8] *See* Ex. 4 (June 3, 2026 Ltr. from D. Johnson to S. Damle).

*Third*, the fact that Flyborg resides "in Sweden" is not relevant—Spotify has custody and control over Flyborg because it has the practical ability to obtain discovery from him. *See* June 24, 2026 Conf. Tr. at 85:5; *Shcherbakovskiy* v. *Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007); *Signify Holding B.V.* v. *TP-Link Rsch. Am. Corp.*, 2022 WL 3704001, at *2 (S.D.N.Y. Aug. 26, 2022) (Parker, M.J.) (ordering document search and productions from foreign corporate affiliate). While not an apex witness, Flyborg is a managing agent of Spotify, *i.e.*, "in some respects, an agent of the corporate defendant [who] ha[s] some actual or potential managerial authority." *Grain D'OR LLC* v. *Wizman,* 2023 WL 2162499, at *3 (S.D.N.Y. Feb. 22, 2023) (Liman, J.) (ordering deposition of managing agent). Accordingly, he is subject to deposition by notice regardless of his location. *See, e.g.*, *Amimon Inc.* v. *Shenzhen Hollyland Tech Co.*, 2025 WL 66633, at *21 (S.D.N.Y. 2025) (Ramos, J). In sum, Spotify is obligated to produce relevant, proportionate discovery from Flyborg that it can obtain with ease pursuant to the Federal Rules of Civil Procedure, and Flyborg's location changes nothing about that.[9]

---

[8] Spotify's December 2024 identification of Flyborg as one of 13 executives involved in the decision to launch audiobooks as part of Premium did not adequately put the MLC on notice of Flyborg's central involvement in the pricing issues central to the Amended Complaint, which had not even been filed at the time.

[9] Counsel for the MLC will work with Spotify's counsel to determine a mutually agreeable location for Flyborg's deposition. Moreover, because Spotify is subject to the Court's jurisdiction, no special procedures such as the Hague Convention need to be accounted for. *See Chevron Corp.* v. *Donziger*, 296 F.R.D. 168, 198 (S.D.N.Y. 2013) (Kaplan, J.) ("A district court may 'impose discovery under the Federal Rules of Civil Procedure when it has personal jurisdiction over the foreign party'" (citation omitted)).

*Finally*, with respect to Flyborg's deposition, Spotify has waived any ability to assert an apex objection by failing to raise that point in its prior status letter with the Court. *See* Dkt. 154 at 3 n.1. Spotify only hinted at such an objection in a footnote that said MLC is "mistaken" in noting that Flyborg is not an apex witness.[10]

Accordingly, because Spotify cannot demonstrate that Flyborg's discovery should be excluded, the Court should compel Spotify to produce his relevant custodial documents and make him available for a deposition.

## II.

### THE MLC IS ENTITLED TO DEPOSE BEN KUNG

For the reasons set forth in its opposition to Spotify's motion for a protective order barring the deposition of Ben Kung, the Court should order Spotify to make Kung available for a deposition. *See* Dkt. 156.

## III.

### SPOTIFY SHOULD BE COMPELLED TO SEARCH RELEVANT GOOGLE DRIVE LOCATIONS FOR ANALYSES, SURVEYS, AND PROJECTIONS

Spotify's document production is incomplete. Spotify should be ordered to apply the parties' agreed upon search terms to its custodians' Google Drives and to search all relevant

---

[10]   Even if Spotify had not waived such an argument by failing to raise it when it had the chance, the same reasons that the MLC articulated for why Kung is not an apex witness also apply to Flyborg. *See* Dkt. 156. Flyborg was a Vice President at Spotify until recently, when he was promoted to Senior Vice President. Under either position, and like Kung, Spotify did not list Flyborg as one of its "Directors and Senior Management" in its annual SEC filing. *See* Spotify Technology S.A., Annual Report (Form 20-F), at 58 (Feb. 10, 2026). Using the same publicly available LinkedIn profiles as the MLC did for Kung, *see* Dkt. 156-1, there are, at a minimum, five other employees at Spotify with Flyborg's new Senior Vice President title, *see id.* at 4–6 (SVP Global Head of Consumer Experience), 7–9 (SVP Markets and Subscriptions), 10 (SVP Marketing and Partnerships), 13–17 (SVP AI and Personalization), 18–23 (SVP Technology and Platforms), none of whom Spotify listed as part of its senior management in its 2026 SEC filing, *see* Spotify Technology S.A., Annual Report (Form 20-F), at 58.

17

Google Drive locations—namely, any shared folders containing any documents accessible/viewable, created, or edited by any of its custodians—or, at a minimum, produce documents that have been specifically identified by the MLC as existing but not produced, as set forth in Exhibit 1.

As set forth above, *see supra*, Spotify has acknowledged that it did not search Google Drive locations independent of its search for its custodians' emails and Slacks. There is no excuse for failing to do so. Especially since, as one of its critical witnesses testified, ███████████████

█████████████████████" Ex. 9 (Jorge 30(b)(1) Dep. Tr.) at 46:23–47:1.

The upshot of Spotify's failure to search the Google Drive is that key documents on its $9.99 valuation are still missing from its production. As the Court will recall, on June 25, 2026, Spotify was ordered to identify and produce "surveys and analyses relating to Spotify's $9.99 Audiobooks valuation." Dkt. 150 at 1–2. In response, on the final day of fact discovery (July 9, 2026), Spotify produced only two responsive surveys (SPOTIFY_00330338 and SPOTIFY_00330380). These documents, on their face, demonstrate that Spotify did ***not*** produce the entire universe of documents the Court ordered it to, which the MLC raised with Spotify in its July 16, 2026 letter, and again at the parties' meet-and-confer on July 20, 2026. Indeed, SPOTIFY_00330338 (Ex. 14), ███████████████████

████████████████, includes multiple hyperlinks to other facially relevant materials that fall within the ambit of the Court's Order that the MLC never received—*because* of Spotify's failure to search its Google Drive locations. To name one of many examples, S██████████████████

████████████████████████████████████████████████████

██████ Indeed, that same document ████████████████████████

████████████████████████, and Spotify never offered an explanation for why it was not

produced with her custodial documents given her apparent involvement and Spotify's promise, made before 95% of its documents were produced, to "speak to its custodians, determine whether those custodians are aware of any responsive, non-privileged documents responsive to these requests, and collect and produce those documents." *See* Ex. 25 (April 13, 2026 C. Amanze email to J. Ligon). This document is a prime example of one that would have been produced had Spotify searched Google Drive locations—as it should have—and clearly indicates that it is highly probable that there are other, relevant documents that Spotify is withholding as a result.

Spotify has also failed to produce relevant financial projections which, like the other missing surveys and analyses, would have been found in independent Google Drive searches. Indeed, on June 25, 2026, the Court directed Spotify to "confer with relevant witness(es) to determine whether any additional financial projections exist" and to "produce those as well." Dkt. 150 at 2. In response, Spotify has not denied that they exist but has instead adopted the position that all projections that Wu testified to that fall within the ambit the Court's Order are privileged. *See* Dkt. 154 at 2. But Spotify's belated privilege claims over these documents are not credible.[11] At his deposition, Wu testified extensively and specifically about ███████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████, Ex. 11 (Wu Dep.

Tr.) at 113:2–22, and, more pointedly, that ████████████████████████

██████████████████████████████████████████████

███████████████████████ *id.* (Wu Dep. Tr.) at 162:12–163:3.

---

[11] As expressed in the most recent joint letter to the Court, *see* Dkt. 154 at 2, and again in the July 20, 2026 meet and confer with Spotify, the MLC has no way to assess Spotify's post-hoc, unsupported privilege claims because these documents have not been logged.

At no point during his deposition did Wu suggest that any of this work was performed at the direction of counsel or in anticipation of litigation, and at no point did Spotify's counsel object on privilege grounds or instruct Wu not to answer.[12]  Moreover, in one instance, ██████████ ███████████████████████████████████████████████████████, *see* Ex. 26 (SPOTIFY_00296986) at -014, revealing that ████████████████████████████████ ██████████████████████████████████████████████ despite Spotify's claim to the contrary.

At the parties' July 20, 2026 conferral, the MLC was open to compromising on the Google Drive issue if Spotify agreed to search for a limited number of specific documents the MLC "believe[d] exist, would be relevant, and have not been produced (and would have been produced, had Spotify searched Google Drive locations independently of searches of its custodians' emails and slacks)."  *See* Ex. 15 (July 20, 2026 D. Smith email to A. Stillman).  That same night, the MLC identified already-produced documents that indicated the existence of not-yet-produced surveys, analyses, and projections.  *Id.*  The day before this motion was due, Spotify identified just eight of the approximately 27 documents raised by the MLC as already having been produced or not existing—and did *not* produce the remaining documents.  Ex. 16 (July 22, 2026 A. Nakamura email to D. Smith).

There is little doubt, if any, that the reason Spotify has not yet produced the requested analyses, surveys, and projections is because it did not independently search Spotify's Google Workspace or its custodians' Google Drives for relevant documents, instead searching only the

---

[12]  For the avoidance of any doubt, and as explained in its most recent joint letter to the Court, *see* Dkt. 154 at 2, the MLC is *not* seeking financial projections/analyses prepared *after* the filing of the original Complaint, which is what Spotify's counsel claimed was privileged at the June 24 conference and again in the joint letter.  *See* June 24, 2026 Conf. Tr. at 47:20–48:7; Dkt. 154 at 2.

email and Slack messages of its custodians, and producing modern attachments (hyperlinked documents) *only* for emails. *See* Ex. 12 (July 9, 2026 F. Benyamin email to J. Benvenisty). In response, Spotify will no doubt claim that its review of only its custodians' emails and Slacks (and not Google Drive) was a sufficient proxy for independently searching Google Drive because it "sends emails whenever (i) a document is shared, (ii) someone tags someone in a document, (iii) someone resolves or responds to comments, or (iv) someone requests access to documents." *See id.* But relying only on Google notification emails alone would not capture broad swaths of documents likely to contain relevant information. For example, Spotify's review would not have captured instances where a custodian created, deleted, edited, relocated, or merely viewed a Google document, or where the custodian deleted the Google notification email.[13] Simply put, a search and collection based solely on Google notification emails would almost certainly miss critical documents, many of which the MLC has been pressing Spotify for since early May, when Spotify produced 95% of its documents.

In the parties' correspondence and during their conferrals, Spotify has repeatedly pointed to a January 22, 2026 email where Spotify represented that it was collecting from its "custodians' Gmails and Slacks" as if this email somehow resolves Spotify's obligations under the Federal Rules. *See* Ex. 27 (Jan. 22, 2026 C. Amanze email to J. Ligon). Spotify argues that the MLC should have understood this email to mean that Spotify was collecting from *only* those sources and not any additional relevant sources. *See* Ex. 12 (July 16, 2026 F. Benyamin email to J.

---

[13]  In addition, as Google explains on its website, users "can change how often [they] receive email notifications for comments in Google Docs, Drawings, Sheets, or Slides." *See Manage your notifications*, Google Docs Help Center, available at https://support.google.com/docs/answer/91588?sjid=17512604501511545502-NC (last accessed July 22, 2026). Indeed, users can "choose whether to receive notifications through email or on [their] browser." *Id.* Thus, any one of Spotify's custodians could have changed their Google notification settings and not received any notification emails at all.

Benvenisty). First and foremost, the MLC did not understand that email to mean that Spotify would collect and search *only* its custodians' emails and Slack messages—the MLC relied in good faith on Spotify to identify and collect from *all* relevant electronic sources as required by Rule 26 and 34. Further, at the time of the January 22, 2026 email, Spotify had not yet produced a single document with a Google Drive file path (which would indicate to the MLC that the document came from Google Drive). And Spotify would not produce the vast majority of custodial documents (nearly 95% of Spotify's entire production) until early May, nearly four months later. Second, to the extent that Spotify "blames" the MLC for "failing to identify" its Google "database," that "blame is misdirected." *See Sound Around, Inc.* v. *Friedman*, 2025 WL 2855353, at *2, 3 (S.D.N.Y. Oct. 8, 2025) (Parker, M.J.) (compelling production from database where party resisting discovery "utterly failed to identify relevant repositories of electronically stored information"). "As the responding party, [Spotify] is best situated to identify repositories of potentially responsive and relevant ESI and the best way of producing it in a usable form." *Id.* at 3. Spotify's unilateral decision to collect Google Drive documents only as attachments to emails would not (and did not) capture many responsive documents, especially if Spotify's custodians adjusted their notification settings or deleted the notification emails.

Had Spotify applied the parties' agreed upon search terms to its custodians' Google Drives and searched Spotify's Google Workspace for relevant documents in the first instance, it almost certainly would have produced SPOTIFY_00330338 and SPOTIFY_00330380 sooner and not only after weeks of negotiations and in response to this Court's June 25, 2026 Order. *See* Dkt. 150. Both survey documents hit on the search terms, and, to date, Spotify has not provided an explanation for why they were not produced in the first instance. Indeed, the very first slide of SPOTIFY_00330338 (████████████████) contains a hyperlink to a condensed version of

22

that deck (SPOTIFY_00123847), which itself reciprocally links back to the ███████████.

That document alone should have made Spotify aware, well before the Court ordered it to search for surveys, that other surveys existed. Rather than requiring the MLC to repeatedly request hyperlinked documents (modern attachments), Spotify should have independently collected and searched its custodian's Google Drive and Spotify's Google Workspace.

Accordingly, the MLC requests an order compelling Spotify to apply the parties' agreed-upon search terms to each custodian's Google Drive, speak to its custodians, identify other relevant locations in Spotify's Google Workspace, and produce all nonprivileged, responsive documents, which the MLC believes will result in the production of the very analyses, surveys, and projections the Court already ordered Spotify to produce. *See* Dkt. 150. At a minimum, Spotify should be ordered to produce the documents identified in Exhibit 1, which are documents that the MLC understands exist as they are referenced in already-produced documents and appear highly relevant.

## CONCLUSION

For the foregoing reasons, the MLC respectfully requests that the Court compel Spotify to produce the above requested discovery pursuant to Federal Rule of Civil Procedure 37.

23

Dated: July 23, 2026
      New York, New York

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

*/s/ Jay Cohen*
Jay Cohen
Jessica Benvenisty
Darren W. Johnson
1285 Avenue of the Americas
New York, NY  10019–6064
Telephone: (212) 373–3000
jaycohen@paulweiss.com
jbenvenisty@paulweiss.com
djohnson@paulweiss.com

*Attorneys for Plaintiff*
*Mechanical Licensing Collective*

24

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby state that the foregoing Memorandum of Law was prepared on a computer using Microsoft Word.  The total number of words in this brief, excluding the caption, table of contents, table of authorities, signature block, and this certification is 7,490.  In preparing this certificate, I relied on the word count program in Microsoft Word.

Dated: July 23, 2026
      New York, New York

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

*/s/ Jay Cohen*
Jay Cohen
Jessica Benvenisty
Darren W. Johnson
1285 Avenue of the Americas
New York, NY  10019–6064
Telephone: (212) 373–3000
jaycohen@paulweiss.com
jbenvenisty@paulweiss.com
djohnson@paulweiss.com

*Attorneys for Plaintiff*
*Mechanical Licensing Collective*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 23, 2026, I caused a true and correct copy of the

foregoing Memorandum and Exhibits 1, 4, 7, 9–12, 14–24 and 26 to the Declaration of

Jessica Benvenisty, which were filed under seal, to be served upon all parties to this

litigation via email.

Dated: July 23, 2026
      New York, New York

                                   PAUL, WEISS, RIFKIND, WHARTON &
                                   GARRISON LLP

                                   By: *Jay Cohen*
                                   Jay Cohen